COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

VIRGINIA, in the

UNITED STATES DISTRICT COURT
 of the
EASTERN DISTRICT OF MASSACHUSETTS
1 COURTHOUSE WAY
BOSTON, MA 02210

INTERNATIONAL FLOOR CRAFTS, INC.

vs          Case/File/Matter Number: 05CA11654

DAVID W ADAMS, ET AL

CERTIFICATE OF COMPLIANCE

I hereby certify that a copy of the process, notice, order or demand in the above-styled matter served upon the Clerk of the State Corporation Commission pursuant to § 12.1-19.1 of the Code of Virginia as statutory agent was mailed on September 6, 2005 by First Class mail to the following:

CCC INTERNATIONAL, INC.
7903A KINCANNON PL
LORTON, VA 22079

Dated: September 6, 2005        Joel H. Peck
                                Clerk of the Commission

Enclosures

SERVOP
CIS0317
05-09-06-3003

**SOP-19.1**
**(05/04)**

## COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

### SERVICE OF PROCESS, NOTICE, ORDER OR DEMAND
### ON THE CLERK OF THE STATE CORPORATION COMMISSION
### AS STATUTORY AGENT

**(Use of this form is optional.)**

1. The service being made relates to the following proceeding:

   Style of Proceeding: _____

   Case/File/Matter No. _____

   Proceeding Pending in _____
                       (Jurisdiction)                                         (Name of Court/Tribunal)

   Court's Mailing Address: _____

   Please mail the certificate of compliance to
   Meredith Abrams, Esq.
   SRGPE
   11921 Rockville Pike
   Rockville, Md 20852

2. Service is being made on the Clerk of the State Corporation Commission pursuant to Virginia Code §§ 12.1-19.1 and **(mark the appropriate box):**

   | | | | |
   |---|---|---|---|
   | ☐ 8.01-306 | ☐ 13.1-767 E | ☐ 13.1-928 B | ☐ 38.2-801 |
   | x 13.1-637 B | ☐ 13.1-769 D | ☐ 13.1-929 E | ☐ 38.2-809 |
   | ☐ 13.1-758 F | ☐ 13.1-836 B | ☐ 13.1-931 D | ☐ 38.2-1216 |
   | ☐ 13.1-766 B | ☐ 13.1-920 F | ☐ 13.1-1018 B | ☐ 50-73.7 B |
   | ☐ Other (Specify): _____ | | | ☐ 50-73.135 G |

3. Pursuant to the foregoing legal authority, the Clerk of the State Corporation Commission is being

   served as the statutory agent for __CCC International, Inc._____.
                                                        (name of business entity)

   The mailing address of the defendant/business entity to be served is

   _7903A Kincannon Place_____Lorton, VA 22079.
   (number/street, P.O. Box, Rural Route, etc.)            (city or town)              (state)      (zip code)

4. The Commission's receipt for the payment of the statutory fee is to be sent to:

   Name: _Meredith Abrams, Esq._____

   Address:_SRGPE _____11921 Rockville Pike     Rockville, MD 20852_____

   Phone: _____301-255-0550_____



## SHULMAN ROGERS GANDAL PORDY & ECKER, P.A.

Lawrence A. Shulman
Donald R. Rogers
Karl L. Ecker †
David A. Pordy *
David D. Freishtat
Martin P. Schaffer
Christopher C. Roberts
Jeffrey A. Shane
Edward M. Hanson, Jr.
David M. Kochanski
James M. Kefauver †
Robert B. Canter
Daniel S. Krakower
Kevin P. Kennedy
Alan B. Sternstein
Nancy P. Regelin
Samuel M. Spiritos +

Martin Levine
Worthington H. Talcott, Jr.*
Fred S. Sommer
Morton A. Faller
Alan S. Tilles
James M. Hoffman
Michael V. Nakamura
Jay M. Eisenberg*
Douglas K. Hirsch
Ross D. Cooper
Glenn C. Etelson
Karl J. Protil, Jr.*
Timothy Dugan*
Kim Viti Fiorentino
Sean P. Sherman*
Gregory D. Grant+
Jacob S. Frenkel*

Rebecca Oshoway
Michael J. Froehlich
William C. Davis, III
Patrick M. Martyn
Sandy David Baron
Christine M. Sorge
Michael L. Kabik
Jeffrey W. Rubin
Simon M. Nadler
Scott D. Museles
Karl W. Means
Mimi L. Magyar
Michelle R. Curtis*
Glenn W.D. Golding *
Debra S. Friedman*
Matthew M. Moore *
Eric J. von Vorys

Gary I. Horowitz
Cara A. Frye*
Heather L. Howard
Stephen A. Metz
Hong Suk "Paul" Chung
Patrick J. Howley
Carmen J. Morgan*
Kristin E. Draper*
Heather L. Spurrier*
André L. Brady
Melissa G. Bernstein
Patricia Teck
Robert L. Ritter*
Jacob A. Ginsberg
John D. Sadler
Heather R. Cameron*
Marc E. Pasekoff

Erin J. Ashbarry
*Of Counsel*
Larry N. Gandal
Leonard R. Goldstein
Richard P. Meyer*
Larry A. Gordon*
David E. Weisman
Lawrence Eisenberg
Deborah L. Moran
Scott D. Field
Jeannie Eun Cho
*Special Counsel*
Philip R. Hochberg*
*Maryland and D.C.
except as noted:*
* Virginia also     ◦ D.C. only
* Maryland only   † Retired

Writer's Direct Dial Number:

*ggrant@srgpe.com*
301-230-6578

September 2, 2005

CCC International, Inc.
C/O Office of the Clerk
Va. State Corporation Comm.
1300 E. Main St., 1st Floor
Richmond, VA 23219

    Re:    International Floor Crafts, Inc. v. Adams, *et al.*
          United States District Court for the Eastern District of Massachusetts
          Case No.: 05 CA 1164
          Our File No.: 111601.00002

To Whom it May Concern,

       Enclosed are copies of pleadings filed in International Floor Crafts, Inc. v. Adams *et al.*, Case Number 05 CA 1164, in the United States District Court for the Eastern District of Massachusetts. These pleadings include an Order retraining defendants and anyone acting on behalf of defendants from directly or indirectly transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of defendants' assets, other than in the ordinary course which shall not exceed $3,000 per month.

       More specifically, the enclosed includes the following:

- Notice of Hearing

- Plaintiff's Complaint, Demand for Injunctive Relief and Damages, and Demand for Jury Trial,

- Civil Cover Sheet,

- Affidavit of Robert O'Neil,

- Plaintiff's Motion for *Ex Parte* Approval of Attachment by Trustee Process,

- Plaintiff's Motion for *Ex Parte* Temporary Restraining Order,

- Plaintiff's Motion for *Ex Parte* Approval of Real Estate Attachment,



**SHULMAN**
**ROGERS**
**GANDAL**
**PORDY &**
**ECKER, P.A.**

CCC International, Inc.
C/O Terri Kim
September 2, 2005
Page 2

- Order Granting Temporary Restraining Order,

- Writ of Attachment of the Real Estate and/or Personal Property of CCC
  International, Inc., and

- Summons to CCC International, Inc.

We fully expect that CCC International, Inc. will comply with this Order. If you have
further questions, you or your counsel can reach me at the telephone number listed above. If I am
not available, you also may contact my associate, Meredith Abrams, at 301-255-0550.

Very truly yours,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: 
Gregory D. Grant

Enclosures

cc:    Office of the Clerk of the Virginia State Corporation Commission
       Meredith S. Abrams, Esquire (w/o enc.)

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC.<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| DAVID W. ADAMS,<br>TYRONE WILLIAMS, KEVIN BRITTO,<br>RONALD E. MITCHELL, Individually and<br>d/b/a MANSFIELD RUG COMPANY,<br>a/k/a MANSFIELD RUG DEPARTMENT and<br>REMCO, MICHAEL E. BROWN, Individually<br>and d/b/a DALTON PADDING and<br>EMPIRE WEAVERS, JANE DZIEMET,<br>AGATHA ESPOSITO,<br>DONALD SHOOP,<br>CCC INTERNATIONAL, INC.,<br>JOHN D. SUN, DAVID D. SUN, and<br>PAUL SUN<br>    Defendants | )<br>)<br>) Civil Action No.: 05 CA 11654-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| LOWELL FIVE CENT SAVINGS BANK,<br>WACHOVIA BANK, NATIONAL<br>ASSOCIATION, f/k/a FIRST UNION BANK<br>OF VIRGINIA,<br>CITIZENS BANK,<br>BANK OF AMERICA f/k/a<br>BANK OF BOSTON,<br>PEOPLE'S BANK, and<br>FIRST UNION NATIONAL BANK<br>    Trustee Process Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF HEARING

Please note that a hearing is scheduled for Wednesday, September 14, 2005 at 10:00 a.m.

in the United States District Court for the District of Massachusetts (Boston) before the

Honorable Nathaniel M. Gorton.

                              The Plaintiff
                              International Floor Crafts, Inc.
                              By Its Attorneys,


                              James B. Krasnoo (BBO#279300)
                              Paul J. Klehm (BBO#561605)
                              Law Offices of James B. Krasnoo
                              23 Main Street
                              Andover, MA 01810
                              (978) 475-9955

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of Notice of Hearing was served via hand delivery, on this _____ day of September, 2005 to:

John D. Sun
13614 Yellow Poplar Drive
Centreville, VA 20121

Paul Sun
7838 Preakness Lane
Fairfax Station, VA 22039

David D. Sun
7905 Bressingham Drive
Fairfax Station, VA 22039

CCC International, Inc.
C/O Terri Kim
5203 Tamar Woods Court
Fairfax, VA 22032

CCC International, Inc.
C/O Office of the Clerk
Virginia State Corporation Commission

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

International Floor Crafts, Inc.

**(b)** County of Residence of First Listed Plaintiff    Plymouth
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Offices of James B. Krasnoo, 23 Main St., Andover, MA 01810,
(978) 475-9955, Paul J. Klehm

## DEFENDANTS

Adams, David W.; Williams, Tyrone; Britto, Kevin; Mitchell, Ron E.; Individually and d/b/a Mansfield Rug Company a/k/a Mansfield

County of Residence of First Listed Defendant    Middlesex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

05 CA 11654 NMG

2005 AUG 10

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 | Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Plaintiff brings this RICO action pursuant to 18 USCg 1961.

Brief description of cause:
To recover damages from Defendants, who defrauded plaintiff of at least $5 Million.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    None

JUDGE _____    DOCKET NUMBER _____

DATE  8/8/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **Title of case (name of first party on each side only)** International Floor Crafts, Inc  v.  David W. Adams

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).**

   [✓] **I.**   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ] **II.**   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
         740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   [ ] **III.**  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
         315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
         380, 385, 450, 891.

   [ ] **IV.**   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
         690, 810, 861-865, 870, 871, 875, 900.

   [ ] **V.**   150, 152, 153.

3. **Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

   None

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

   YES [ ]    NO [✓]

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)**

   YES [ ]    NO [✓]

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

   YES [ ]    NO [ ]

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

   YES [ ]    NO [✓]

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

   YES [ ]    NO [✓]

   **A.**   **If yes, in which division do all of the non-governmental parties reside?**

   Eastern Division [ ]     Central Division [ ]     Western Division [ ]

   **B.**   **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

   Eastern Division [✓]     Central Division [ ]     Western Division [ ]

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

   YES [ ]    NO [ ]

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME**  Paul J. Klehm

**ADDRESS**  Law Offices of James B. Krasnoo, 23 Main Street, Terrace Level, Andover, MA 01810

**TELEPHONE NO.**  (978) 475-9955

(CategoryForm.wpd - 5/2/05)

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

---

INTERNATIONAL FLOOR CRAFTS, INC. )
    Plaintiff )
     )
v. )
     )
DAVID W. ADAMS, )
TYRONE WILLIAMS, KEVIN BRITTO, )
RONALD E. MITCHELL, Individually and )   CIVIL ACTION NO. _____
d/b/a MANSFIELD RUG COMPANY )
a/k/a MANSFIELD RUG DEPARTMENT and )
REMCO, MICHAEL E. BROWN, Individually)
and d/b/a DALTON PADDING and )
EMPIRE WEAVERS, JANE DZIEMIT, )
AGATHA ESPOSITO, )
DONALD SHOOP, )
CCC INTERNATIONAL, INC., )
JOHN D. SUN, DAVID D. SUN, and )
PAUL SUN )
    Defendants )
     )
v. )
LOWELL FIVE CENT SAVINGS BANK, )
WACHOVIA BANK, NATIONAL )
ASSOCIATION, f/k/a FIRST UNION BANK )
OF VIRGINIA, )
CITIZENS BANK, )
BANK OF AMERICA f/k/a )
BANK OF BOSTON, )
PEOPLE'S BANK, and )
FIRST UNION NATIONAL BANK )
    Trustee Process Defendants )

05 CA 11654 NMG

---

**PLAINTIFF'S COMPLAINT, DEMAND FOR INJUNCTIVE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.    This action for damages, injunctive relief, costs and attorneys' fees is brought pursuant to 18 U.S.C. §§1961-68 (2001) against several defendants who engaged in a pattern of racketeering activity under which the defendants embezzled millions of dollars from International Floor Crafts, Inc. ("IFC") over at least the past eight years. The defendants include, without limitation, various present and former employees of IFC and manufacturers' representatives to mainly non-existent companies who conspired to defraud IFC by preparing fabricated purchase orders and fictitious shipping documents in order to cause IFC to make thousands of dollars of payments at a time to illusory companies for non-existent merchandise.

## JURISDICTION

2.    Counts I through II of this Complaint are brought pursuant to the Racketeering and Corrupt Organizations Act. Federal subject matter jurisdiction is conferred by 18 U.S.C. §1964(c), and personal jurisdiction is conferred by 18 U.S.C. §1965(a and b). Additionally, pursuant to 28 U.S.C. §1331, district courts have original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

3.    Counts III through VI aver causes of action which are related to the causes of action set forth in Counts I and II and arise out of the subject matter of those counts. This court has jurisdiction over these Counts by virtue of the doctrine of pendent jurisdiction and 28 U.S.C. §1367(a).

4.    Counts VII and VIII seek injunctive relief and are derived from Counts I through VI.

## PARTIES

5.    Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") is a corporation organized under the laws of the Commonwealth of Massachusetts with a

2

principal place of business located at 319 Lincoln Street, Hingham, Plymouth County,
Massachusetts. At all times relevant, Building 19 performed, and does perform, services
for IFC. IFC and Building 19 shall be referred to hereinafter collectively as "IFC."

      6.      Defendant David W. Adams is an individual and resides at a last known
address of 5 Oxbow Drive, Wilmington, Middlesex County, Massachusetts. At all times
relevant, Defendant Adams served as a Buyer and/or representative for, and on behalf of,
IFC.

      7.      Defendant Tyrone Williams is an individual and resides at a last known
address of 171 Smith Street, New Bedford, Bristol County, Massachusetts. At all times
relevant, Defendant Williams served, and continues to serve, as the department manager
in the warehouse and a Receiver for IFC.

      8.      Defendant Kevin Britto is an individual and resides at a last known
address of 300 W 21st Street, Apt. 25, New York, NY 10011. Pursuant to M.G.L. c.
223A § 3, Plaintiff's cause of action arises from the Defendant Britto:

      (a) committing tort in the Commonwealth of Massachusetts; and/or

      (b) transacting business in the Commonwealth of Massachusetts; and/or

      (c) contracting to supply goods in the Commonwealth of Massachusetts; and/or

      (d) causing tortious injury in this commonwealth by an act or omission outside
this commonwealth if he regularly does or solicits business, or engages in any other
persistent course of conduct, or derives substantial revenue from goods used or consumed
or services rendered, in this commonwealth.

From approximately July 8, 1988 to approximately November 15, 1997, and from approximately September 28, 1998 through approximately September 28, 2001, Defendant Britto served as a Buyer for IFC.

9.      Defendant Ronald E. Mitchell is an individual and resides at a last known address of 5 Mansfield Grove Road, Apartment #146, East Haven, Connecticut. At all times relevant, Ronald E. Mitchell was doing business as, and/or under the name of two fictitious entities: Mansfield Rug Company , a/k/a Mansfield Rug Department (hereinafter, "Mansfield Rug"), with a purported address of 260 Hemingway Avenue, East Haven, Connecticut, and Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut. At all times relevant, Defendant Mitchell held himself out, and represented himself, as the manufacturer's representative for Mansfield Rug and Remco. Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Mitchell:

     (a) committing tort in the Commonwealth of Massachusetts; and/or

     (b) transacting business in the Commonwealth of Massachusetts; and/or

     (c) contracting to supply goods in the Commonwealth of Massachusetts; and/or

     (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

10.     Defendant Michael E. Brown is an individual and resides at a last known address of 2309 South Ravine Way, Dalton, Georgia. At all times relevant, Michael E. Brown was doing business as, and/or under the name of fictitious entities known as

4

Dalton Padding, with a purported address of P.O. Box 1122, Dalton, Georgia, and Empire

Weavers, with a purported address of 1319-E Rockville Pike, Rockville, Maryland. At all

times relevant, Defendant Brown held himself out, and represented himself, as the

manufacturer's representative for Dalton Padding and Empire Weavers. Pursuant to

M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Brown:

    (a) committing tort in the Commonwealth of Massachusetts; and/or

    (b) transacting business in the Commonwealth of Massachusetts; and/or

    (c) contracting to supply goods in the Commonwealth of Massachusetts; and/or

    (d) causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.

    11.    Defendant Jane Dziemit is an individual and resides at a last known

address of 155 Huntington Road, New Haven, Connecticut. At all times relevant, Jane

Dziemit was doing business as, and/or under the name of a fictitious entity named

Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut.

Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant

Dziemit:

    (a) committing tort in the Commonwealth of Massachusetts; and/or

    (b) transacting business in the Commonwealth of Massachusetts; and/or

    (c) contracting to supply goods in the Commonwealth of Massachusetts; and/or

    (d) causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

Street. 11th Floor, Bridgeport, Connecticut. At all times relevant, the Defendants

deposited various funds stolen from IFC by means of various fictitious entities, including,

without limitation, Mansfield Rug and Remco, into one or more People's Bank bank

accounts maintained by the Defendants.

23.    The Trustee Process Defendant First Union National Bank is a Pennsylvania

Financial Institution with a principal place of business located at 301 South College

Street, Charlotte, Pennsylvania. At all times relevant, the Defendants deposited various

funds stolen from IFC by means of various fictitious entities, including, without

limitation, Empire Weavers, into one or more First Union National Bank bank accounts

maintained by the Defendants.

FACTS

24.    Plaintiff IFC is engaged in the business of selling discounted merchandise

to the public through fifteen retail stores located in Massachusetts, Rhode Island and New

Hampshire.

25.    In the normal course of business, in essence, IFC employs various buyers

who work with manufacturer representatives of various supplying companies in order to

locate and to purchase merchandise for retail sale. IFC's buyers then negotiate the terms

of the purchase of said merchandise, and then the buyer places an order with the

supplying company. The supplying company then ships the merchandise to IFC. A

warehouse receiver, employed by IFC, verifies that the merchandise received by IFC

meets the order. The manufacturer representative then forwards an invoice from the

supplying company to buyer. The buyer then verifies that the invoice meets the request

for merchandise, and, if so, the buyer approves the invoice and forwards it to the

11

Accounts Payable Department at IFC. At or around the same time, the warehouse receiver prepares and forwards the receiving documents (also known as "Key Reqs") to the Accounts Payable Department. The Accounts Payable Department matches the invoice to the receiving documents and then pays the invoice.

26.    From approximately October, 1999 through July, 2002, Defendant Adams served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC. From July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the capacity of the carpet and rug buyer. In that capacity, Defendant Adams was responsible for purchasing remnants, broadloom and woodflooring for IFC.

27.    In or around early April, 2005, the new buyer at IFC, who replaced Defendant Adams, reported to senior management at IFC that he could not locate certain inventory, including, without limitation, carpet and rugs, that IFC had supposedly purchased from various supplying companies.

28.    Among other invoices, the new buyer was unable to confirm receipt of merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in the amount of $25,054.77 (Invoice No. 8868). At that time, IFC requested proof of delivery (a bill of lading) from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug.

29.    On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams and listing Regional Trucking as the trucking company. On or about April 20, 2005, the new buyer contacted Regional Express LLC d/b/a Regional Trucking regarding the Bill of Lading. On April 27, 2005, a

12

IFC had received the merchandise reflected in PO 7390. At no time did IFC receive any such merchandise.

57.    On or about March 29, 2005, upon information and belief, IFC issued Check No. 008749 **(Exhibit "P")** paid to the order of "Dalton Padding" in the amount of $28,032.00. The Defendants subsequently indorsed and deposited the check "For Deposit Only Dalton Padding 2000014691432."

**CCC International**

58.    In or around February, 2005, upon information and belief, IFC prepared Purchase Order No. 7426 **(Exhibit "Q"**, hereinafter "PO 7426") for CCC International, requesting $25,800 of merchandise.  PO 7426 lists Defendant Mike Brown as a contact person.

59.    On or about January 26, 2005, upon information and belief, CCC International, through its officers, agents, servants or employees, fraudulently issued Invoice No. 63134 **(Exhibit "R")**, referencing PO 7426.  The total amount of the invoice was $25,800.

60.    In or around February, 2005, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 82554 **(Exhibit "S")**, showing that IFC had received the merchandise reflected in PO 7426.  At no time did IFC receive any such merchandise.

61.    On or about February 14, 2005, upon information and belief, IFC issued Check No. 008602 **(Exhibit "T")** paid to the order of "CCC International" in the amount of $25,284.  The check was subsequently indorsed "CCC International For Deposit Only" and negotiated.

20

62. Thus far, IFC has determined that IFC has received invoices in the following total amounts from four fictitious companies for non-existent merchandise:

| | Years | Company | Amount |
|---|---|---|---|
| a. | 1999-2005 | Remco | approx. $2,300,000.00 |
| b. | 1999-2005 | Mansfield Rug | approx.   $980,000.00 |
| c. | 1996-2005 | Empire Weavers | approx. $1,170,000.00 |
| d. | 1997-2005 | Dalton Padding | approx.   $394,000.00 |

**Total: $4,844,000.00 (approx.)**

Of that total, IFC made payments to the Fictitious Companies in the amount of approximately $4,474,000.00 for non-existent merchandise.

63. From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million. At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein.

64. Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars. While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stands at between four and six million dollars.

## COUNT I

## RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Plaintiff v. All Defendants)

21

65.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 64 as if expressly set forth herein.

66.    At all times relevant, Defendants Williams, Adams, Britto, Mitchell, Brown, Dziemit, Esposito, Shoop and/or CCC International, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose of systematically and surreptiously embezzling substantial sums of money from, and otherwise defrauding, IFC from at least 1997 to and including 2005, have constituted, and continue to constitute, an enterprise within the meaning of 18 U.S.C. §1961(4). The activities of the enterprise affect interstate and foreign commerce.

67.    Upon information and belief, in furtherance of the criminal enterprise, the Defendants knowingly and purposely used interstate wire in violation of 18 U.S.C. §1343 and interstate mail in violation of 18 U.S.C. §1341, both of which constitute racketeering activity in violation of 18 U.S.C. §1962(a, b, and c). Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and making telephone calls in connection with embezzling funds from IFC through the use of fabricated documentation and non-existent companies.

68.    The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. §1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

69.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

WHEREFORE, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.    That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.    That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.    That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.    That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.    That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.    That Plaintiff be awarded judgment against the defendant Agatha

Esposito, individually, in the amount of Five Million Dollars, that amount to be trebled,

plus interest, costs, and attorneys' fees.

8.    That Plaintiff be awarded judgment against the defendant Donald Shoop,

individually, in the amount of Five Million Dollars, that amount to be trebled, plus

interest, costs, and attorneys' fees.

9.    That Plaintiff be awarded judgment against the defendant CCC

International in the amount of Five Million Dollars, that amount to be trebled, plus

interest costs, and attorneys' fees.

10.    That Plaintiff be awarded judgment against the defendant John D. Sun in

the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and

attorneys' fees.

11.    That Plaintiff be awarded judgment against the defendant David D. Sun in

the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and

attorneys' fees.

12.    That Plaintiff be awarded judgment against the defendant Paul Sun in the

amount of Five Million Dollars, that amount to be trebled, plus interest costs, and

attorneys' fees.

13.    That Plaintiff be awarded punitive damages from each defendant found

liable in the amount of Five Million Dollars, plus interest and costs.

14.    That Plaintiff be awarded, as part of any judgment, fair and reasonable

attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

24

15.    That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT II

### COMMON LAW CONSPIRACY TO VIOLATE RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

#### (Plaintiff v. All Defendants)

70.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 69 as if expressly set forth herein.

71.    Upon information and belief, the Defendants entered into an agreement to violate 18 U.S.C. §1961.

72.    By their acts, conduct and communications, the Defendants conspired to violate 18 U.S.C. §1962(c).

73.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

**WHEREFORE**, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.    That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.    That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.    That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.    That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.    That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.    That Plaintiff be awarded judgment against the defendant Agatha Esposito, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

8.    That Plaintiff be awarded judgment against the defendant Donald Shoop, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

9.    That Plaintiff be awarded judgment against the defendant CCC International in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

10.     That Plaintiff be awarded judgment against the defendant John D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

11.     That Plaintiff be awarded judgment against the defendant David D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

12.     That Plaintiff be awarded judgment against the defendant Paul Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

13.     That Plaintiff be awarded punitive damages from each defendant found liable in the amount of Five Million Dollars, plus interest and costs.

14.     That Plaintiff be awarded, as part of any judgment, fair and reasonable attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

15.     That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT III

## CONVERSION

### (Plaintiff v. All Defendants)

74.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 73 as if expressly set forth herein.

75.     From 1997 to the present, as more fully set forth herein, the Defendants have converted property owned by IFC, including, without limitation, purchase orders,

27

invoices, bills of lading, key reqs, telephones, facsimile machines and funds, to their own

use and benefit, thus depriving Plaintiff of the use of the property.

76.    As a direct and proximate result of the conversion by the Defendants,

Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment

against the Defendants for damages sustained in the amount of Five Million Dollars,

together with interest and costs.

## COUNT IV

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES

#### (Plaintiff v. All Defendants)

77.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to

76 as if expressly set forth herein.

78.    Plaintiff and the Defendants are engaged in trade or commerce within the

meaning of M.G.L. c. 93A.

79.    The Defendants committed unfair and deceptive business practices by,

*inter alia*, (1) converting funds belonging to IFC to their own use, (2) stealing funds from

IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4)

providing false representations in documents by alleging shipments of merchandise were

made and received when  in fact no such shipments occurred, (5) taking steps to conceal

the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order

to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies

in order to further their criminal enterprise, (8) using office property, including, without

limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9)

28

defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the

Commonwealth of Massachusetts in order to render recapture of the funds more difficult,

and (11) forging documents all with the intention of deceiving and defrauding Plaintiff.

     80.     Such conduct constitutes unfair and deceptive trade practices in violation

of M.G.L. c. 93A, §§ 2, 9, and 11, and the rules and regulations promulgated thereunder,

which violation was both willful and knowing.

     **WHEREFORE,** Plaintiff demands judgment against the Defendants for damages

sustained in the amount of Five Million Dollars, that amount to be trebled, together with

interest, costs and attorneys' fees.

**COUNT V**

**FRAUD**

**(Plaintiff v. All Defendants)**

     81.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to

80 as if expressly set forth herein.

     82.     The Defendants, through their officers, agents, servants or employees,

knowingly and fraudulently made false statements of material fact and deliberately failed

to disclose other material facts to IFC regarding, among other things, (1) converting

funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false

documentation in order to obtain stolen funds from IFC, (4) providing false

representations in documents by alleging shipments of merchandise were made and

received when in fact no such shipment occurred, (5) taking steps to conceal the

fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to

29

conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents, all with the intention of deceiving and defrauding Plaintiff.

83.    Plaintiff was so deceived and defrauded by the actions of the Defendants, through their officers, directors, agents, servants or employees, and in reliance thereon to their detriment, IFC made payments of millions of dollars to various companies for non-existent merchandize based upon fabricated documentation.

84.    As a direct and proximate result of the intentional misrepresentations of the Defendants, through their officers, directors, agents, servants or employees, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

### COUNT VI

### BREACH OF FIDUCIARY DUTY

#### (Plaintiff v. Defendants Williams, Adams And Britto)

85.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 84 as if expressly set forth herein.

86.    Defendants Williams, Adams and Britto, in their capacity as present or former employees of IFC, owed a fiduciary duty to exercise utmost good faith and

loyalty, proper care, skill, diligence and honesty in carrying out their duties on behalf of their employer, IFC.

87.    The aforesaid actions and conduct of the defendants constitute breaches of the aforesaid fiduciary duty, in that Defendants Williams, Adams and Britto, knowingly and purposefully, (1) converted funds belonging to IFC to their own use, (2) stole funds from IFC, (3) created false documentation in order to obtain stolen funds from IFC, (4) provided false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred (5) took steps to conceal the fraudulent and criminal activity, (6) provided IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) created false and non-existent companies in order to further their criminal enterprise, (8) used office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauded IFC of millions of dollars, (10) caused funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forged documents, in violation of their respective fiduciary duties to Plaintiff.

88.    As a direct and proximate result of the breaches of fiduciary duties of Defendants Williams, Adams and Britto, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT VII

## TRUSTEE PROCESS

31

### (Plaintiff v. All Trustee Process Defendants)

89.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 88 as if expressly set forth herein.

90.    Upon information and belief, as set forth above, the Defendants maintain property and/or one or more accounts with one or more of the Trustee Process Defendants. Additionally, as a part of their criminal enterprise, the Defendants placed funds into accounts maintained with the Trustee Process Defendants.

91.    The funds held in those accounts, at least in part, are the property of IFC.

92.    Plaintiff has a reasonable likelihood of success on the merits.

93.    Plaintiff knows of no liability insurance that will be available to satisfy their claims, and therefore believe that Defendants have no such insurance. Upon information and belief, none of the individual Defendants is in the military.

94.    Plaintiff seeks an attachment of the goods, effects or credits of the Defendants in the amount of Five Million Dollars ($5,000,000.00) in the possession of Trustee Process Defendants.

95.    Plaintiff asserts that there is a clear danger that, if Defendants are given notice of the within lawsuit and request for injunctive relief, Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment thereof.

96.    Upon information and belief, there is an immediate danger that the Defendants will purchase, sell, transfer, conceal, manipulate, dilute, dissipate or encumber their assets, and/or the proceeds derived from the sale, transfer or redemption thereof, in order to hinder or delay the satisfaction of the judgment Plaintiff is likely to recover in this action and Plaintiff will be irreparably harmed as a result thereof.

**WHEREFORE, Plaintiff demands:**

(a)    an order of trustee process, in favor of Plaintiff of the goods, effects or credits of any of the Defendants in the amount of Five Million Dollars in the possession of any or all of the Trustee Process Defendants.

(b)    that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(c)    this Court order such other relief as may seem just and proper.

## COUNT VIII

### INJUNCTIVE RELIEF

### (Plaintiff v. All Defendants)

97.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 96 as if expressly set forth herein.

98.    Plaintiff will suffer immediate and irreparable harm if Defendants are not restrained from (a) transferring, assigning, hypothecating or dissipating real estate and (b) transferring, assigning, dissipating, hypothecating or paying any monies other than in the ordinary course which should be no more than $3,000.00 per month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims.

99.    The harm that Plaintiff will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted.

100.    Plaintiff has a strong likelihood of success on the merits for the reasons set forth herein.

**WHEREFORE, Plaintiff demands:**

33

(a)    An attachment, in favor of Plaintiff, of real property owned by any or all of the Defendants and/or standing in the name of any or all Defendants.

(b)    that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue an *ex parte* temporary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(c)    that the Court issue an *ex parte* temporary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(d)    that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(e)    that the Court issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(f)    that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a permanent restraining order

that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(g)    that the Court issue a permanent restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(h)    That Plaintiff be awarded, among other things, compensatory damages, reasonable attorneys' fees and costs.

(i)    that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(j)    this Court order such other relief as may seem just and proper.


**PLAINTIFF DEMANDS A TRIAL**
**BY JURY ON ALL ISSUES SO TRIABLE**

Plaintiff International Floor
Crafts, Inc.
By Its Attorneys,

_____
James B. Krasnoo (BBO#279300)
Paul J. Klehm (BBO#561605)
Law Offices of James B. Krasnoo
23 Main Street
Andover, MA  01810
(978) 475-9955

Dated: August 8, 2005

35

## AFFIDAVIT

_____, SS.

I, William Gemme, duly authorized agent of Plaintiff International Floor Crafts, Inc., being duly sworn, depose and say that: I have read the Complaint which is annexed hereto and subscribe to the same on behalf of Plaintiff; the factual averments in the Complaint are based upon my personal knowledge, the personal knowledge of other employees of Plaintiff, and/or information from books and/or records in Plaintiff's possession, custody or control; and I believe that the factual averments in the Complaint are true and correct to the best of my knowledge and belief at this time.

Date: _____8/2/2005_____

_William Gemme_
William Gemme

## COMMONWEALTH OF MASSACHUSETTS

_____, SS.

On this ⟂2 day of Aug·, 2005, before me, the undersigned notary public, personally appeared William Gemme, proved to me through satisfactory evidence of identification, which were __MASS   Lccralse__, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purposes as duly authorized agent of International Floor Crafts, Inc.

_____
Print name:
Notary Public
My Commission

JOANNE M. CAMERON
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 2, 2011

36

**PURCHASE ORDER** 6551

BILL TO:

**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-5900

VENDOR: Remco
SHIP TO: Branford CT

FOB: _____

TELEPHONE NUMBER: 203-468-9544
CONTACT PERSON: Tony Murris

**INTERNATIONAL FLOOR CRAFT, INC., INFOR**

RECEIVING INSTRUCTIONS

RECEIVED NOV 01 2002  By _____

DATE OF ORDER: 10/29
SHIP IN: 11/15
CANCELLATION DATE: _____
ORDER GIVEN BY: TM
DEPT: 7

TERMS
___ % DISCOUNT ___ DAYS
NET 30 DAYS
OTHER ___

SHIPPING INSTRUCTIONS: Call our Traffic Manager at 508-660-4880
DELIVERY APPOINTMENT: Call

PLEASE DO NOT SHIP BACK ORDERS OR PARTIAL SHIPMENTS WHERE ADDITIONAL FREIGHT CHARGES WILL RESULT

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | DEPT | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5x6 Be ber bowl | ea | 280 | | 45 00 | 21 15 | 7 | | | | | | | | |
| | 6x1 ter ber Bowl | ea | 280 | | 21 00 | 30 15 | 7 | | | | | | | | |
| | 2x1 be bowl | ea | 280 | | 41 00 | 74 15 | 7 | | | | | | | | |
| | 1x10 ber bowl | ea | 280 | | 53 50 | 95 00 | 7 | | | | | | | | |
| | 4x6 Gerber Bowl | ea | 280 | ea | 7 00 | 12 16 | 7 | | | | | | | | |
| | 30% | | | | | | | | | | | | | | |

GEBE 11-1-02

TOTAL RETAIL: 70715²⁰
COST OF GOODS: 38500 —
COST OF FREIGHT: -0-
TOTAL COST: 38500

BUYER'S NOTES: _____
RATING (1-10): _____

**DISTRIBUTION**

CONDITIONS OF THIS ORDER
ALL COLLECT SHIPMENTS MUST BE ROUTED VIA TRAFFIC DEPARTMENT AT 508-660-4880 OR 508-990-5803. FAILURE TO COMPLY WILL RESULT IN CHARGEBACK OF EXCESSIVE FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PRE-PAID.
1. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION.
2. THE RIGHTS RESERVED TO CANCEL, IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE.
3. THE RIGHTS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

Ex.1.4×"A"

Exhibit "B"

11-13-02

# REMCO

PO Box 120221
East Haven, CT 06512
(203) 468-9544

NO'

+1 8X10

Discount /

| Date | Invoice No. | Order No. |
|---|---|---|
| October 30, 2002 | 20021030 | 6551 |

| Bill to | Ship to |
|---|---|
| International Floor Crafts, Inc.<br>319 Lincoln Street<br>Hingham, MA 02043 | Building 19, Warehouse #3<br>One King Street<br>New Bedford, MA 02746 |

| Quantity | Description | Unit Price | Total |
|---|---|---|---|
| 280 | 5 x 8 Berber Bound | $15.00 | $4,200.00 |
| 280 | 6 x 9 Berber Bound | $21.00 | $5,880.00 |
| 280 | 8 x 10 Berber Bound | $41.00 | $11,480.00 |
| 280 | 9 x 12 Berber Bound | $53.50 | $14,980.00 |
| 280 | 4 x 6 Berber Bound | $7.00 | $1,960.00 |
| | | | |
| | These are delivered prices        Total Due | | $38,500.00 |
| | | | |

CORP. _____
1|4
DOR ACCT # R350
JICE NO. 20021030
E 10-30-02
. $ 38,500.00 (770.00) 370100:
DATE 11-14-02
RIBUTION 451000

Ok 7 c pay
Pay as invoiced
Price/qty ok
11-13-c2

ank you for your order.

11/13/02

Exhibit "C"

**ORIGINAL**

1

SHIPPER

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMERS NAME AND ADDRESS IF RETURN, ETC.

Reimco

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST | FOR SERVICE | OTHER |
|---|---|---|---|---|---|---|---|
| Rems | 9x12 Border | | | 250 ✓ | | | |
| | 8x10 | | | 261 +1 | | | |
| | 6x9 | | | 280 ✓ | | | |
| | 5x8 | | | 280 ✓ | | | |
| | 4x6 | | | 280 ✓ | | | |

SHIPPED FROM   RECEIVED VIA   CARRIERS NO.   PCS. 1400   WT.   CHGS.   DEPT. RVG 3   STORE   KEY-REC NO. 406836   DATE REC. 11/5

SEND AGAIN   RETURN TO STOCK   EVEN EXCHANGE   CREDIT TO ACCT   CASH REFUND

NOTE!!
IF CUSTOMER'S RETURN
BE SURE TO CHECK ( ✓ )
ENTERED IN UNIT CONTROL
DATE   11-8-02

NOV 1 8 2002

Tyrone William

MORE CGO. BY   ORDER CKD. BY   DATE
J.D.W.T.M.N.S.   J.W.

PURCHASE ORDER NO.   DUE DATE
6551

NO.   CHARGE BACK   AMT.

PROOF

INVOICE COST   DISCOUNT

Total/1401

FORM 1044 IN

Exhibit "D"

INTERNATIONAL FLOOR CRAFTS, INC

319 LINCOLN ST
HINGHAM, MA 02043

Eastern Bank
Massachusetts

53-129
113

No.    006271

*THIRTY-SEVEN THOUSAND SEVEN HUNDRED THIRTY AND XX / 100

CHECK AMOUNT
****37,730.00**

Pay to the
Order of

REMCO

P.O. BOX 120221
East Haven, CT 06512

DATE
11/14/2002

⑈006271⑈ ⑆0⑆⑆30⑆298⑆⑆ 600098 2 2 2⑈    ⑈0003773000⑈⑈

FOR DEPOSIT
ONLY

0449 : 4 0 / 2 /



"FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

The security features listed below, as well as these not listed,
exceed industry standards.

SECURITY FEATURES: Results of document alteration:

| MicroPrint Border | Small type in side border on front of check appears as dotted line when photocopied |
| Security Screen | Absence of "PROTECT A CHECK SAFETY PAPER" verbiage on back of check |
| Color Backgound on Front of Check | Chemical or erasure attempts will attempt to remove color background |

Exhibit "E"

**PURCHASE ORDER**    **6590**

BILL TO:

**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

TELEPHONE NUMBER

CONTACT PERSON

**INTERNATIONAL FLOOR CRAFT, INC., INFORMA**

RECEIVING INSTRUCTIONS

DEC 04 2002
RECEIVED
By

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | DEPT | QUANTITIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

DISTRIBUTION

PLEASE DO NOT SHIP BACK ORDERS OR PARTIAL SHIPMENTS WHERE ADDITIONAL FREIGHT CHARGES WILL RESULT

DATE OF ORDER
SHIP ON
ORDER GIVEN BY
DEPT.
CANCELLATION DATE

**TERMS**
___ % DISCOUNT ___
NET ___ DAYS
OTHER ___

| | | | | | |
|---|---|---|---|---|---|
| TOTAL RETAIL | 94465- |
| COST OF GOODS | 40.0.0- |
| COST OF FREIGHT | 0 |
| TOTAL COST | 43050- |
| % MARKUP | 54.6- |

SIGNATURE

ACCOUNTS PAYABLE

BUYER'S NOTES:
RATING: (1-10)

SHIPPED INSTRUCTIONS: Call our Trade Manager at 504-890-8890
DELIVERY APPOINTMENTS: Call

CONDITIONS OF THIS ORDER
COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 504-890-4480 OR 504-890-0651. FAILURE TO COMPLY WILL RESULT IN CHARGEBACK OF EXCESS FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PRE-PAID. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION. THE RIGHTS RESERVED TO CANCEL IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE. THE RIGHTS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

Exhibit 'F'

# INVOICE

No. 4462

**REMIT TO: MANSFIELD RUG CO.**
**5 MANSFIELD GROVE RD SUITE #146**
**EAST HAVEN, CT 06512**

| INVOICE DATE | 11/25/02 |
| CUSTOMER'S ORDER NO. | 6590 |

SOLD TO:
INTERNATIONAL FLOORCRAFT INC.
319 LINCOLN ST.
HINGHAM, MA. 02043

SHIP TO:
BUILDING 19 WAREHOUSE#3
1 KING ST.
NEW BEDFORD, MA. 02746

| SALESMAN | SHIPPED VIA | TERMS 2% 15 NET 30 DAYS | F.O.B. DELIVERED |

| QTY. ORDERED | QTY. SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 350 | 350 | 8x10 SUPER PLUSH 60oz AND ABOVE | 53.00 | 18,550 00 |
| 350 | 350 | 9x12 SUPER PLUSH 60oz AND ABOVE | 70.00 | 24,500 00 |
| | | TOTAL DUE | | 43,050 00 |

NOV 2 9 2002

**Invoice**

12/2    CORP.

VENDOR ACCT # M185

INVOICE NO. 4462

DATE 11-25-02

AMT. $ 43,050.00    (861.00)
42,189.00

DUE DATE 12-10-02

DISTRIBUTION 45.1000

Exhibit "G"



SHIPPER: mans feild

SHIPPED FROM | RECEIVED VIA | CARRIER'S NO. | PCS. 700 | WT. | CHGS. | DEPT. Rv6 | STORE Lw4 3 | KEY-REC NO. 406845 | DATE REC. 11/14

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMER'S NAME AND ADDRESS IF RETURN, ETC.

NOV 2 5 2002

MODEL SOLD BY: M.M.K.S.S.A.
ORDER CHG. BY: T.W.

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST |
|---|---|---|---|---|---|
| Rems | 9x12 | | | 350 | |
| | 8x10 | | | 350 | |

Total 700 pcs

NOTE!! IF CUSTOMER'S RETURN BE SURE TO CHECK ( ✓ )
ENTERED IN UNIT CONTROL

11-21-02

406845

FORM 1858 IR

ORIGINAL

Exhibit "H"

INTERNATIONAL FLOOR CRAFTS, INC

319 LINCOLN ST
HINGHAM, MA 02043

Eastern Bank
Massachusetts

53-172
113

No.    006330

*FORTY-TWO THOUSAND ONE HUNDRED EIGHTY-NINE AND XX / 100

Pay to the
Order of

MANSFIELD RUG CO.
5 MANSFIELD GROVE RD.
SUITE #146
East Haven, CT 06512

DATE
12/04/2002

CHECK AMOUNT
****42,189.00*

020463349  29  5247  5298  121702

⑈006330⑈ ⑆011301798⑆ ⑈00098 2 2 2⑈          ⑈00042189 00⑈



PLEASE HERE For Deposit Only

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE.



1265004706212142001

11  12-16-02

08  101

04  01

96011209

*FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

The security features listed below, as well as those not listed, exceed industry standards.

SECURITY FEATURES: Designed at document alteration:

MicroPrint Border — Tiny type in side border on front of check appears as dotted line when photocopied.

Secure Screen — Presence of "PROTECT A CHECK SAFETY PAPER" zero set on back of check.

Color Background on front of Check — Chemical or erasure attempts will discolor or remove color background

**PURCHASE ORDER** 6660

BILL TO:

**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

TELEPHONE NUMBER 706-226-5597

CONTACT PERSON Mike Brew

**INTERNATIONAL FLOOR CRAFT, INC., INFORM.**

RECEIVING INSTRUCTIONS

By: _____

RECEIVED JAN 29 2003

DATE OF ORDER 1/2
SHIP VIA ___
ORDER GIVEN BY ___
DEPT 7

**TERMS**
2 % DISCOUNT ___ DAYS
NET 20 DAYS
OTHER ___

Empire Wholesalers
Rockville md
Building ch whse
Viking street

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | | DEPT | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Luxury Trav | | N/o | Prices | | 6/12/4 | | | | | | | | |
| | viking Tech | | 1.14 | per yard | | 2/11 | | | | | | | | |
| | | | 2/10 | $119.00 | | | | | | | | | | |
| | | | | $1.38 cu | | | | | | | | | | |
| | | | 2/11 | $1.50 cu | | | | | | | | | | |
| | | | | $2.00 cu | | | | | | | | | | |
| | | | 14 | $16.00 | | | | | | | | | | |
| | | | | $55.00 | | | | | | | | | | |

Prices 2/11/03

**TOTAL RETAIL**
**COST OF GOODS**
**COST OF FREIGHT**
**TOTAL COST**
**% MARKUP**

BUYER'S NOTES:
RATING: (1-10)

**DISTRIBUTION**

SHIPPING INSTRUCTIONS: Call our
Traffic Manager at 800-966-8890
DELIVERY APPOINTMENT: Call

PLEASE DO NOT SHIP BACK
ORDERS OR PARTIAL SHIPMENTS
WHERE ADDITIONAL FREIGHT
CHARGES WILL RESULT

GE/DE 1-29-03

CONDITIONS OF THIS ORDER
WILL COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-660-8890 OR 508-660-8603. FAILURE TO COMPLY WILL RESULT IN CHARGEBACK OF EXCESSIVE FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PRE-PAID
1. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION
2. THE RIGHTS RESERVED TO CANCEL IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE
3. THE RIGHTS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE

SIGNATURE ___

ACCOUNTS PAYABLE

Exhibit 5

## EMPIRE WEAVERS
### 1319-E ROCKVILLE PIKE
### ROCKVILLE, MD 20852

| INVOICE NO. 12655 | | |
|---|---|---|
| 6660 | 1-31-2003 | |
| | FOB | TERMS 2/10, N30 |

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFT | BUILDING 19, WAREHOUSE 3, |
| 319 LINCOLN ST., | 1 KING ST., |
| HINGHAM, MA  02043 | NEW BEDFORD, MA  02745 |

| | | | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 140 ✓ | | 6X9 IRREGULAR BOUND AREA RUGS | 19.00 ✓ | 2660.00 |
| 140 ✓ | | 9X12  "    "    "    "    " | 38.00 ✓ | 5320.00 |
| 210 ✓ | | 5X8 30OZ. PLUSH BOUND AREA RUGS | 15.00 ✓ | 3150.00 |
| 210 ✓ | | 6X9  "    "    "    "    " | 24.00 ✓ | 5040.00 |
| 210 ✓ | | 8X10  "    "    "    "    " | 40.00 ✓ | 8400.00 |
| 210 ✓ | | 9X12  "    "    "    "    " | 55.00 ✓ | 11550.00 |

TOTAL DUE . . . . . . . . . . . $36120.00

FEB 07 2003

2/11/03

CORP.    IX

2/10

VENDOR ACCT # E247

INVOICE NO. 12655

DATE 1-31-03

AMT. $ 36,120.00  (722.40)
35,397.60

DUE DATE 2.10.05

DISTRIBUTION 420C 000 .007

RM

2-11-03 OK
VERBAL OK
DAVE ADAMS
PER PHONE

PRICE OK GTY OK
2-11-03

Exhibit "K"



SHIPPER
EMC

SHIPPED FROM
EMPIRE weavers

RECEIVED VIA

CARRIER'S NO

PCS. 1120

WT.

CHGS.

DEPT. RG    STORE 3

KEY-ACC NO. 406909

DATE REC. 1/24

S.A.A.C. M.M.M    DATE
ORDER CKD. BY   T.W.    DATE

PURCHASE ORDER NO.

DUE DATE

NO.    CHARGE BACK    AMT.

PROOF

INVOICE COST

DISCOUNT

FORM 1646 IR

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMER'S NAME AND ADDRESS IF RETURN, ETC.

| MAKE | DESCRIPTION | RETURN TO STOCK | SEND AGAIN | TWIN EXCHANGE | CREDIT TO ACCT | CASH REFUND | MODEL NO. | COLOR/FINISH | QUANTITY | COST | FOR SERVICE | OTHER |
|------|-------------|-----------------|------------|---------------|----------------|-------------|-----------|--------------|----------|------|-------------|-------|
| Roms | 5X8 |  |  |  |  |  |  |  | 210 | ✓ |  |  |
|  | 6X9 |  |  |  |  |  |  |  | 350 | ✓ |  |  |
|  | 8X10 |  |  |  |  |  |  |  | 210 | ✓ |  |  |
|  | 9X12 |  |  |  |  |  |  |  | 350 | ✓ |  |  |

JAN 28 2003

NOTE!!
IF CUSTOMER'S RETURN
BE SURE TO CHECK
ENTERED IN UNIT CONTROL    DATE

1-28-03    Tyron William

TOTAL 1120

ORIGINAL

406909

Exhibit "L"



Exhibit "M"

**PURCHASE ORDER** . 7390

**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

BILL TO:

**INTERNATIONAL FLOOR CRAFT, INC., INFORM**

RECEIVING INSTRUCTIONS

MAR 2 4 2005

DISTRIBUTION

BE 3-24-05

See Attached.

BUYER'S NOTES:

ACCOUNTS PAYABLE

**MSM INDUSTRIES-NON SLIP**

| QUALITY | SIZE | QUANTITY | COST PRICE | RETAIL PRICE | TOTAL COST | TOTAL RETAIL |
|---|---|---|---|---|---|---|
| LIGHT WEIGHT | 2X4 | 0 | $0.62 | $2.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 2X8 | 0 | $1.24 | $4.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 4X6 | 0 | $1.86 | $6.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 4X8 | 0 | $3.10 | $10.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 6X8 | 700 | $4.20 | $13.50 | $2,940.00 | $9,450.00 |
| LIGHT WEIGHT | 6X9 | 600 | $6.22 | $20.00 | $3,732.00 | $12,000.00 |
| LIGHT WEIGHT | 8X10 | 600 | $8.40 | $27.00 | $5,040.00 | $16,200.00 |
| LIGHT WEIGHT | 8X12 | | | | | |
| HEAVYWEIGHT | 2X4 | 0 | $1.15 | $4.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 2X8 | 0 | $2.31 | $8.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 4X6 | 0 | $3.47 | $10.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 4X8 | 0 | $5.77 | $20.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 6X8 | 500 | $7.80 | $25.00 | $3,900.00 | $12,500.00 |
| HEAVYWEIGHT | 6X9 | 400 | $11.55 | $42.00 | $4,620.00 | $16,800.00 |
| HEAVYWEIGHT | 8X10 | 500 | $15.60 | $50.00 | $7,800.00 | $25,000.00 |
| HEAVYWEIGHT | 8X12 | | | | | |
| TOTALS | | 3300 | | | $28,032.00 | $91,950.00 |
| TOTAL YARDS | 2920.0 SQ YDS | | | | | 69% |
| BUILDING # 19 | | | | | | |
| PO# | | | | | | |

MAR 2 4 2005

Exhibit "N"

Remit Payment To:

**INVOICE#**
**24238**

**Dalton Padding**
P.O.Box 1122,
Dalton, GA 30722

Terms:
**Net 30 Days**

Bill To:

International Floor Craft, Inc.
319 Lincoln Street, Rte.3A
Hingham, MA 02043

Invoice#: 24238   P.O.#: 7390   Date: 02/10/2005

ShipDate: 02/10/2005      ShipVia: **Our Truck**

Ship To:   Building 19, Whse#3, 1 King Street, New Bedford, MA 02746

| Qty | Description: | Price | Extended Price |
|------|--------------|-------|----------------|
| 700 | 6x9 Light Weight Non Slip Padding | $ 4.20 | $ 2940.00 |
| 600 | 8x10 Light Weight Non Slip Padding | 6.22 | 3732.00 |
| 600 | 9x12 Light Weight Non Slip Padding | 8.40 | 5040.00 |
| 500 | 6x9 Heavyweight Non Slip Padding | 7.80 | 3900.00 |
| 400 | 8x10 Heavyweight Non Slip Padding | 11.55 | 4620.00 |
| 500 | 9x12 Heavyweight Non Slip Padding | 15.60 | 7800.00 |

FEB 1 7 2005

VENDOR ACCT # D300

INVOICE NO. 24238

DATE 2-10-05

AMT. $ 28,032.00

DUE DATE 3-12-05

DISTRIBUTION PADDING
4200-000-045

**Total Amount:   $ 28,032.00**

*Thank you for your business*

Exhibit "O"



REC. 82577

REC. NO. 82577    DATE REC. 2/1

MDSE.-RECEPTION

MDSE. CHK. BY D.W. T.G.    DATE

ORDER CHK. BY T.W.    DATE

PURCHASE ORDER NO. 7390    DUE DATE

DEPT. RECEIVED AUG    STOCK ROOM WH 3

PCS. 3300    WT.

FEB 2 1 2005

SHIPPER: Dalton Bedding

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMER'S NAME AND ADDRESS IF RETURN, ETC.

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST | OTHER |
|---|---|---|---|---|---|---|
| Non-skid | 6x9 (H) | | | 500 ✓ | | |
| | 8x10 (H) | | | 400 ✓ | | |
| | 9x12 (H) | | | 500 ✓ | | |
| | 6x9 | | | 700 ✓ | | |
| | 8x10 | | | 600 ✓ | | |
| | 9x12 | | | 600 ✓ | | |

Total 3300 PCS

NOTE!!
IF CUSTOMER'S RETURN
BE SURE TO CHECK ( ✓ )

ENTERED IN UNIT CONTROL

Tyra Williams

82577

ORIGINAL

FORM 1856 IR

Exhibit "P"



Tracer: 12012573 – Amt: $1,670.90 - 02/22/2005

Tracer: 11046850 – Amt: $25,284.00 - 02/24/2005

Tracer: 11064632 – Amt: $30,175.00 - 03/03/2005

Tracer: 11069403 – Amt: $28,000.00 - 03/16/2005

Tracer: 11155620 – Amt: $28,032.00 - 04/11/2005

Exhibit "Q"

PURCHASE ORDER   7426

BILL TO:
INTERNATIONAL FLOOR CRAFT, INC.
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

TELEPHONE NUMBER   706--3904   CONTACT PERSON   Mike Brown

INTERNATIONAL FLOOR CRAFT, INC., INFORMAT

CCC Int'l

Ler to Virginia
Paul Vini 19 V who--
1 big ship +
New Bedford MG.

Netweight —

DATE OF ORDER   SHIP ON   CANCELLATION DATE
ORDER GIVEN BY   JW   DEPT. 7

TERMS
NET   2 % DISCOUNT ___ DAYS
OTHER   ___ DAYS

SHIPPING INSTRUCTIONS: Call and
Trade Manager at 800-000-0000
DELIVERY APPOINTMENT: Call

PLEASE DO NOT SHIP BACK
ORDERS OR PARTIAL SHIPMENTS
WHERE ADDITIONAL FREIGHT
CHARGES WILL RESULT

RECEIVING IICTIONS
FEB 0 9 2005

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GE/BE 2-9-05 | See Attached | | | | | | | | | | | | | | |

CONDITIONS OF THIS ORDER

ALL COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-961-8800 OR 508-999-8801. FAILURE TO COMPLY WITH ANY OF THE SHIPPING INSTRUCTIONS OR INCREASED CHARGES INCURRED ON ALL BACK ORDERS MUST BE SHIPPED PRE-PAID.
1. THE ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION.
2. THE RIGHT IS RESERVED TO CANCEL IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE.
3. THE RIGHT IS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

| | |
|---|---|
| TOTAL RETAIL | 0 445 |
| COST OF GOODS | 5800 — |
| COST OF FREIGHT | 0 — |
| TOTAL COST | 5800 |
| % MARKUP | 4990 |

BUYER'S NOTES:
RATING: (1-10)

6 x 6 & 9 x 1 +

New held ½ fcc

| SIZE/COMM | COST | SELL | TOT | WHSE-3 | EXT.COST | EXT.RET | YD. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| COMM | $13.00 | $19.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| .8 GOOD | $16.50 | $28.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BETT | $17.00 | $28.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BEST | $19.50 | $34.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 WOW | $22.00 | $39.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BERB | $19.00 | $29.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 6X9 COMM | $18.25 | $28.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 IRREG | $18.00 | $34.95 | 800 | 800 | $14,400.00 | $27,960.00 | 6.00 | 4800.00 |
| 6X9 PRIME | $22.00 | $39.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| X9 PREMIU | $28.00 | $49.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 WOW | $37.00 | $68.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 BERB | $28.00 | $38.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 8X10 COMM | $30.00 | $47.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 GOOD | $38.50 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BETT | $41.00 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BEST | $45.00 | $99.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 WOW | $53.00 | $119.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BERB | $44.00 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X12 BERB | $48.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 WOW | $54.00 | $129.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 BEST | $47.00 | $109.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 BETT | $42.00 | $79.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 GOOD | $41.50 | $79.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 IRREG | $38.00 | $74.95 | 300 | 300 | $11,400.00 | $22,485.00 | 12.00 | 3600.00 |
| 8X12 COMM | $35.00 | $48.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 GOOD | $49.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BETT | $57.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BEST | $69.00 | $129.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 WOW | $75.00 | $149.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BERB | $58.00 | $95.00 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |

FEB 09 2005

PO 7426

Cost - #25,800 —
Retail - $ 50,4?5-00

Exhibit "R"

# CCC International
### Direct Importers• Wholesalers• Since 1975
7903-A Kincannon Place, Lorton, VA 22079
Tel:(703)550-0222 Fax:(703)550-0297
Toll Free:1-800-763-2446
Web Site: www.cccint.com

INVOICE 63134

| Date | Order No. |
|------|-----------|
| Jan. 26, 2005 | 7426 |

TO   ACCOUNTS PAYABLE DEPT

INTERNATIONAL FLOOR CRAFT
319 LINCOLN STREET,
HINGHAM, MA 02043

ShipTo

BUILDING 19, WAREHOUSE #3
1 KING STREET,
NEW BEDFORD, MA 02746

1.All Claims must be made in writing within 7 days.
2.Goods returned are subject to a 15% restocking fee.
3.Buyer shall pay costs of shipping & handling.

4.Accounts past due will be charged 1.5% per month.
5.In the event this invoice is placed for collection. Buyer
  agrees to pay all related expenses such as attorneys fees,
  filing fee, court costs, costs of transportation and so on.

| SALESREP. | DATE SHIPPED | VIA | F.O.B.POINT | TERMS |
|-----------|--------------|-----|-------------|-------|
| | 01/26/05 | TRUCKING | | 2%20 DAYS |

| | | | | | Unit | Total |
|---|-----|-----|-----|-----|------|-------|
| 800 | 6x9 | Bound Rugs/2nds Assorted | | | 18.00 | $ 14400.00 |
| 300 | 9x12 | Bound Rugs/2nds Assorted | | | 38.00 | 11400.00 |
| | | | | TOTAL DUE: | | ---------- |
| | | | | | | $ 25800.00 |
| | | | | | | ========== |

5323
CORP. IFC

2/4

VENDOR ACCT # ___CIO___

INVOICE NO. ___63134___

DATE ___1-26-05___

AMT. $ 25,800.00   (516.00)
                    25,284.00

DUE DATE ___2-15-05___

DISTRIBUTION ___REMS___
___4200-000-002___

*THANK YOU*

Exhibit S

| Field | Value |
|---|---|
| KEY-REC. NO. | 82554 |
| DATE REC. | 1/27 |
| DEPT. | RV63 |
| STORE | WH3 |
| CHGB. | |
| W. | |
| PCS. | 1100 |
| MDSE. CKD. BY | TempLs. D.W. |
| ORDER FILLED BY | T.W. |
| PURCHASE ORDER NO. | 7426 |

SHIPPER: CCC INT'L

RECEIVED VIA / CARRIER'S NO. — FEB 0 4 2005

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMER'S NAME AND ADDRESS IF RETURN, ETC.

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST |
|---|---|---|---|---|---|
| Rems | 6X9 IRREG | | | 800 | |
| | 9X12 | | | 300 | |

Total 1100 PCS

FORM 1656 IR

NOTE!!
IF CUSTOMER'S RETURN
BE SURE TO CHECK ( ✓ )
ENTERED IN UNIT CONTROL

Tyrone Williams

82554

ORIGINAL

Exhibit "T"



Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005     Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005

Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005     Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005

Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005     Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005

Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005     Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005

Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005     Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC. )<br>    Plaintiff               )<br>                             )<br>v.                          )<br>                             )<br>DAVID W. ADAMS,         )<br>TYRONE WILLIAMS, KEVIN BRITTO,  )<br>RONALD E. MITCHELL, Individually and  )<br>d/b/a MANSFIELD RUG COMPANY   )<br>a/k/a MANSFIELD RUG DEPARTMENT and )<br>REMCO, MICHAEL E. BROWN, Individually)<br>and d/b/a DALTON PADDING and    )<br>EMPIRE WEAVERS, JANE DZIEMIT,   )<br>AGATHA ESPOSITO,         )<br>DONALD SHOOP,          )<br>CCC INTERNATIONAL, INC.,     )<br>JOHN D. SUN, DAVID D. SUN, and   )<br>PAUL SUN            )<br>    Defendants        )<br>                             )<br>v.                         )<br>LOWELL FIVE CENT SAVINGS BANK *et al*)<br>    Trustee Process Defendants   )<br>                             ) | CIVIL ACTION NO. _____ |

## AFFIDAVIT OF ROBERT O'NEIL

I, Robert O'Neil, under oath, depose and state as follows:

1.     I am the Director of Operations & Investigations of Data Quest

Investigations, Ltd., a company located at 667 Boylston Street, Boston, Massachusetts,

which provides, among other things, investigative services to protect client assets and

personnel. Data Quest has been in business for more than twenty years.

2.     Data Quest, Ltd. is licensed to conduct investigations in the

Commonwealth of Massachusetts.

3.    I submit the within affidavit in support of International Floor Crafts, Inc.'s

motion for real estate attachment.

4.    In or around June, 2005, at the request of International Floor Crafts, Inc., I

commenced an investigation regarding, among other things, the existing assets of the

various individuals who are now named as defendants in the within action.

5.    To date, as a result of asset searches, I have been able to determine that the

following individuals own, or are likely to own, individually or jointly, real property

located at the addresses listed below:

David Adams
5 Oxbow Drive
Wilmington, MA  01887

Tyrone Williams
171 Smith Street
New Bedford, MA  02740

Agatha Esposito
260 Hemingway Avenue
East Haven, CT  06512

Donald Shoop
225 Townsend Avenue
New Haven, CT  06512

Jane Dziemit
3745 Las Vegas Boulevard
Las Vegas, NV  89109

Jane Dziemit
48551 Shady View Drive
Palm Desert, CA  92260

Jane Dziemit
155 Huntington Road
New Haven, CT  06512

Ronald Mitchell
16 Jefferson Place
White Plains, NY  10603

2

Ronald Mitchell
8325 Glenrose Way, Unit 1421
Sarasota, FL 34238

David Darhaw Sun
7905 Bressingham Drive
Fairfax Station, VA 22039

John Sun
13614 Yellow Poplar Drive
Centreville, VA 20120

John Sun
7903 Kincannon Place
Lorton, VA 22079

Signed under the pains and penalties of perjury this 3rd day of August, 2005.

Robert O'Neil

3

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC. ) <br>    Plaintiff )<br> )<br> v. )<br> )<br> )<br> DAVID W. ADAMS, )<br> TYRONE WILLIAMS, KEVIN BRITTO, )<br> RONALD E. MITCHELL, Individually and )<br> d/b/a MANSFIELD RUG COMPANY )<br> a/k/a MANSFIELD RUG DEPARTMENT and )<br> REMCO, MICHAEL E. BROWN, Individually)<br> and d/b/a DALTON PADDING and )<br> EMPIRE WEAVERS, JANET ZIEMBA, )<br> AGATHA ESPOSITO, )<br> DONALD SHOOP, )<br> CCC INTERNATIONAL, INC., )<br> JOHN D. SUN, DAVID D. SUN, and )<br> PAUL SUN )<br>    Defendants )<br> )<br> v. )<br> LOWELL FIVE CENT SAVINGS BANK *et al*)<br>    Trustee Process Defendants ) | CIVIL ACTION NO. _____<br><br> CA 11654 NMG |

**PLAINTIFF'S MOTION FOR *EX PARTE* APPROVAL OF
ATTACHMENT BY TRUSTEE PROCESS**

Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") moves this Court

pursuant to Fed.R.Civ.P. 64, Mass. Gen. Laws ch. 223 §42 (2002) and Mass.R.Civ.P. 4.2

to approve an attachment on trustee process of goods, effects, or credits of any and all of

the Defendants in the amount of $5 million dollars (the total amount of which, based

upon the current state of an ongoing investigation, the Defendants have presently

defrauded IFC,)   entrusted to and deposited in any of the following:  Lowell Five Cent

Savings Bank, Wachovia Bank, National Association f/k/a First Union Bank of Virginia,

Citizens Bank, Bank of America f/k/a Bank of Boston, People's Bank and First Union

National Bank (collectively, the "Trustee Process Defendants"). Plaintiff IFC moves on

an *ex parte* basis where, if Defendants are given notice of the within lawsuit and request

for real estate attachment, trustee process and injunctive relief, there is a clear danger that

Defendants will seek to transfer their accounts and/or real estate in order to avoid

attachment thereof. (See Verified Complaint ("VC"), ¶ 95). Plaintiff IFC seeks approval

of an attachment by trustee process, as expressed in Count VII of the Verified Complaint,

for the reasons set forth below and incorporates its Verified Complaint herein by

reference:

      1.     Pursuant to Fed.R.Civ.P. 64, this Court may grant prejudgment security

"in the manner provided by the law of the state in which the district court is held."

Mass.R.Civ.P. 4.2 permits the trustee process attachment of property in any action in

which debt or damages are recoverable.

      2.     In the case at bar, the Verified Complaint describes in detail a pattern of

racketeering activity under which the Defendants embezzled at least five million dollars

from IFC over at least the past eight years. The Defendants include, without limitation,

various present and former employees of IFC and manufacturers' representatives to

mainly non-existent companies who conspired to defraud IFC by preparing fabricated

purchase orders and fictitious shipping documents in order to cause IFC to make

thousands of dollars of payments at a time to illusory companies for non-existent

merchandise. (See Verified Complaint). IFC makes the within investigation only after

conducting its own internal investigation and having further investigation by an

2

experienced investigator (See VC, ¶¶32-36). The Verified Complaint alleges claims for RICO violations, conspiracy to violate RICO, conversion, unfair and deceptive business practices, fraud, breach of fiduciary duty and injunctive relief.

    3.     A summary of the facts adduced thus far is as follows:

Plaintiff IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire. (VC, ¶24). In the normal course of business, in essence, IFC employs various buyers who work with manufacturer representatives of various supplying companies in order to locate and to purchase merchandise for retail sale. IFC's buyers then negotiate the terms of the purchase of said merchandise, and then the buyer places an order with the supplying company. The supplying company then ships the merchandise to IFC. A warehouse receiver, employed by IFC, verifies that the merchandise received by IFC meets the order. The manufacturer representative then forwards an invoice from the supplying company to buyer. The buyer then verifies that the invoice meets the request for merchandise, and, if so, the buyer approves the invoice and forwards it to the Accounts Payable Department at IFC. At or around the same time, the warehouse receiver prepares and forwards the receiving documents (also known as "Key Reqs") to the Accounts Payable Department. The Accounts Payable Department matches the invoice to the receiving documents and then pays the invoice. (VC, ¶25).

From approximately October, 1999 through July, 2002, Defendant Adams served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC. From July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the capacity

3

of the carpet and rug buyer. In that capacity, Defendant Adams was responsible for purchasing remnants, broadloom and woodflooring for IFC. (VC, ¶26).

In or around early April, 2005, the new buyer at IFC, who replaced Defendant Adams, reported to senior management at IFC that he could not locate certain inventory. (VC, ¶27). Among other invoices, the new buyer was unable to confirm receipt of merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in the amount of $25,054.77 At that time, IFC requested proof of delivery (a bill of lading) from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug. (VC, ¶28).

On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams and listing Regional Trucking as the trucking company. On April 27, 2005, a representative of Regional Trucking informed the new buyer that Regional Trucking did not pick up the merchandise referred to in that invoice. (VC, ¶29).

The new buyer also questioned an invoice dated March 18, 2005 in the amount of $18,313.48 pertaining to the delivery of wood flooring from CCC International. On May 9, 2005, the new buyer took an inventory of all wood flooring on hand and was unable to locate the wood flooring represented by the invoice. When contacted, Defendant Brown, who was the manufacturer's representative for CCC International, stated to the new buyer that he could not determine the type of wood flooring that CCC International had shipped on the invoice at issue. (VC, ¶30).

At that point, IFC launched an internal investigation to see which merchandise Adams had ordered for IFC. The initial investigation revealed that Adams had ordered

4

merchandise from several companies who did not appear to exist, including, without limitation, Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers. (VC, ¶31).

As a part of the investigation, IFC asked Defendants Michael Brown and Ronald Mitchell, both of whom were manufacturer representatives, to provide IFC with bills of lading showing the shipment of the merchandise. Despite the hundreds of shipments, Defendant Mitchell produced only one bill of lading – a bill of lading that IFC later determined to be fabricated. Instead, CCC International, Empire Weaver and Dalton Padding provided IFC with computer printouts containing Defendant Williams' signatures. Neither Mansfield Rug nor Remco provided any bills of lading. Defendant Mitchell later told IFC, falsely, that the bills of lading had been inadvertently shredded a week earlier to its request. (VC, ¶32).

Through further investigation during April and May, 2005, IFC calculated the estimated rug inventory levels at IFC based upon the merchandise purchased and sold during the period from December 30, 2003 through January 31, 2005. When IFC compared the estimate to actual inventory, IFC noticed a gap of approximately five million dollars at retail value. At retail value, the amount of merchandise purchased from Mansfield Rug Company, Mansfield Rug Department, Remco, Dalton Padding, Empire Weavers, (hereinafter, collectively, "the Fictitious Companies") and CCC International was approximately $4.5 million dollars. Moreover, during the same thirteen month period, IFC made payments in the amount of approximately $1,991,000.00 to CCC International. IFC has been unable to locate any bills of ladings or other confirmatory

5

documentation regarding the receipt of any merchandise from CCC International during that thirteen month period. (VC, ¶34).

As a part of its investigation, IFC then examined the inventory taken at the warehouse in January, 2005. Documentation prepared by Defendants Adams and Williams showed that IFC supposedly received into the New Bedford warehouse on King Street approximately $313,175.00 worth of carpets and rugs from CCC International during December, 2004 and January, 2005, and that IFC supposedly received into said New Bedford warehouse approximately $205,000.00 in carpets and rugs from Empire Weavers during that same period. Even so, the January, 2005 inventory showed no carpet or rugs on hand at said New Bedford warehouse from any of the Fictitious Companies or from CCC International. Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the Fictitious Companies and all of the fraudulent shipments from CCC International during January, 2005 to said New Bedford warehouse. (VC, ¶35).

In or around May, 2005, IFC retained a private investigator to investigate the matter further. The private investigator determined that Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers (hereinafter, "the Fictitious Companies") do not exist, and that IFC had been making payments to non-existent companies for non-existent merchandise. (VC, ¶36). In each instance in which IFC allegedly received merchandise from any of the Fictitious Companies, Defendant Tyrone Williams served as a Receiver on behalf of IFC. (VC, ¶37).

For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC,

6

by telephone and facsimile – even during times when Defendant Adams and/or Defendant Britto did not work at IFC. Upon information and belief, at all times relevant, all of the Defendants have maintained a common communication network for sharing information on a regular basis. Where necessary, upon information and belief, one or more of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise. Upon information and belief, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails and/or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise. (VC, ¶38).

Through the investigation, IFC has learned that CCC International, which is an actual company, also sent false invoices and received payment for non-existent merchandise. Unlike the Fictitious Companies, upon information and belief, CCC International has also engaged in some legitimate merchandise transactions with IFC from 2000 to the present. (VC, ¶39).

As a result of the investigation, IFC has determined that, over the past eight to ten years, Buyers Britto and Adams colluded with manufacturer representatives Brown,

7

Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the Suns created false invoices for non-existent shipments of merchandise from one of the Fictitious Companies and/or CCC International to IFC. Under the criminal enterprise, Defendants Britto or Adams would create purchase orders. Defendant Williams or Defendant Britto would then generate fabricated Key Reqs in which he or they falsely confirmed that IFC had received the non-existent merchandise, and he or they would then forward the Key Reqs to Accounts Payable for payment. Accounts Payable would then make payments to various individuals and/or entities, including, without limitation, Mansfield Rug, CCC International, Remco, Empire Weavers, and Accounts Payable would forward these payments to various addresses, including, without limitation, addresses for the following individuals, Jane Dziemit (for Remco), Agatha Esposito (for Remco), and Donald Shoop (for Remco). (VC, ¶40). In the Verified Complaint, IFC outlines instances in which the Fraudulent Companies and CCC International were used to defraud IFC of funds. (VC, ¶¶41-61).

Thus far, IFC has determined that IFC has received invoices in the following total amounts from four fictitious companies for non-existent merchandise:

| | Years | Company | Amount |
|---|---|---|---|
| a. | 1999-2005 | Remco | approx. $2,300,000.00 |
| b. | 1999-2005 | Mansfield Rug | approx.    $980,000.00 |
| c. | 1996-2005 | Empire Weavers | approx. $1,170,000.00 |
| d. | 1997-2005 | Dalton Padding | approx.    $394,000.00 |

**Total**: $4,844,000.00 (approx.)

8

Of that total, IFC made payments to the Fictitious Companies in the amount of approximately $4,474,000.00 for non-existent merchandise. (VC, ¶62).

From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million. At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein. (VC, ¶63). Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars. While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stand at between four and six million dollars. (VC, ¶64).

4.      Plaintiff IFC has a reasonable likelihood of success on the merits, and seeks to recover a judgment, including interest and costs, against all of the Defendants, for an amount equal to or greater than the amount of the attachment. (See VC, ¶ 92).

5.      Plaintiff IFC knows of no liability insurance that will be available to satisfy its claims, and therefore believes that Defendants have no such insurance. (See VC, ¶ 93). Upon information and belief, all Defendants are not in the military. (See VC, ¶ 93).

6.      Plaintiff will suffer immediate and irreparable harm if the requested trustee process attachments are not granted up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims. (VC, ¶96). The harm that Plaintiff will incur if the trustee process attachments are not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted. (VC, ¶99).

7.      The Trustee Process Defendant Lowell Five Cent Savings Bank is a bank organized under the laws of the Commonwealth of Massachusetts with a principal place

of business located at 24 John Street, Lowell, Massachusetts. At all times relevant, upon

information and belief, Defendant David Adams maintained a bank account at the Lowell

Five Cent Savings Bank (Account No. 024-008072). (VC, ¶18).

8.        The Trustee Process Defendant Wachovia Bank, National Association,

formerly known as First Union National Bank of Virginia, is a bank organized under the

laws of the United States of America with a principal place of business located at 301

South College Street, Suite 4000, One Wachovia Center, Charlotte, North Carolina. At

all times relevant, upon information and belief, Defendant Michael Brown (Account No.

1080002141711), CCC International (Account No. 2000005235933) maintained a bank

account at the former First Union National Bank of Virginia, located in Richmond,

Virginia. Moreover, at all times relevant, the Defendants deposited various funds stolen

from IFC by means of various fictitious entities, including, without limitation, Dalton

Padding and Empire Weavers, into one or more First Union National Bank of Virginia

bank accounts maintained by the Defendants. Upon information and belief, one of the

account numbers is Account No. 2000005235933.   (VC, ¶19).

9.        The Trustee Process Defendant Citizens Bank is a bank organized under

the laws of the state of Rhode Island with a principal place of business located in

Providence, Rhode Island. At all times relevant, the Defendants deposited various funds

stolen from IFC by means of various fictitious entities, including, without limitation,

Remco and Mansfield Rug into one or more Citizens Bank bank accounts maintained by

the Defendants. (VC, ¶20).

10.        The Trustee Process Defendant Bank of America, formerly known as

Bank of Boston, is a bank organized under the laws of the state of North Carolina with a

10

principal place of business located in Charlotte, North Carolina. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Remco, into one or more Bank of Boston bank accounts at a branch located at 123 Day Hill Road, Windsor, Connecticut, maintained by the Defendants. (VC, ¶21).

11,     The Trustee Process Defendant People's Bank is a bank organized under the laws of the State of Connecticut with principal place of business located at 850 Main Street. 11th Floor, Bridgeport, Connecticut. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Mansfield Rug and Remco, into one or more People's Bank bank accounts maintained by the Defendants. (VC, ¶22).

12.     The Trustee Process Defendant First Union National Bank is a Pennsylvania Financial Institution with a principal place of business located at 301 South College Street, Charlotte, Pennsylvania. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Empire Weavers, into one or more First Union National Bank bank accounts maintained by the Defendants. (VC, ¶23).

13.     The funds held in those accounts by Defendants, at least in part, are the property of IFC. (VC, ¶91).

14.     Plaintiff seeks an attachment of the goods, effects or credits of the Defendants in the amount of Five Million Dollars ($5,000,000.00) in the possession of Trustee Process Defendants. (VC, ¶94).

11

15.    Plaintiff asserts that there is a clear danger that, if Defendants are given notice of

the within lawsuit and request for real estate attachment, trustee process, and injunctive relief,

Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment

thereof. (VC, ¶95).

16.    Upon information and belief, there is an immediate danger that the

Defendants will purchase, sell, transfer, conceal, manipulate, dilute, dissipate or

encumber their assets and/or monies, and/or the proceeds derived from the sale, transfer

or redemption thereof, in order to hinder or delay the satisfaction of the judgment

Plaintiff is likely to recover in this action and Plaintiff will be irreparably harmed as a

result thereof. (VC, ¶96).

WHEREFORE, Plaintiff respectfully requests that this Court issue the following orders:

(a)    an order of trustee process, in favor of Plaintiff of the goods,
effects or credits of any of the Defendants in the amount of Five Million
Dollars in the possession of any or all of the Trustee Process Defendants.

(b)    that the Court issue a summons and short order of notice to the
Defendants to appear and show cause why Plaintiff is not entitled to the
relief prayed for herein.

(c)    this Court order such other relief as may seem just and proper.

The Plaintiff
International Floor Crafts, Inc.
By Its Attorneys,

James B. Krasnoo
BBO# 279300
Paul J. Klehm
BBO # 561605
23 Main Street
Andover, MA 01810
(978) 475-9955

Dated: August ____, 2005

12

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC. )<br>    Plaintiff )<br>      )<br>v.     )<br>      )<br>DAVID W. ADAMS, )<br>TYRONE WILLIAMS, KEVIN BRITTO, )<br>RONALD E. MITCHELL, Individually and )<br>d/b/a MANSFIELD RUG COMPANY )<br>a/k/a MANSFIELD RUG DEPARTMENT and )<br>REMCO, MICHAEL E. BROWN, Individually )<br>and d/b/a DALTON PADDING and )<br>EMPIRE WEAVERS, JANE DZIEMIT, )<br>AGATHA ESPOSITO, )<br>DONALD SHOOP, )<br>CCC INTERNATIONAL, INC., )<br>JOHN D. SUN, DAVID D. SUN, and )<br>PAUL SUN )<br>    Defendants )<br>      )<br>v.     )<br>LOWELL FIVE CENT SAVINGS BANK *et al*)<br>    Trustee Process Defendants )<br>      ) | CIVIL ACTION NO. _____<br><br>11654   NMG |

## PLAINTIFF'S MOTION FOR *EX PARTE*
## TEMPORARY RESTRAINING ORDER

Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") moves this Court

pursuant to Fed.R.Civ.P. 64, Mass. Gen. Laws ch. 223 §42 (2002) and Mass.R.Civ.P. 65

for injunctive relief, as set forth in Count VIII of the Verified Complaint, temporarily

restraining the Defendants from (a) transferring, assigning, hypothecating or dissipating

real estate and (b) transferring, assigning, dissipating, hypothecating or paying any

monies other than in the ordinary course which should be no more than $3,000.00 per month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims, where, based upon the current state of an ongoing investigation, the Defendants have presently defrauded IFC in amounts up to $5 million. IFC moves on an *ex parte* basis where, if any of the Defendants are given notice of the within lawsuit and request for real estate attachment, trustee process and injunctive relief, there is a clear danger that the Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment thereof. (See Verified Complaint ("VC"), ¶ 95). The Plaintiff seeks injunctive relief for the reasons set forth below and in its Verified Complaint filed herewith:

1.      Pursuant to Fed.R.Civ.P. 64, this Court may grant prejudgment security "in the manner provided by the law of the state in which the district court is held." Mass.R.Civ.P. 65 permits the issuance of temporary restraining orders permitting the attachment of property in any action in which debt or damages are recoverable.

2.      In the case at bar, the Verified Complaint describes in detail a pattern of racketeering activity under which the Defendants embezzled at least five million dollars from IFC over at least the past eight years. The Defendants include, without limitation, various present and former employees of IFC and manufacturers' representatives to mainly non-existent companies who conspired to defraud IFC by preparing fabricated purchase orders and fictitious shipping documents in order to cause IFC to make thousands of dollars of payments at a time to illusory companies for non-existent merchandise. (See Verified Complaint). IFC makes the within investigation only after

2

conducting its own internal investigation and having further investigation by an experienced investigator (See VC, ¶¶32-36). The Verified Complaint alleges claims for RICO violations, conspiracy to violate RICO, conversion, unfair and deceptive business practices, fraud, breach of fiduciary duty and injunctive relief.

3.    A summary of the facts adduced thus far is as follows:

    Plaintiff IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire. (VC, ¶24). In the normal course of business, in essence, IFC employs various buyers who work with manufacturer representatives of various supplying companies in order to locate and to purchase merchandise for retail sale. IFC's buyers then negotiate the terms of the purchase of said merchandise, and then the buyer places an order with the supplying company. The supplying company then ships the merchandise to IFC. A warehouse receiver, employed by IFC, verifies that the merchandise received by IFC meets the order. The manufacturer representative then forwards an invoice from the supplying company to buyer. The buyer then verifies that the invoice meets the request for merchandise, and, if so, the buyer approves the invoice and forwards it to the Accounts Payable Department at IFC. At or around the same time, the warehouse receiver prepares and forwards the receiving documents (also known as "Key Reqs") to the Accounts Payable Department. The Accounts Payable Department matches the invoice to the receiving documents and then pays the invoice. (VC, ¶25).

    From approximately October, 1999 through July, 2002, Defendant Adams served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC. From July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the capacity

3

of the carpet and rug buyer. In that capacity, Defendant Adams was responsible for
purchasing remnants, broadloom and woodflooring for IFC. (VC, ¶26).

In or around early April, 2005, the new buyer at IFC, who replaced Defendant
Adams, reported to senior management at IFC that he could not locate certain inventory.
(VC, ¶27). Among other invoices, the new buyer was unable to confirm receipt of
merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in
the amount of $25,054.77 At that time, IFC requested proof of delivery (a bill of lading)
from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug.
(VC, ¶28).

On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of
lading signed by Defendant Williams and listing Regional Trucking as the trucking
company. On April 27, 2005, a representative of Regional Trucking informed the new
buyer that Regional Trucking did not pick up the merchandise referred to in that invoice.
(VC, ¶29).

The new buyer also questioned an invoice dated March 18, 2005 in the amount of
$18,313.48 pertaining to the delivery of wood flooring from CCC International. On May
9, 2005, the new buyer took an inventory of all wood flooring on hand and was unable to
locate the wood flooring represented by the invoice. When contacted, Defendant Brown,
who was the manufacturer's representative for CCC International, stated to the new buyer
that he could not determine the type of wood flooring that CCC International had shipped
on the invoice at issue. (VC, ¶30).

At that point, IFC launched an internal investigation to see which merchandise
Adams had ordered for IFC. The initial investigation revealed that Adams had ordered

4

merchandise from several companies who did not appear to exist, including, without limitation, Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers. (VC, ¶31).

As a part of the investigation, IFC asked Defendants Michael Brown and Ronald Mitchell, both of whom were manufacturer representatives, to provide IFC with bills of lading showing the shipment of the merchandise. Despite the hundreds of shipments, Defendant Mitchell produced only one bill of lading – a bill of lading that IFC later determined to be fabricated. Instead, CCC International, Empire Weaver and Dalton Padding provided IFC with computer printouts containing Defendant Williams' signatures. Neither Mansfield Rug nor Remco provided any bills of lading. Defendant Mitchell later told IFC, falsely, that the bills of lading had been inadvertently shredded a week earlier to its request. (VC, ¶32).

Through further investigation during April and May, 2005, IFC calculated the estimated rug inventory levels at IFC based upon the merchandise purchased and sold during the period from December 30, 2003 through January 31, 2005. When IFC compared the estimate to actual inventory, IFC noticed a gap of approximately five million dollars at retail value. At retail value, the amount of merchandise purchased from Mansfield Rug Company, Mansfield Rug Department, Remco, Dalton Padding, Empire Weavers, (hereinafter, collectively, "the Fictitious Companies") and CCC International was approximately $4.5 million dollars. Moreover, during the same thirteen month period, IFC made payments in the amount of approximately $1,991,000.00 to CCC International. IFC has been unable to locate any bills of ladings or other confirmatory

5

documentation regarding the receipt of any merchandise from CCC International during that thirteen month period. (VC, ¶34).

As a part of its investigation, IFC then examined the inventory taken at the warehouse in January, 2005. Documentation prepared by Defendants Adams and Williams showed that IFC supposedly received into the New Bedford warehouse on King Street approximately $313,175.00 worth of carpets and rugs from CCC International during December, 2004 and January, 2005, and that IFC supposedly received into said New Bedford warehouse approximately $205,000.00 in carpets and rugs from Empire Weavers during that same period. Even so, the January, 2005 inventory showed no carpet or rugs on hand at said New Bedford warehouse from any of the Fictitious Companies or from CCC International. Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the Fictitious Companies and all of the fraudulent shipments from CCC International during January, 2005 to said New Bedford warehouse. (VC, ¶35).

In or around May, 2005, IFC retained a private investigator to investigate the matter further. The private investigator determined that Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers (hereinafter, "the Fictitious Companies") do not exist, and that IFC had been making payments to non-existent companies for non-existent merchandise. (VC, ¶36). In each instance in which IFC allegedly received merchandise from any of the Fictitious Companies, Defendant Tyrone Williams served as a Receiver on behalf of IFC. (VC, ¶37).

For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC,

6

by telephone and facsimile – even during times when Defendant Adams and/or Defendant Britto did not work at IFC. Upon information and belief, at all times relevant, all of the Defendants have maintained a common communication network for sharing information on a regular basis. Where necessary, upon information and belief, one or more of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise. Upon information and belief, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails and/or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise. (VC, ¶38).

Through the investigation, IFC has learned that CCC International, which is an actual company, also sent false invoices and received payment for non-existent merchandise. Unlike the Fictitious Companies, upon information and belief, CCC International has also engaged in some legitimate merchandise transactions with IFC from 2000 to the present. (VC, ¶39).

As a result of the investigation, IFC has determined that, over the past eight to ten years, Buyers Britto and Adams colluded with manufacturer representatives Brown,

Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the Suns created false invoices for non-existent shipments of merchandise from one of the Fictitious Companies and/or CCC International to IFC. Under the criminal enterprise, Defendants Britto or Adams would create purchase orders. Defendant Williams or Defendant Britto would then generate fabricated Key Reqs in which he or they falsely confirmed that IFC had received the non-existent merchandise, and he or they would then forward the Key Reqs to Accounts Payable for payment. Accounts Payable would then make payments to various individuals and/or entities, including, without limitation, Mansfield Rug, CCC International, Remco, Empire Weavers, and Accounts Payable would forward these payments to various addresses, including, without limitation, addresses for the following individuals, Jane Dziemit (for Remco), Agatha Esposito (for Remco), and Donald Shoop (for Remco). (VC, ¶40). In the Verified Complaint, IFC outlines instances in which the Fraudulent Companies and CCC International were used to defraud IFC of funds. (VC, ¶¶41-61).

Thus far, IFC has determined that IFC has received invoices in the following total amounts from four fictitious companies for non-existent merchandise:

|    | Years     | Company        | Amount                  |
|----|-----------|----------------|-------------------------|
| a. | 1999-2005 | Remco          | approx. $2,300,000.00   |
| b. | 1999-2005 | Mansfield Rug  | approx.   $980,000.00   |
| c. | 1996-2005 | Empire Weavers | approx. $1,170,000.00   |
| d. | 1997-2005 | Dalton Padding | approx.   $394,000.00   |

**Total**: $4,844,000.00 (approx.)

Of that total, IFC made payments to the Fictitious Companies in the amount of approximately $4,474,000.00 for non-existent merchandise. (VC, ¶62).

From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million. At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein. (VC, ¶63). Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars. While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stand at between four and six million dollars. (VC, ¶64).

4.      IFC will suffer immediate and irreparable harm if Defendants are not restrained from (a) transferring, assigning, hypothecating or dissipating real estate and (b) transferring, assigning, dissipating, hypothecating or paying any monies other than in the ordinary course which should be no more than $3,000.00 per month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims. (VC, ¶98).

5.      The harm that IFC will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted. (VC, ¶99).

6.      Plaintiff has a strong likelihood of success on the merits for the reasons set forth herein. (VC, ¶100).

7.      Plaintiff knows of no liability insurance that will be available to satisfy their

claims, and therefore believe that Defendants have no such insurance. Upon information and

belief, none of the individual Defendants is in the military. (VC, ¶93).

8.      IFC respectfully requests, pursuant to Fed.R.Civ.P. 64, Mass. Gen. Laws ch. 223

§42 (2002) and Mass.R.Civ.P. 65, that this Court grant the following temporary restraining

order:

> (a)     Defendants, their agents, servants, successors, assigns, employees,
> attorneys, all persons acting or purporting to act on their behalf, and all
> persons having actual notice of any order issued hereunder, are
> temporarily restrained from directly or indirectly, transferring, alienating,
> conveying, encumbering, hypothecating, assigning, dissipating, pledging,
> distributing, or drawing down any of the Defendants' assets, including
> without limitation, any and all real property, up to Five Million Dollars
> ($5,000,000.00), plus attorneys' fees, other than in the ordinary course
> which shall not exceed $3,000 per month,

> (b)     Defendants, their agents, servants, successors, assigns, employees,
> attorneys, all persons acting or purporting to act on their behalf, and all
> persons having actual notice of any order issued hereunder, are
> temporarily restrained from directly or indirectly, transferring,
> hypothecating, assigning, or dissipating any real estate held in the names
> of one or more Defendants, and

> (c)     an Order for such other relief for Plaintiff as this Court deems just
> and equitable.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. respectfully requests

that this Court grant the within Motion and order:

> (a)     Defendants, their agents, servants, successors, assigns, employees,
> attorneys, all persons acting or purporting to act on their behalf, and all
> persons having actual notice of any order issued hereunder, are
> temporarily restrained from directly or indirectly, transferring, alienating,
> conveying, encumbering, hypothecating, assigning, dissipating, pledging,
> distributing, or drawing down any of the Defendants' assets, including
> without limitation, any and all real property, up to Five Million Dollars
> ($5,000,000.00), plus attorneys' fees, other than in the ordinary course
> which shall not exceed $3,000 per month,

10

(b)     Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, are temporarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants, and

(c)     an Order for such other relief for Plaintiff as this Court deems just and equitable.

The Plaintiff
International Floor Crafts, Inc.
By Its Attorneys,

James B. Krasnoo
*james@krasnoolaw.com*
Paul J. Klehm
*pklehm@krasnoolaw.com*
23 Main Street, Terrace Level
Andover, MA 01810
(978) 475-9955

Dated: August ___, 2005

11

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS,

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC.   ) | |
|     Plaintiff     ) | |
|     ) | |
| v.     ) | |
|     ) | |
| DAVID W. ADAMS,     ) | |
| TYRONE WILLIAMS, KEVIN BRITTO,   ) | |
| RONALD E. MITCHELL, Individually and   ) | CIVIL ACTION NO. _____ |
| d/b/a MANSFIELD RUG COMPANY   ) | |
| a/k/a MANSFIELD RUG DEPARTMENT and ) | 1 6 5 4     NMG |
| REMCO, MICHAEL E. BROWN, Individually) | |
| and d/b/a DALTON PADDING and   ) | |
| EMPIRE WEAVERS, JANE DZIEMIT,   ) | |
| AGATHA ESPOSITO,   ) | |
| DONALD SHOOP,   ) | |
| CCC INTERNATIONAL, INC.,   ) | |
| JOHN D. SUN, DAVID D. SUN, and   ) | |
| PAUL SUN   ) | |
|     Defendants     ) | |
|     ) | |
| v.     ) | |
| LOWELL FIVE CENT SAVINGS BANK *et al*) | |
|     Trustee Process Defendants     ) | |

## PLAINTIFF'S MOTION FOR *EX PARTE* APPROVAL OF REAL ESTATE ATTACHMENT

Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") moves this Court

pursuant to Fed.R.Civ.P. 64, Mass. Gen. Laws ch. 223 §42 (2002) and Mass.R.Civ.P. 4.1

to approve a real estate attachment in favor of IFC of real property owned by Defendants

David Adams, Tyrone Williams, Kevin Britto, Ronald Mitchell, Michael Brown, Jane

Dziemit, Agatha Esposito, Donald Shoop, CCC International, Inc., John D. Sun, David

D. Sun and Paul Sun, in the amount of $5 million, the total amount of which, based upon the current state of an ongoing investigation, the Defendants have presently defrauded IFC.  IFC moves on an *ex parte* basis where, if any of the Defendants are given notice of the within lawsuit and request for real estate attachment, trustee process and injunctive relief, there is a clear danger that the Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment thereof.  (See Verified Complaint ("VC"), ¶ 95). The Plaintiff seeks approval of a real estate attachment for the reasons set forth below and incorporates its Verified Complaint herein by reference and the Affidavit of Robert O'Neil filed herewith:

1.    Pursuant to Fed.R.Civ.P. 64, this Court may grant prejudgment security "in the manner provided by the law of the state in which the district court is held." Mass.R.Civ.P. 4.1 permits the attachment of property in any action in which debt or damages are recoverable.

2.    In the case at bar, the Verified Complaint describes in detail a pattern of racketeering activity under which the Defendants embezzled at least five million dollars from IFC over at least the past eight years. The Defendants include, without limitation, various present and former employees of IFC and manufacturers' representatives to mainly non-existent companies who conspired to defraud IFC by preparing fabricated purchase orders and fictitious shipping documents in order to cause IFC to make thousands of dollars of payments at a time to illusory companies for non-existent merchandise. (See Verified Complaint).  IFC makes the within investigation only after conducting its own internal investigation and having further investigation by an experienced  investigator (See VC, ¶¶32-36).  The Verified Complaint alleges claims for

2

RICO violations, conspiracy to violate RICO, conversion, unfair and deceptive business practices, fraud,  breach of fiduciary duty and injunctive relief.

      3.     A summary of the facts adduced thus far is as follows:

Plaintiff IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire. (VC, ¶24). In the normal course of business, in essence, IFC employs various buyers who work with manufacturer representatives of various supplying companies in order to locate and to purchase merchandise for retail sale. IFC's buyers then negotiate the terms of the purchase of said merchandise, and then the buyer places an order with the supplying company. The supplying company then ships the merchandise to IFC. A warehouse receiver, employed by IFC, verifies that the merchandise received by IFC meets the order. The manufacturer representative then forwards an invoice from the supplying company to buyer. The buyer then verifies that the invoice meets the request for merchandise, and, if so, the buyer approves the invoice and forwards it to the Accounts Payable Department at IFC. At or around the same time, the warehouse receiver prepares and forwards the receiving documents (also known as "Key Reqs") to the Accounts Payable Department. The Accounts Payable Department matches the invoice to the receiving documents and then pays the invoice. (VC, ¶25).

From approximately October, 1999 through July, 2002, Defendant Adams served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC. From July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the capacity of the carpet and rug buyer. In that capacity, Defendant Adams was responsible for purchasing remnants, broadloom and woodflooring for IFC. (VC, ¶26).

In or around early April, 2005, the new buyer at IFC, who replaced Defendant Adams, reported to senior management at IFC that he could not locate certain inventory. (VC, ¶27). Among other invoices, the new buyer was unable to confirm receipt of merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in the amount of $25,054.77 At that time, IFC requested proof of delivery (a bill of lading) from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug. (VC, ¶28).

On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams and listing Regional Trucking as the trucking company. On April 27, 2005, a representative of Regional Trucking informed the new buyer that Regional Trucking did not pick up the merchandise referred to in that invoice. (VC, ¶29).

The new buyer also questioned an invoice dated March 18, 2005 in the amount of $18,313.48 pertaining to the delivery of wood flooring from CCC International. On May 9, 2005, the new buyer took an inventory of all wood flooring on hand and was unable to locate the wood flooring represented by the invoice. When contacted, Defendant Brown, who was the manufacturer's representative for CCC International, stated to the new buyer that he could not determine the type of wood flooring that CCC International had shipped on the invoice at issue. (VC, ¶30).

At that point, IFC launched an internal investigation to see which merchandise Adams had ordered for IFC. The initial investigation revealed that Adams had ordered merchandise from several companies who did not appear to exist, including, without

4

limitation, Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers. (VC, ¶31).

As a part of the investigation, IFC asked Defendants Michael Brown and Ronald Mitchell, both of whom were manufacturer representatives, to provide IFC with bills of lading showing the shipment of the merchandise. Despite the hundreds of shipments, Defendant Mitchell produced only one bill of lading – a bill of lading that IFC later determined to be fabricated. Instead, CCC International, Empire Weaver and Dalton Padding provided IFC with computer printouts containing Defendant Williams' signatures. Neither Mansfield Rug nor Remco provided any bills of lading. Defendant Mitchell later told IFC, falsely, that the bills of lading had been inadvertently shredded a week earlier to its request. (VC, ¶32).

Through further investigation during April and May, 2005, IFC calculated the estimated rug inventory levels at IFC based upon the merchandise purchased and sold during the period from December 30, 2003 through January 31, 2005. When IFC compared the estimate to actual inventory, IFC noticed a gap of approximately five million dollars at retail value. At retail value, the amount of merchandise purchased from Mansfield Rug Company, Mansfield Rug Department, Remco, Dalton Padding, Empire Weavers, (hereinafter, collectively, "the Fictitious Companies") and CCC International was approximately $4.5 million dollars. Moreover, during the same thirteen month period, IFC made payments in the amount of approximately $1,991,000.00 to CCC International. IFC has been unable to locate any bills of ladings or other confirmatory documentation regarding the receipt of any merchandise from CCC International during that thirteen month period. (VC, ¶34).

As a part of its investigation, IFC then examined the inventory taken at the warehouse in January, 2005. Documentation prepared by Defendants Adams and Williams showed that IFC supposedly received into the New Bedford warehouse on King Street approximately $313,175.00 worth of carpets and rugs from CCC International during December, 2004 and January, 2005, and that IFC supposedly received into said New Bedford warehouse approximately $205,000.00 in carpets and rugs from Empire Weavers during that same period. Even so, the January, 2005 inventory showed no carpet or rugs on hand at said New Bedford warehouse from any of the Fictitious Companies or from CCC International. Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the Fictitious Companies and all of the fraudulent shipments from CCC International during January, 2005 to said New Bedford warehouse. (VC, ¶35).

In or around May, 2005, IFC retained a private investigator to investigate the matter further. The private investigator determined that Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers (hereinafter, "the Fictitious Companies") do not exist, and that IFC had been making payments to non-existent companies for non-existent merchandise. (VC, ¶36). In each instance in which IFC allegedly received merchandise from any of the Fictitious Companies, Defendant Tyrone Williams served as a Receiver on behalf of IFC. (VC, ¶37).

For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC, by telephone and facsimile – even during times when Defendant Adams and/or Defendant Britto did not work at IFC. Upon information and belief, at all times relevant,

all of the Defendants have maintained a common communication network for sharing
information on a regular basis. Where necessary, upon information and belief, one or
more of the Defendants have held meetings, in person and/or by telephone, to discuss
their criminal enterprise. Upon information and belief, the Defendants have (a)
knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish
the embezzlement of IFC funds and, directly or indirectly, and through agents or
employees, received various letters from other members of the criminal enterprise (b)
knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the
embezzlement of IFC funds and, directly or indirectly, and through agents or employees,
received various emails and/or facsimiles, from other members of the criminal enterprise,
and (c) knowingly made or caused to be made various telephone calls to accomplish the
embezzlement of IFC funds and, directly or indirectly, and through agents or employees,
received telephone calls from other members of the criminal enterprise, all in furtherance
of the criminal enterprise. (VC, ¶38).

Through the investigation, IFC has learned that CCC International, which is an
actual company, also sent false invoices and received payment for non-existent
merchandise. Unlike the Fictitious Companies, upon information and belief, CCC
International has also engaged in some legitimate merchandise transactions with IFC
from 2000 to the present. (VC, ¶39).

As a result of the investigation, IFC has determined that, over the past eight to ten
years, Buyers Britto and Adams colluded with manufacturer representatives Brown,
Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the
Suns created false invoices for non-existent shipments of merchandise from one of the

7

Fictitious Companies and/or CCC International to IFC. Under the criminal enterprise,

Defendants Britto or Adams would create purchase orders. Defendant Williams or

Defendant Britto would then generate fabricated Key Reqs in which he or they falsely

confirmed that IFC had received the non-existent merchandise, and he or they would then

forward the Key Reqs to Accounts Payable for payment. Accounts Payable would then

make payments to various individuals and/or entities, including, without limitation,

Mansfield Rug, CCC International, Remco, Empire Weavers, and Accounts Payable

would forward these payments to various addresses, including, without limitation,

addresses for the following individuals, Jane Dziemit (for Remco), Agatha Esposito (for

Remco), and Donald Shoop (for Remco). (VC, ¶40). In the Verified Complaint, IFC

outlines instances in which the Fraudulent Companies and CCC International were used

to defraud IFC of funds. (VC, ¶¶41-61).

Thus far, IFC has determined that IFC has received invoices in the following total

amounts from four fictitious companies for non-existent merchandise:

|     | Years      | Company         | Amount                    |
| --- | ---------- | --------------- | ------------------------- |
| a.  | 1999-2005  | Remco           | approx. $2,300,000.00     |
| b.  | 1999-2005  | Mansfield Rug   | approx.   $980,000.00     |
| c.  | 1996-2005  | Empire Weavers  | approx. $1,170,000.00     |
| d.  | 1997-2005  | Dalton Padding  | approx.   $394,000.00     |

**Total**: $4,844,000.00 (approx.)

Of that total, IFC made payments to the Fictitious Companies in the amount of

approximately $4,474,000.00 for non-existent merchandise. (VC, ¶62).

From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million. At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein. (VC, ¶63). Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars. While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stand at between four and six million dollars. (VC, ¶64).

4.      Plaintiff IFC has a reasonable likelihood of success on the merits, and seeks to recover a judgment, including interest and costs, against all of the Defendants, for an amount equal to or greater than the amount of the attachment. (See VC, ¶ 92).

5.      Plaintiff IFC knows of no liability insurance that will be available to satisfy its claims, and therefore believes that Defendants have no such insurance. (See VC, ¶ 93). Upon information and belief, all Defendants are not in the military. (See VC, ¶ 93).

6.      Plaintiff will suffer immediate and irreparable harm if Defendants are not restrained from transferring, assigning, hypothecating or dissipating real estate up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims. (VC, ¶98). The harm that Plaintiff will incur if the attachments are not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted. (VC, ¶99).

7.      To date, as a result of asset searches, Data Quest Investigations, Ltd. has been able to determine that the following individuals own, or are likely to own, individually or jointly, real property located at the addresses listed below:

David Adams
5 Oxbow Drive
Wilmington, MA  01887

Tyrone Williams
171 Smith Street
New Bedford, MA  02740

Agatha Esposito
260 Hemingway Avenue
East Haven, CT  06512

Donald Shoop
225 Townsend Avenue
New Haven, CT  06512

Jane Dziemit
3745 Las Vegas Boulevard
Las Vegas, NV  89109

Jane Dziemit
48551 Shady View Drive
Palm Desert, CA  92260

Jane Dziemit
155 Huntington Road
New Haven, CT  06512

Ronald Mitchell
16 Jefferson Place
White Plains, NY 10603

Ronald Mitchell
8325 Glenrose Way, Unit 1421
Sarasota, FL  34238

David Darhaw Sun
7905 Bressingham Drive
Fairfax Station, VA  22039

John Sun
13614 Yellow Poplar Drive
Centreville, VA  20120

John Sun

7903 Kincannon Place
Lorton, VA 22079

(Affidavit of Robert O'Neil, ¶5).  Through this motion, IFC seeks an order of real estate

attachment against not only the Defendants listed above who have, or are likely to have

real property, but also against the remaining Defendants to the extent that they may own,

or later acquire, real property during the pendency of this case.

       8.       IFC respectfully requests, pursuant to Fed.R.Civ.P. 64, Mass. Gen. Laws ch. 223

§42 (2002) and Mass.R.Civ.P. 4.1, that this Court grant a real estate attachment and temporarily

restrain Defendants from directly or indirectly, transferring, assigning, or dissipating real estate

up to the amount of $5 million dollars.

       WHEREFORE, Plaintiff International Floor Crafts, Inc. respectfully requests

that this Court grant the within Motion and order:

             (a)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any
and all real property, in whole or in part, in the name of David Adams in
the amount of $5 million dollars,

             (b)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any
and all real property, in whole or in part, in the name of Tyrone Williams
in the amount of $5 million dollars,

             (c)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any
and all real property, in whole or in part, in the name of Kevin Britto in
the amount of $5 million dollars,

             (d)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any
and all real property, in whole or in part, in the name of Ronald Mitchell
in the amount of $5 million dollars,

11

(e)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of Michael Brown in the amount of $5 million dollars,

(f)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of Jane Dziemit in the amount of $5 million dollars,

(g)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of Agatha Esposito in the amount of $5 million dollars,

(h)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of Donald Shoop in the amount of $5 million dollars,

(i)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of CCC International, Inc. in the amount of $5 million dollars,

(j)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of John D. Sun in the amount of $5 million dollars,

(k)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any and all real property, in whole or in part, in the name of David D. Sun in the amount of $5 million dollars,

(l)     An attachment in favor of Plaintiff International Floor Crafts, Inc. of any

        and all real property, in whole or in part, in the name of Paul Sun in the

        amount of $5 million dollars, and

(m)     an Order for such other relief for Plaintiff as this Court deems just

        and equitable.

                                    The Plaintiff
                                    International Floor Crafts, Inc.
                                    By Its Attorneys,


                                    James B. Krasnoo
                                        *james@krasnoolaw.com*
                                    Paul J. Klehm
                                        *pklehm@krasnoolaw.com*
                                    23 Main Street, Terrace Level
                                    Andover, MA 01810
Dated: August ___, 2005             (978) 475-9955

13

United States District Court
District of Massachusetts

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC., | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. 05-11654-NMG |
| v. | ) ) |
| DAVID W. ADAMS, et al., | ) ) |
| Defendants. | ) ) |

I hereby certify on 8-11-05 that the foregoing **document is true and correct copy of the**
☐ electronic docket in the captioned case
☐ electronically filed original filed on_____
☑ original filed in my office on_____

Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk

ORDER GRANTING TEMPORARY RESTRAINING ORDER

GORTON, J.

After reviewing Plaintiff's Motion for Ex Parte Temporary
Restraining Order, and all accompanying papers, including the
Verified Complaint, this Court finds the Motion to be well-taken,
and it is hereby ORDERED that defendants David W. Adams, Tyrone
Williams, Kevin Britto, Ronald E. Mitchell, Michael E. Brown,
Jane Dziemit, Agatha Esposito, Donald Shoop, CCC International,
Inc., John D. Sun, David D. Sun and Paul Sun (collectively,
"Defendants"), their agents, servants, successors, assigns,
employees, attorneys, all persons acting or purporting to act on
their behalf, and all persons having actual notice of any order
issued hereunder, are temporarily restrained from directly or
indirectly transferring, alienating, conveying, encumbering,
hypothecating, assigning, dissipating, pledging, distributing, or

-1-

drawing down any of the Defendants' assets, including, without

limitation, any and all real property held in the names of one or

more Defendants, up to Five Million Dollars ($5,000,000), other

than in the ordinary course which shall not exceed $3,000 per

month.

This Order shall be in effect until such time as the Court

decides whether to issue a Preliminary Injunction in connection

with this case, the hearing for which is set for Friday, August

19, 2005 at 10:00 a.m. in Courtroom 4 of the John J. Moakley

United States Courthouse, Boston, Massachusetts.

This Order was allowed at a hearing on August 10, 2005 at

3:30 p.m.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: August *II* , 2005

-2-

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

INTERNATIONAL FLOOR CRAFTS, INC. _____,
        Plaintiff(s)

V.                 CIVIL ACTION NO. 05 CA 11654

DAVID W. ADAMS and CCC INTERNATIONAL, INC., *ET AL* _____,
        Defendant(s)

## WRIT OF ATTACHMENT

To the United States Marshal of the District of Massachusetts or either of his Deputies, and to _____, Process Server appointed by the Court;

### GREETINGS:

In an action filed in this Court on August 10, 2005 _____, in which the Plaintiff(s) is/are International Floor Crafts, Inc. _____
_____, of Hingham, Massachusetts _____
_____whose attorney is _James B. Krasnoo and Paul J. Klehm_ of _Andover, Massachusetts _____, and the defendant(s) is/are CCC International, Inc. _____
_____, of _7903A Kincannon Place, Lorton, Virginia _____
_____, we command you to attach the real estate and/or personal property of the Defendant(s) CCC International, Inc. _____
_____ in accordance with the following directions and/or limitations (if any): (none) _____

_____
_____

_____ to the value of $ 5 million dollars _____, and make due return of this writ with your doings thereon into said Court.

This attachment was approved on _August 10, 2005_____ by _Nathaniel M. Gorton _____ in the amount of $ 5 million dollars _____.

Dated at _Boston, Massachusetts_ this _11th_ day of _August, 2005_____.

SEAL                      SARAH A. THORNTON
                              CLERK OF COURT

                             By:_____
                                   Deputy Clerk

(Attachment.wpd - 3/7/2005)

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Eastern _____    District of   Massachusetts _____

INTERNATIONAL FLOOR CRAFTS, INC.

### SUMMONS IN A CIVIL ACTION

V.

DAVID W. ADAMS AND
CCC INTERNATIONAL, INC. ,
ET AL

CASE NUMBER:

# 05 CA 11654   NMG

TO: (Name and address of Defendant)

CCC International, Inc.
7903A Kincannon Place
Lorton, Virginia

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

James B. Krasnoo and Paul J. Klehm
Law Offices of James B. Krasnoo
23 Main Street
Andover, MA  01810

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.



SARAH A. THORNTON

(By) DEPUTY CLERK

8-10-05

DATE