UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUILDING #19, INC. AND<br>INTERNATIONAL FLOOR CRAFTS, INC.,<br><br>Plaintiffs<br><br>v.<br><br>DAVID W. ADAMS, ET AL.,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-11654-NMG |

### EMERGENCY MOTION OF DEFENDANT DAVID W. ADAMS FOR TEMORARY DISSOLUTION OF EX PARTE REAL ESTATE ATTACHMENT AND MODIFICATION OF TEMPORRARY RESTRAINING ORDER

Pursuant to Fed.R.Civ.P. 64 and Mass.R.Civ.P. 4.1, the Defendant, David W. Adams, hereby requests this Court to dissolve the $5,000,000.00 attachment obtained by the Plaintiffs on his residence at 5 Oxbow Drive, Wilmington, Massachusetts (hereinafter, "Oxbow Drive property"), for a period of 14 days, at which time the attachment may be re-instated by the Plaintiffs, with the assent of the Defendant which is hereby acknowledged. The Defendant is also requesting this Court to modify any temporary restraining order or preliminary injunction issued by this Court so as to allow him to consummate a refinancing transaction described below. The Defendant is filing this Motion on an emergency basis because he will lose his residential home to a foreclosure in the event that the Plaintiffs' real estate attachment is not dissolved immediately. As grounds for this Motion, the Defendant states the following:

1. The Oxbow Drive property is the Defendant's only substantial asset. He owns it with his wife, Linda M. Adams, as tenants by the entirety, and it is their primary residence. The Defendant has lived at this property with his wife and four children for 14 years.

2. Since the Defendant owns the Oxbow Drive property with his wife as tenants by the entirety, under M.G.L. c. 209, § 1, the property is not subject to seizure or execution by the Plaintiffs so long as the property remains the principal residence of his wife. The Oxbow Drive property is, of course, subject to being attached. Peebles v. Minnis, 402 Mass. 282, 521 N.E.2d 1372 (1988) (individual creditors of one spouse may attach property held in tenancy by the entirety while it remains principal residence of the other, nondebtor spouse).

3. There is a first mortgage on the property held by New Century Mortgage in the approximate amount of $397,000.00. Telestar Corp. holds a second mortgage in the approximate amount of $47,000.00. In addition, there are federal tax liens on the property in the approximate amount of $110,020.94. The Oxbow Drive property has been recently appraised at $520,000.00. Accordingly, the encumbrances on the Oxbow Drive property, which total $554,020.94, exceed its fair market value, and the Plaintiffs' attachment is worthless at this time.

4. The holder of the second mortgage, Telestar Corp., had declared a default and is in the process of foreclosing on its mortgage.

5. As a result of the threatened foreclosure and the IRS tax liens, the Defendant recently obtained a commitment from Freemont Investment and Loan Company of Tampa, Florida (hereinafter, "Freemont") to lend him sufficient money to

obtain a discharge of the existing mortgages, and to pay the Internal Revenue Service the sum of $8,000.00-16,000.00 as part of a subordination agreement. The IRS has indicated that it is likely to apply the $8,000.00-16,000.00 from the cash proceeds of the refinancing as an offer and compromise on the $110,020.94 which the Defendant owes the IRS. The Defendant will also obtain some additional money from Freemont for the costs of the refinancing.

6. The loan transaction with Freemont was scheduled to close on August 22 or 23, 2005.

7. The Plaintiffs obtained their attachment on August 19th. The recording of the attachment by the Plaintiffs prevented the closing from occurring on the 22nd or 23rd.

8. Telestar plans on foreclosing on the second mortgage unless the loan is refinanced immediately.

9. The subordination agreement reached with the IRS is only good until October 16, 2005.

10. If the Defendant is not able to complete the refinancing transaction with Freemont, he will lose his residence to the foreclosure, which will, in turn, eliminate the Plaintiffs' attachment in its entirety.

11. If the refinancing transaction is consummated, and the IRS liens are resolved in connection with a proposed offer and compromise, the Plaintiffs' attachment will not only survive, it is likely that there will be some equity in the Oxbow Drive property for the Plaintiffs to attach.

12. Accordingly, dissolving the attachment temporarily for the purpose of allowing the refinancing transaction to be completed will result in the preservation of

both the Defendant's residence and the Plaintiffs' attachment. In fact, it may result in an improvement in the Plaintiffs' position.

    13.    As a condition to the allowance of this Motion, the Defendant will agree not to convey the Oxbow Drive property during the 14 day period, or to encumber it in any way other than to consummate the re-financing transaction.

    14.    The Defendant hereby consents to the re-instatement of the Plaintiffs' attachment at the end of the 14-day period, subject only to the Defendant's right to challenge the attachment at some future date based on the merits the Plaintiffs' claims against him.

    DAVID W. ADAMS

    By his Attorney,

    _____
    Isaac H. Peres, BBO #545149
    50 Congress Street
    Boston, MA 02109
    (617) 722-0094

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2005, I served a copy of this document, by fax, upon Counsel for the Plaintiffs.

    _____
    Isaac H. Peres

## LOCAL RULE 7.1 CERTIFICATION

On September 8, 2005, I, Isaac H. Peres, Counsel for the Defendant, David W. Adams, conferred via telephone with James Krasnoo, Counsel for the Plaintiffs, in a good faith effort to resolve the issue presented by this Motion.

_____
Isaac H. Peres

5