UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUILDING #19, INC. AND<br>INTERNATIONAL FLOOR CRAFTS, INC.,<br><br>Plaintiffs<br><br>v.<br><br>DAVID W. ADAMS, ET AL.,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-11654-NMG |

### AFFIDAVIT OF DAVID W. ADAMS

I, David W. Adams, hereby depose and state as follows:

1. I am one of the Defendants in the above-captioned case, and I reside at 5 Oxbow Drive, Wilmington, Massachusetts (hereinafter, "Oxbow Drive property").

2. I own the Oxbow Drive property with my wife, Linda M. Adams, as tenants by the entirety. It is my only substantial asset. I have lived at this residence for 14 years, and I have four children, ages 18, 16, 12, and 8.

3. The Oxbow Drive property has been appraised very recently at $520,000.00. There is a first mortgage on the property held by New Century Mortgage in the approximate amount of $397,000.00. Telestar Corp. holds a second mortgage in the approximate amount of $47,000.00. In addition, there are federal tax liens on the property in the approximate amount of $110,020.94. Accordingly, the encumbrances on the Oxbow Drive property, which total $554,020.94, exceed its fair market value, and the Plaintiffs' attachment is worthless at this time.

4. The holder of the second mortgage, Telestar Corp., had declared a default and is in the process of foreclosing on that mortgage.

5. As a result of the threatened foreclosure and the federal tax liens, I obtained a commitment from Freemont Investment and Loan Company of Tampa, Florida (hereinafter, "Freemont") to lend me sufficient money to obtain a discharge of the existing mortgages, and to pay the Internal Revenue Service the sum of $8,000.00-16,000.00 as part of a subordination agreement. I will also obtain some additional money for the costs of the refinancing.

6. The subordination agreement with the IRS was reached with the help of a tax attorney, Michael Marino. The subordination agreement is only good until October 16, 2005. The IRS has indicated that it is likely to apply the $8,000.00-16,000.00 from the cash proceeds of the refinancing as an offer and compromise on the $110,020.94 which I owe the IRS.

7. The loan transaction with Freemont was scheduled to close on August 22 or 23, 2005.

8. The Plaintiffs obtained their attachment on August 19th. The recording of the attachment by the Plaintiffs prevented the closing from occurring on the 22nd or 23rd.

9. If I am not able to complete the refinancing transaction, I will lose the residence to the foreclosure, which will, in turn, eliminate the Plaintiffs' attachment in its entirety.

10. If the refinancing transaction is consummated, and the IRS liens are resolved, the Plaintiffs' attachment will not only survive, it is likely that there will be equity in the property for the Plaintiffs to attach.

11. Thus, dissolving the attachment temporarily for the purpose of allowing the refinancing transaction to be completed will result in the preservation of my residence and the Plaintiffs' attachment. In fact, it may result in an improvement in the Plaintiffs' position.

12. As a condition to the allowance of this Motion, I will agree not to convey the Oxbow Drive property, or to encumber it in any way other than to consummate the re-financing transaction.

13. I hereby consent to the re-instatement of the Plaintiffs' attachment at the end of the 14-day period, subject only to my right to challenge the attachment based on the merits of the Plaintiffs' claims against me.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 12TH DAY OF SEPTEMBER, 2005.

David W. Adams

4

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2005, I served a copy of this document, by fax, upon Counsel for the Plaintiffs.

_____
Isaac H. Peres