UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| INTERNATIONAL FLOOR CRAFTS, INC. | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 05-11654-NMG |
| v. | ) | |
| | ) | |
| DAVID W. ADAMS, et al., | ) | |
| Defendants | ) | |
| | ) | |

MEMORANDUM OF DAVID SUN, PAUL SUN
AND CCC INTERNATIONAL, INC. IN SUPPORT OF
MOTION TO VACATE TEMPORARY RESTRAINING ORDER

Defendants David Sun, Paul Sun and CCC International, Inc. submit this memorandum in

support of their motion to vacate the temporary restraining order allowed by the Court *ex parte*

on August 10, 2005 and signed by the Court on August 11, 2005.

Introduction

The Order Granting Temporary Restraining Order, which imposes a prejudgment asset

freeze on the defendants based on an *ex parte* presentation, is directly contrary to the controlling

decisions of the United States Supreme Court, which precludes the relief sought and obtained by

the plaintiff. See, e.g., Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S.

308 (1999); Connecticut v. Doehr, 501 U.S. 1 (1991).

Defendants assume that the court was persuaded to enter the *ex parte* order on August 10,

2005 pursuant to three separate *ex parte* motions filed by the plaintiff. The court's docket lists

these three filings as having been made under seal, Docket No. 3-5, although there does not

appear to be any order of the court placing those filings under seal. The defendants assume,

however, that those motions are the same as are replicated in the plaintiff's filing of September 8,

2005, and are now a matter of public record.  Docket No. 22.

The *ex parte* temporary restraining order states that "This Order shall be in effect until

such time as the court decides whether to issue a Preliminary Injunction in connection with this

case, the hearing for which is set for Friday, August 19, 2005 at 10:00 a.m."  The plaintiff has

not filed any motion for the entry of a preliminary injunction, and the hearing described in the *ex*

*parte* order has been twice continued, again on the *ex parte* application of the plaintiff.

In seeking an *ex parte* order imposing an asset freeze on the defendants, the plaintiff

failed to advise the court of the binding authority from the United States Supreme Court that

precludes the relief sought by the plaintiff.  Specifically, in Grupo Mexicano de Desarrollo, S.A.

v. Alliance Bond Fund, 527 U.S. 308 (1999), the Supreme Court held that where, as here, the

plaintiff has sued for money damages, the District Court lacks the authority to impose a

prejudgment asset freeze.  Grupo, 527 U.S. at 329-33.  Equally to the point, the Supreme Court

held in Connecticut v. Doehr, 501 U.S. 1, 16 (1991), that the type of *ex parte* attachment of real

estate sought by the plaintiff in this action failed to provide the constitutionally required due

process of law.

The plaintiff's motions made no effort to satisfy the strict requirements for justifying

preliminary injunctive relief.  The sole basis the plaintiff offered for the injunction was the

following:

> 95.  Plaintiff asserts that there is a clear danger that, if Defendants are given
> notice of the within lawsuit and request for injunctive relief, Defendants will seek
> to transfer their accounts and/or real estate in order to avoid attachment thereof.

> 98.  Plaintiff will suffer immediate and irreparable harm if Defendants are not
> restrained from (a) transferring, assigning, hypothecating or dissipating real estate
> and (b) transferring, assigning, dissipating, hypothecating or paying any monies
> other than in the ordinary course which should be no more than $3,000.00 per

month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims.

99.  The harm that Plaintiff will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted.

Complaint ¶¶ 95, 98-99.  This is exactly the type of "conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store," that the First Circuit has indicated is insufficient to sustain a preliminary injunction.  See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

In addition to these serious substantive defects in the plaintiff's motions for *ex parte* injunctive relief, the order entered at the plaintiff's request suffers from substantial procedural defects.  First, the plaintiff failed to make any attempt to notify the defendants prior to seeking the relief, and instead proceeded with deliberate secrecy, all in violation of Fed. R. Civ. P. 65(b).  Nor did the plaintiff offer to post the bond required by Fed. R. Civ. P. 65(c).  Lastly, the plaintiff failed to provide the court with any basis that would allow the court to craft an injunction that would satisfy the formal requirements of Fed. R. Civ. P. 65(b) and (d).  For all these reasons, as specified more fully below, the court should vacate the temporary restraining order entered in this case and deny the plaintiff's request for preliminary injunctive relief.

Factual Background

Plaintiff has filed an eight-count complaint against 12 defendants seeking money damages for alleged violations of RICO (Count I), conspiracy to violate RICO (Count II), conversion (Count III), unfair trade practices (Count IV), fraud (Count V), and breach of fiduciary duty (Count VI).  Federal jurisdiction over the case is predicated on the RICO counts because there is an absence of complete diversity in the case.  The plaintiff has included two

3

ancillary claims for trustee process (Count VII), and injunctive relief (Count VIII), all in the nature of a pre-judgment freeze of assets.  Plaintiff's claims arise out of its allegations that the defendants obtained payments from the plaintiff for shipments of carpet that were allegedly never made.  The complaint alleges that the plaintiff's own employees were integrally involved in the alleged misconduct.  As to defendants Paul, David and John Sun, the complaint alleges only generally that each was "an officer, agent, servant, or employee of CCC International," and that "upon information and belief" each "engaged in fraudulent transactions with IFC on behalf of CCC International."   Complaint ¶¶ 15-17.

Significantly, the complaint alleges that the plaintiff discovered the basis of its claims in April of 2005.  Complaint ¶¶ 27-29.  It specifically alleges that it learned of the defendant CCC's supposed involvement no later than May of 2004, and that it performed an asset search of all the defendants in June of 2004.  That asset search apparently revealed that the defendants collectively hold title to at least 12 parcels of real property, although the plaintiff's papers do not disclose to the court the value of the real estate it has identified.

Without making any demand on the defendants, and without making any attempt to provide notice of its application, the plaintiff filed three motions for *ex parte* injunctive relief in the nature of an asset freeze, trustee process, and prejudgment attachment of real estate.  Far from providing the court with the required certification of its efforts to provide notice, the plaintiff's papers overtly asserted a desire to proceed in secret, and *ex parte*.  See, e.g., Plaintiff's Motion for Ex Parte Temporary Restraining Order at 2.

The order entered by the Court at the plaintiff's request imposes a limitation on

expenditures by the defendants of $3,000 per month.[1]  The plaintiff provided the Court with no

evidentiary basis for the choice of this arbitrary number, and there is nothing in the record before

the Court for the Court to use in determining what burden such restrictions place upon the

defendants.


ARGUMENT

A.    The Prejudgment Asset Freeze Obtained By The Plaintiff *Ex Parte* Is Contrary To
       The Rulings Of The United States Supreme Court.

In Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308 (1999), the

United States Supreme Court held that "the District Court had no authority to issue a preliminary

injunction preventing petitioners from disposing of their assets pending adjudication of

respondents contract claim for money damages." Id. at 333.[2]  In finding that the District Court

lacked the authority to impose an asset freeze in aid of a claim for money damages, the Supreme

Court quoted the following statement from De Beers Consol. Mines, Ltd v. United States, 325

U.S. 212 (1945):

> To sustain the challenged order would create a precedent of
> sweeping effect.  This suit, as we have said, is not to be
> distinguished from any other suit in equity.  What applies to it
> applies to all such.  Every suitor who resorts to chancery for any
> sort of relief by injunction may, on a mere statement of belief that
> the defendant can easily make away with or transport his money or

---

[1]    The plaintiff agreed to a modification of this restriction as it applied to CCC
International, Inc., which obviously could not continue in business subject to a monthly
limitation on expenditures of $3,000.00.  Docket No. 24.

[2]    The unavailability of an asset freeze in aid of a purely legal claim for damages is
even clearer when the damage claim is founded in tort as opposed to contract.  See Connecticut
v. Doehr, 501 U.S. 1, 17 (1991) ("disputes between debtors and creditors more readily lend
themselves to accurate *ex parte* assessments of the merits.  Tort Actions, like the assault and
battery claim at issue here, do not.").

> goods, impose an injunction on him, indefinite in duration,
> disabling him to use so much of his funds or property as the court
> deems necessary for security or compliance with its possible
> decree. And, if so, it is difficult to see why a plaintiff in any action
> for a personal judgment in tort or contract may not, also, apply to
> the chancellor for a so-called injunction sequestrating his
> opponent's assets pending recovery and satisfaction of a judgment
> in such a law action. ***No relief of this character has been thought***
> ***justified in the long history of equity jurisprudence***.

De Beers*, 325 U.S. at 222-23 (emphasis added) (cited with approval in Grupo, 527 U.S. at 327).

As was the case in Grupo, all of the substantive claims in this case (Counts I-VI) assert

purely legal claims for money damages. As such, Supreme Court precedent makes clear that the

type of asset freeze sought by the plaintiff is simply not available as a matter of law. Grupo, 527

U.S. at 332 ("Even when sitting as a court in equity, we have no authority to craft a 'nuclear

weapon' of the law like the one advocated here.").


B.      The Plaintiff Has Not Shown A Likelihood Of Success.

Putting aside the significant issue of the Court's authority to issue an asset freeze and a

prejudgment attachment of the defendants' assets, the plaintiff has utterly failed to satisfy its

heavy burden to justify the imposition of *ex parte* injunctive relief, or even a preliminary

injunction. To the contrary, the plaintiff's moving papers show that no preliminary injunctive

relief is warranted in this case.

The First Circuit has squarely held that the issuance of a freeze order like that sought by

the plaintiff in this case is governed by the usual standards applicable to injunctions under Fed.

R. Civ. P. 65. Charlesbank Equity Fund II v. Blinds To Go, Inc. ("Charlesbank"), 370 F.3d 151,

159-60 (1st Cir. 2004) ("There are no two ways about it . . . a prejudgment freeze order is in the

nature of an injunction and that, therefore, its propriety should be analyzed under the traditional

four-part test.").

To obtain injunctive relief, the plaintiff has the burden of showing a clear likelihood of success on the merits of its claim.  See MJM Productions v. Kelley Productions, Inc., 2003 WL 22205129 at *5 (D.N.H. Sept. 24, 2003) ("In the First Circuit, a preliminary injunction cannot issue absent the movant's 'clear likelihood of success' on the merits of its claim," quoting Pye ex rel. NLRB v. Sullivan Bros. Printers, Inc., 38 F.3d 58, 67 (1st Cir. 1994)); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991) ("[l]ikelihood of success cannot be woven from the gossamer threads of speculation and surmise").

Here, the plaintiff has alleged a fraud perpetrated by CCC, among others, but has given only a single example worth $25,800 of conduct by CCC.  Complaint ¶¶ 58-61.  More importantly, the plaintiff concedes that it has no idea of any other loss, or the extent of such loss, caused by CCC.  See, e.g., Id. ¶ 63.

As to David Sun and Paul Sun, the plaintiff's allegations are even less defined.  The plaintiff gives no example and makes no specific allegation of any fraudulent act or statement by either individual.  Instead, the plaintiff simply alleges that David and Paul Sun each was "an officer, agent, servant, or employee of CCC International," and that "upon information and belief" each "engaged in fraudulent transactions with IFC on behalf of CCC International." Complaint ¶¶ 15-17.  Such general allegations, put forth "upon information and belief" are not sufficient to support the kind of injunctive relief the plaintiff seeks.  See, e.g., DeNovellis v. Shalala, 135 F.3d 58, 65 (1st Cir. 1998) ("Mere conjecture and unsupported allegations" are insufficient to establish likelihood of success; party seeking injunctive relief must "demonstrate existence of specific facts"); In re Websecure, Inc., 1997 WL 770414 at **2-3 (D. Mass. Nov. 26, 1997) (general allegations of fraud insufficient to show likelihood of success); MJM

Productions, 2003 WL 22205129 at * 6 ("conclusory nature of statements in affidavits" negates

evidentiary value for purposes of showing likelihood of success on the merits).

C.      The Plaintiff Has Not Satisfied The Requirements For Preliminary Injunctive
        Relief.

        As in Charlesbank, the plaintiff here has also utterly failed to make any showing that it

risks irreparable harm absent the injunctive relief it has sought.  In the first place, the plaintiff

has an adequate remedy at law in the nature of the damages it has sued for.  Charlesbank, 370

F.3d at 162 ("[Plaintiff] ultimately seeks an award of pecuniary damages (and, in the best case

scenario, that is all it will be entitled to receive).  Such an award will make it whole.

Accordingly, its legal remedy is adequate.").  To the extent the plaintiff argues that "it faces the

risk that it will be left with nothing at the end of the day," id, at 163, the First Circuit has

expressly found that such an argument does not support the grant of a prejudgment injunction.

Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005) ("The possibility that a

defendant may not have assets on the day of judgment may not automatically make out a

showing of irreparable injury"); Charlesbank, 370 F.3d at 163 ("That sort of statement can be

made by virtually every person who sues another for money damages.  Its very ubiquity indicates

why it cannot conceivably be enough to justify the issuance of a prejudgment injunction of this

nature.").

        Equally to the point is the utter failure of the plaintiff to provide any factual support for

its conclusory assertion that "there is a clear danger that, if Defendants are given notice of the

within lawsuit and request for injunctive relief, Defendants will seek to transfer their accounts

and/or real estate in order to avoid attachment thereof."  Complaint ¶ 95.  Nothing in the record

submitted to the court supports such a conclusion.  There is no evidence proffered that the

8

defendants have attempted to secrete assets or take any action to hinder their creditors. To the

contrary, the plaintiff was apparently able to identify no fewer than 12 pieces of real property

owned by defendants in this action, refuting both the notion that their assets are being hidden as

well as the suggestion that the plaintiff might not be able to satisfy any eventual judgment from

the assets of the 12 defendants it has sued.[3] "A finding of irreparable harm must be grounded on

something more than conjecture, surmise, or a party's unsubstantiated fears of what the future

may have in store." Charlesbank, 370 F.3d at 162. Unfortunately in this case, it is precisely this

type of "conjecture," "surmise," and "unsubstantiated fears" that have been offered by the

plaintiff as grounds for the *ex parte* relief it has sought and obtained. See Complaint ¶¶ 95, 98-

99.[4]

In contrast to the lack of showing of harm proffered by the plaintiff, the irreparable harm

inflicted on the defendants by the injunction requested by the plaintiff is obvious. The plaintiff

sought, *ex parte*, an order precluding any of the defendants from spending more that $3,000.00

per month *in the ordinary course of business*. Without regard to the size of their mortgages, their

tuition payments, their living expenses, their taxes, to say nothing of their need to engage counsel

to defend this action, the plaintiff selected this arbitrary figure. The defendant CCC International

has already been coerced into providing the plaintiff with a second mortgage on its warehouse

facility simply to obtain its agreement to a modification to the injunction so that it could meet its

---

[3]    Noticeably absent from the plaintiff's filings is any effort to describe the
defendants' available assets, this despite the affidavit of the plaintiff's investigator who has,
according to his affidavit, been performing a search for the defendant's assets since June of
2005. Affidavit of Robert O'Neil.

[4]    In contrast, the court in Micro Signal had before it a "strong indication that the
defendant may dissipate or conceal assets" because the defendant had already engaged in such
conduct. Micro Signal, 417 F.3d at 31 ("his prevarications about repayment, and the switch of
the business from Realm to AMA are ample indication of the need for relief").

payroll.  Docket No. 22.  The risk of irreparable harm to the defendants is far more palpable and immediate than the plaintiff's unsupported fears of dissipation of assets.

D.      The Plaintiff's Motion For Ex Parte Relief Failed To Comply With The
        Requirements Of Rule 65(b).

        In addition to the plaintiff's failure to present the court with motions that accord with the requirements of Grupo and this Circuit's requirements for the issuance of preliminary injunctive relief, the plaintiff also failed to make any attempt to present the court with moving papers that satisfy the requirement for an *ex parte* proceeding.  Fed. R. Civ. P. 65(b)(1) requires that before an *ex parte* injunction can be entered, "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."  In this case the plaintiff failed to show that it would suffer any harm by providing the defendants with notice and an opportunity to be heard before the entry of an injunction.  The conclusory averment in paragraph 95 of the Complaint is utterly insufficient to satisfy the requirement of the Rule.

        Likewise, the plaintiff failed to follow Fed. R. Civ. P. 65(b)(2) which requires that "the applicant's attorney certif[y] to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."  Fed. R. Civ. P. 65(b)(2).  Far from making even minimal effort to give notice to the defendants, the plaintiff self avowedly sought to proceed in secret, as if this civil lawsuit were a criminal case that could proceed under seal.

E.      The Plaintiff Failed To Provide The Security Required By Fed. R. Civ. P. 65(c).

In addition to the other defects in the plaintiff's *ex parte* motions, the plaintiff's motions

failed to address the requirements of Fed. R. Civ. P. 65(c), which provides:

> (c) Security.  No restraining order or preliminary injunction shall
> issue except upon the giving of security by the applicant, in such
> sum as the court deems proper, for the payment of such costs and
> damages as may be incurred or suffered by any party who is found
> to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c); see generally C. Wright & A. Miller, Federal Practice and Procedure §

2954.  Not only is the language of the Rule mandatory, but, in the sphere of prejudgment

attachments such as that sought by the plaintiff, adequate security is a matter of fundamental

constitutional due process. See Connecticut v. Doehr, 501 U.S. at 18-21.  Ignoring this

requirement entirely, the plaintiff did not even discuss the proper amount of a bond in its moving

papers, or suggest any reason why a bond should not be required in the full amount of the assets

sought to be restrained.  Given the fact that the plaintiff has sought a pre-judgment restraint on

$5 million of the defendants' assets, at a minimum the plaintiff should have posted a bond in that

amount as the required security for the injunction it sought.  This is, after all, a purely

commercial case, and the plaintiff "can be assumed capable of bearing most bond requirements."

Crowley v. Local No. 82 Furniture and Piano Moving, 679 F.2d 978, 1000 (1st Cir. 1982).

F.      The Ex Parte Injunction Should Be Vacated Because It Does Not Comply With
        The Requirements Of Fed. R. Civ. P. 65.

As a direct result of the inadequate submissions by the plaintiff, the temporary restraining

order signed by the court on August 11, 2005 fails in significant measure to comport with the

requirements of Fed. R. Civ. P. 65.  Specifically, the Rule requires an *ex parte* injunction to

define the injury and state why it is irreparable and why the order was granted without notice.

Fed. R. Civ. P. 65(b).  The Rule also requires that any *ex parte* injunction shall expire of its own

11

terms within such time after entry, not to exceed 10 days, as the court fixes." Id.  Further, in the

rare circumstance that such an *ex parte* order is extended, the Rule requires that "the reasons for

the extension shall be entered of record."  Id.  None of these things were done in this case.

Moreover, it is not surprising given the plaintiff's motions, that the form of the order entered by

the court did not comply with the express requirements of Fed. R. Civ. P. 65(d).  See Schmidt v.

Lessard, 414 U.S. 473, 476-77 (1974).  Each of these defects requires that the *ex parte* injunction

be vacated.

G.      The Real Estate Attachment And Trustee Process Should Be Vacated Insofar As
        It Was Issued Against Property Outside The Commonwealth Of Massachusetts.

        In addition to the temporary restraining order freezing the defendants' assets, the plaintiff

moved for court approval of a writ of attachment against the defendant's real estate in Virginia,

as well as trustee process against the defendants' bank accounts in Virginia.  Although the

Court's order signed on August 11, 2004 does not appear to address those motions, and the

court's docket does not suggest those motions have been ruled on, the clerk has issued writs of

attachment directed at the defendant's property located in Virginia.  In addition to all of the other

reasons why such pre-judgment attachments are not proper in this case (i.e., the reasons why the

temporary restraining order was improper), the extraterritorial application of this Court's writs of

attachment and trustee process is not authorized by either rule or statute.[5]  Cf. Micro Signal, 417

F.3d at 33 ("On the merits, trustee process may be barred here if [Trustee] has no connection

with Massachusetts."); Hasbro, Inc. v Serafino, 958 F.Supp. 19, 22-23 (D. Mass. 1997)

---

[5]      Neither the Complaint nor the plaintiff's motions make any suggestion that the
Trustee Defendant, Wachovia Bank, has a presence in Massachusetts.  To the contrary the
Complaint alleges that the Wachovia account to be attached is located in Virginia and that
Wachovia is headquartered in North Carolina. Complaint ¶ 19.

("personal and real property owned ... outside Massachusetts, as to which attachment procedures would be ineffective.").

<u>Conclusion</u>

For these reasons, the Court should vacate the temporary restraining order entered on August 11, 2005, as modified, and deny the plaintiff's applications for further injunctive relief.

Respectfully submitted,

PAUL SUN, DAVID SUN AND
CCC INTERNATIONAL, INC.
By their attorneys,

/ S /  Peter B. Krupp

Peter B. Krupp
  B.B.O. # 548112
Lurie & Krupp, LLP
One McKinley Square
Boston, Massachusetts 02109
Phone:  (617) 367-1970


Robert P. Trout
John Thorpe Richards, Jr.
Jeffrey C. Coffman
TROUT CACHERIS, PLLC
Suite 300
1350 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 464-3300