UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

_____
INTERNATIONAL FLOOR CRAFTS, INC.    )
     Plaintiff    )
         )
v.    )
         )
DAVID W. ADAMS, *et al*    )    CIVIL ACTION NO. 05CA11654-NMG
     Defendants    )
_____)

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT (1) TO ADD
NEW PARTY IN PLACE OF DEFENDANT CCC INTERNATIONAL, INC., (2) TO
REMOVE DISMISSED PARTIES, AND (3) TO REVISE PARAGRAPH 66 OF
THE COMPLAINT, AND MOTION TO DEEM ALL ORDERS REGARDING CCC
INTERNATIONAL, INC. AND/OR CCC INTERNATIONAL TO BE TREATED
AS ORDERS REGARDING CHINESE CARPET *NUNC PRO TUNC***

       Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") hereby moves this

Court pursuant to Fed.R.Civ.P. 15 for leave to amend the Complaint (1) to add a new

party, Chinese Carpet Center, Inc. d/b/a CCC International (hereinafter, "Chinese Carpet")

in place of Defendant CCC International, Inc., (2) to remove dismissed parties Agatha

Esposito, Donald Shoop, and John Sun from the Complaint, and (3) to revise Paragraph 66

of the Complaint to include Defendants David Sun and Paul Sun.  Plaintiff further moves

this Court to order that any and all injunctive  relief and other orders of this Court issued,

or to be issued, regarding CCC International, Inc. and/or CCC International in the within

matter shall be also treated, for all purposes, as orders regarding Chinese Carpet *nunc pro

tunc*.  Plaintiff further requests that this Court grant Chinese Carpet, David Sun and Paul

Sun twenty days from the date of the allowance of the within motion to file an answer or

other responsive pleading.  Plaintiff relies upon the reasons set forth below:

1.      On August 10, 2005, IFC filed a Verified Complaint in the within matter. In the Complaint, IFC asserted various RICO and other claims against several defendants, including, without limitation, CCC International, Inc., Agatha Esposito and Donald Shoop.

2.      On September 12, 2005, Chinese Carpet and IFC jointly filed "Emergency Motion for Order to Permit Chinese Carpet Center, Inc. d/b/a CCC International to Remain in Business" in which Chinese Carpet sought relief from certain injunctive relief obtained by IFC against Defendant CCC International, Inc. in this action.  (See **Exhibit A**).

3.      In keeping with that motion, IFC seeks leave to file an Amended Complaint in which IFC adds Chinese Carpet Center, Inc. d/b/a CCC International in place of Defendant CCC International, Inc.

4.      Additionally, on September 16, 2005, IFC filed a Notice of Dismissal Without Prejudice as to Only Defendants Agatha Esposito and Donald Shoop, and on October 4, 2005, IFC dismissed Defendant John Sun without prejudice.  As result, IFC seeks to remove former parties Agatha Esposito, Donald Shoop and John Sun from the Complaint.

5.      Finally, IFC seeks to amend Paragraph 66 in Count I of the Complaint to include Defendants David Sun and Paul Sun, whose names were inadvertently omitted from that paragraph[1].  The heading of Count I notifies the parties that the Count is against all Defendants, and, further the names of both David Sun and Paul Sun appear in the "Wherefore" clause for Count I.

6.      A copy of the proposed Amended Complaint is attached hereto as **Exhibit B.**

---

[1] In the amended Paragraph 66, Plaintiff has also removed Esposito and Shoop.

7.    IFC respectfully requests that this Court order the Defendants (other than Chinese Carpet, David Sun and Paul Sun) to submit their answers or other responsive pleadings to the Amended Complaint within ten days.

8.    Throughout this case, this Court has issued various orders regarding Defendant CCC International, Inc. and/or CCC International.  In an effort to maintain continuity and to avoid confusion, IFC further requests that this Court order that any and all injunctive  relief and other orders of this Court issued, or to be issued, regarding CCC International, Inc. and/or CCC International in the within matter shall be also to treated, for all purposes, as orders regarding Chinese Carpet *nunc pro tunc*.

9.    Chinese Carpet's counsel has informed IFC's counsel that he will not oppose the within motion.

**WHEREFORE**, for the above reasons, Plaintiff International Floor Crafts, Inc. respectfully requests that this Court GRANT the within motion and (1) grant Plaintiff leave to file an Amended Verified Complaint which adds Defendant Chinese Carpet Center, Inc. d/b/a CCC International as a party in place of Defendant CCC International, Inc. and which removes Agatha Esposito and Donald Shoop, and (2) order that any and all injunctive  relief and other orders of this Court issued, or to be issued, regarding CCC International, Inc. and/or CCC International in the within matter shall be also to treated, for all purposes, as orders regarding Chinese Carpet *nunc pro tunc*.  Plaintiff further requests that this Court grant Chinese Carpet, David Sun and Paul Sun twenty days from the date of the allowance of the within motion to file an answer or other responsive

pleading.

The Plaintiff
International Floor Crafts, Inc.
By Its Attorneys,


/s/ Paul J. Klehm
James B. Krasnoo (BBO#279300)
Paul J. Klehm (BBO#561605)
Law Offices of James B. Krasnoo
23 Main Street
Andover, MA  01810
Dated:  October 18, 2005                    (978) 475-9955

## LOCAL RULE 7.1(A)(2) STATEMENT

I, Paul J. Klehm, hereby certify that, on October 17, 2005, I notified counsel of the motion to amend via e-mail.  On October 14, 2005, I spoke by telephone with Attorney Krupp, counsel to Defendants Chinese Carpet, David Sun and Paul Sun, with regard to the within motion.  On October 17, 2005, I spoke by telephone with Attorney Krupp.  He informed me that he will not oppose the motion and he requested a change in the motion. On October 18, 2005, I forwarded a draft of the motion via email to counsel of record.  In response to an email from Attorney Frederick Grant, I forwarded another email to counsel of record in which I informed them that I was revising a paragraph of the motion.  I did not speak with Defendants Britto and Dziemit, who were recently served.


/s/ Paul J. Klehm
Paul J. Klehm

## CERTIFICATE OF SERVICE

I, Paul J. Klehm, Esq., hereby certify that I have served a copy of the within

document upon all counsel of record not served via ECF and upon all parties not

represented by counsel by first class mail, postage pre-paid, on October 18, 2005.

/s/ Paul J. Klehm
Paul J. Klehm

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC.   ) | |
| Plaintiff   ) | |
|   ) | Civil Action No. 05-11654-NMG |
| v.   ) | |
|   ) | |
| DAVID W. ADAMS, TYRONE WILLIAMS,   ) | |
| KEVIN BRITTO, RONALD E. MITCHELL,   ) | |
| Individually and d/b/a MANSFIELD RUG   ) | |
| COMPANY a/k/a MANSFIELD RUG   ) | |
| DEPARTMENT and REMCO, MICHAEL   ) | |
| E. BROWN, Individually and d/b/a DALTON   ) | |
| PADDING and EMPIRE WEAVERS, JANE   ) | |
| DZIEMIT, AGATHA ESPOSITO, DONALD   ) | |
| SHOOP, CCC INTERNATIONAL, INC.,   ) | |
| JOHN D. SUN, DAVID D. SUN, and   ) | |
| PAUL SUN,   ) | |
| Defendants   ) | |
|   ) | |
| v.   ) | |
|   ) | |
| LOWELL FIVE CENT SAVINGS BANK,   ) | |
| WACHOVIA BANK, NATIONAL   ) | |
| ASSOCIATION, f/k/a FIRST UNION BANK   ) | |
| OF VIRGINIA, CITIZENS BANK, BANK OF   ) | |
| AMERICA f/k/a BANK OF BOSTON,   ) | |
| PEOPLE'S BANK, and FIRST UNION   ) | |
| NATIONAL BANK,   ) | |
| Trustee Process Defendants   ) | |

_____)

EMERGENCY JOINT MOTION FOR ENTRY OF
SUPPLEMENTAL ORDER PERMITTING CHINESE CARPET
CENTER, INC. d/b/a CCC INTERNATIONAL TO REMAIN IN BUSINESS

    Plaintiff International Floor Crafts, Inc. ("IFC") and defendant CCC International

("CCC"), a trade name for Chinese Carpet Center, Inc., request that the Court enter an Order in

the form submitted herewith, (i) supplementing the Order Granting Temporary Restraining Order

dated August 11, 2005 ("the TRO"); and (ii) lifting the Summonses to Trustee dated August 11, 2005 to the extent they were issued to Wachovia Bank to attach funds of CCC International, Inc. or CCC, in particular Account No. 2000005235933 ("the Trustee Process").  In support of this motion, the parties state as follows:

1.      On August 11, 2005, the Court issued the TRO to preserve the status quo of the assets of certain defendants, including CCC; and issued the Trustee Process, among other trustee summonses, to attach assets of CCC on deposit at Wachovia Bank.

2.      CCC has, through counsel, represented to IFC that CCC is a going concern with a vibrant on-going business, employees and vendors to pay, and sales orders to fill.  As a result of recent service of the TRO and the Trustee Process, the assets of CCC have been frozen and CCC has been unable to make its payroll, pay vendors or continue meaningful operations.

3.      CCC has requested that IFC consent to an emergency modification of the TRO to permit CCC to continue its operations.  IFC has agreed that CCC should be permitted to continue its ordinary business operations.  To this end, the parties have agreed to that TRO should be modified, as applied to defendant CCC, to bar CCC from transferring any assets other than in the ordinary course of business and to hire counsel in a monthly amount not to exceed $450,000; and from transferring any assets to any of the shareholders of CCC or to defendants John D. Sun, David D. Sun and Paul Sun other than their ordinary gross monthly salary of $2,750.  The parties have also agreed that within ten days of the Court's entry of the attached Order, CCC shall provide a $200,000 mortgage on the property located at 7903 Kincannon Place, Lorton, Virginia, to secure payment of any judgment entered in this case against CCC, and shall maintain that mortgage until further order of this Court; and that CCC shall provide a copy of its future bank statements to plaintiff's counsel on a monthly basis.  Finally, the parties have agreed that the Summonses to Trustee Wachovia Bank should also be lifted, to the extent they imposed an

attachment or freeze on the account of CCC's assets, particularly CCC's operating account,

Account No. 2000005235933, at Wachovia Bank.

For these reasons, IFC and CCC request that the Court enter an Order in the form

attached hereto, supplementing the Order Granting Temporary Restraining Order dated August

11, 2005 ("the TRO"); and lifting the Summonses to Trustee dated August 11, 2005 to the extent

they were issued to Wachovia Bank to attach funds of CCC International, Inc. or CCC, including

Account No. 2000005235933.

Respectfully submitted,

INTERNATIONAL FLOOR
CRAFTS, INC.
By its attorneys,

/ S /  James B. Krasnoo

James B. Krasnoo
  B.B.O. #279300
Paul J. Klehm
  B.B.O. # 561605
Law Offices of James B. Krasnoo
23 Main Street
Andover, MA  01810
Tel. 978-475-9955


CHINESE CARPET CENTER, INC.
d/b/a CCC INTERNATIONAL
By its attorney,

/ S /  Peter B. Krupp

Peter B. Krupp
  B.B.O. #548112
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
Tel.  617-367-1970


Dated:  September 12, 2005

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC. ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID W. ADAMS, ) | |
| TYRONE WILLIAMS, KEVIN BRITTO, ) | CIVIL ACTION |
| RONALD E. MITCHELL, Individually and ) | NO. 05-CA-11654-NMG |
| d/b/a MANSFIELD RUG COMPANY ) | |
| a/k/a MANSFIELD RUG DEPARTMENT and ) | |
| REMCO, MICHAEL E. BROWN, Individually ) | |
| and d/b/a DALTON PADDING and ) | |
| EMPIRE WEAVERS, JANE DZIEMIT, ) | |
| CHINESE CARPET CENTER, INC. d/b/a ) | |
| CCC INTERNATIONAL, ) | |
| DAVID D. SUN, and ) | |
| PAUL SUN ) | |
| Defendants ) | |
| ) | |
| v. ) | |
| LOWELL FIVE CENT SAVINGS BANK, ) | |
| WACHOVIA BANK, NATIONAL ) | |
| ASSOCIATION, f/k/a FIRST UNION BANK ) | |
| OF VIRGINIA, ) | |
| CITIZENS BANK, ) | |
| BANK OF AMERICA f/k/a ) | |
| BANK OF BOSTON, ) | |
| PEOPLE'S BANK, and ) | |
| FIRST UNION NATIONAL BANK ) | |
| Trustee Process Defendants ) | |

_____

**PLAINTIFF'S PROPOSED AMENDED COMPLAINT, DEMAND FOR INJUNCTIVE**
**RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      This action for damages, injunctive relief, costs and attorneys' fees is brought pursuant to 18 U.S.C. §§1961-68 (2001) against several defendants who engaged in a pattern of racketeering activity under which the defendants embezzled millions of dollars from International Floor Crafts, Inc. ("IFC") over at least the past eight years. The defendants include, without limitation, various present and former employees of IFC and manufacturers' representatives to mainly non-existent companies who conspired to defraud IFC by preparing fabricated purchase orders and fictitious shipping documents in order to cause IFC to make thousands of dollars of payments at a time to illusory companies for non-existent merchandise.

**JURISDICTION**

2.      Counts I through II of this Complaint are brought pursuant to the Racketeering and Corrupt Organizations Act.  Federal subject matter jurisdiction is conferred by 18 U.S.C. §1964(c), and personal jurisdiction is conferred by 18 U.S.C. §1965(a and b).  Additionally, pursuant to 28 U.S.C. §1331, district courts have original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

3.      Counts III through VI aver causes of action which are related to the causes of action set forth in Counts I and II and arise out of the subject matter of those counts. This court has jurisdiction over these Counts by virtue of the doctrine of pendent jurisdiction and 28 U.S.C. §1367(a).

4.      Counts VII and VIII seek injunctive relief and are derived from Counts I through VI.

**PARTIES**

5.      Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") is a corporation organized under the laws of the Commonwealth of Massachusetts with a

principal place of business located at 319 Lincoln Street, Hingham, Plymouth County, Massachusetts.  At all times relevant, Building 19 performed, and does perform, services for IFC.  IFC and Building 19 shall be referred to hereinafter collectively as "IFC."

6.    Defendant David W. Adams is an individual and resides at a last known address of 5 Oxbow Drive, Wilmington, Middlesex County, Massachusetts.  At all times relevant, Defendant Adams served as a Buyer and/or representative for, and on behalf of, IFC.

7.    Defendant Tyrone Williams is an individual and resides at a last known address of 171 Smith Street, New Bedford, Bristol County, Massachusetts.  At all times relevant, Defendant Williams served, and continues to serve, as the department manager in the warehouse and a Receiver for IFC.

8.    Defendant Kevin Britto is an individual and resides at a last known address of 300 W 21st Street, Apt. 25, New York, NY 10011.   Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Britto:

(a)  committing tort in the Commonwealth of Massachusetts; and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

From approximately July 8, 1988 to approximately November 15, 1997, and from approximately September 28, 1998 through approximately September 28, 2001, Defendant Britto served as a Buyer for IFC.

9.      Defendant Ronald E. Mitchell is an individual and resides at a last known address of 5 Mansfield Grove Road, Apartment #146, East Haven, Connecticut.  At all times relevant, Ronald E. Mitchell was doing business as, and/or under the name of two fictitious entities:  Mansfield Rug Company , a/k/a Mansfield Rug Department (hereinafter, "Mansfield Rug"), with a purported address of 260 Hemingway Avenue, East Haven, Connecticut, and Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut.  At all times relevant, Defendant Mitchell held himself out, and represented himself, as the manufacturer's representative for Mansfield Rug and Remco.  Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Mitchell:

(a)  committing tort in the Commonwealth of Massachusetts; and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

10.      Defendant Michael E. Brown is an individual and resides at a last known address of 2309 South Ravine Way, Dalton, Georgia.  At all times relevant, Michael E. Brown was doing business as, and/or under the name of fictitious entities known as

4

Dalton Padding, with a purported address of P.O. Box 1122, Dalton, Georgia, and Empire

Weavers, with a purported address of 1319-E Rockville Pike, Rockville, Maryland. At all

times relevant, Defendant Brown held himself out, and represented himself, as the

manufacturer's representative for Dalton Padding and Empire Weavers.  Pursuant to

M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Brown:

> (a)  committing tort in the Commonwealth of Massachusetts; and/or

> (b)  transacting business in the Commonwealth of Massachusetts;  and/or

> (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

> (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.

11.     Defendant Jane Dziemit is an individual and resides at a last known

address of 155 Huntington Road, New Haven, Connecticut. At all times relevant, Jane

Dziemit was doing business as, and/or under the name of a fictitious entity named

Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut.

Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant

Dziemit:

> (a)  committing tort in the Commonwealth of Massachusetts; and/or

> (b)  transacting business in the Commonwealth of Massachusetts;  and/or

> (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

> (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.

On at least four occasions, Dziemit indorsed a check on behalf of Remco, the

funds from which were deposited into a Bank of Boston bank account.

12.    **[OMITTED]**.

13.    **[OMITTED].**

14.    Defendant Chinese Carpet Center, Inc. d/b/a CCC International

(hereinafter, "CCC International") is a corporation organized under the laws of the State

of Virginia, with a principal place of business located at 7903A Kincannon Place, Lorton,

Virginia.  Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the

Defendant CCC International:

(a)  committing tort in the Commonwealth of Massachusetts; and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered,  in this commonwealth.

15.    **[OMITTED].**

16.    Defendant David D. Sun is an individual and resides at a last known

address of 7905 Bressingham Drive, Fairfax Station, Virginia.  At all times relevant,

David Sun was an officer, agent, servant, or employee of CCC International, and, upon

information and belief, David Sun engaged in fraudulent transactions with IFC on behalf

of CCC International.  David Sun serves as a resident agent for CCC International.

Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant

David Sun:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.

    17.    Defendant Paul Sun is an individual and resides at a last known address of

7838 Preakness Ln, Fairfax Station, Virginia.  At all times relevant, Paul Sun was an

officer, agent, servant, or employee of CCC International, and, upon information and

belief, Paul Sun engaged in fraudulent transactions with IFC on behalf of CCC

International. Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the

Defendant Paul Sun:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.  **[OMITTED]** David D. Sun and/or Paul Sun shall be referred to herein collectively as the "Suns."

18.    The Trustee Process Defendant Lowell Five Cent Savings Bank is a bank organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 24 John Street, Lowell, Massachusetts.   At all times relevant, upon information and belief, Defendant David Adams maintained a bank account at the Lowell Five Cent Savings Bank (Account No. 024-008072).

19.    The Trustee Process Defendant Wachovia Bank, National Association, formerly known as First Union National Bank of Virginia, is a bank organized under the laws of the United States of America with a principal place of business located at 301 South College Street, Suite 4000, One Wachovia Center, Charlotte, North Carolina.  At all times relevant, upon information and belief, Defendant Michael Brown (Account No. 1080002141711), CCC International (Account No. 2000005235933) maintained a bank account at the former First Union National Bank of Virginia, located in Richmond, Virginia.  Moreover, at all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Dalton Padding and Empire Weavers, into one or more First Union National Bank of Virginia bank accounts maintained by the Defendants.  Upon information and belief, one of the account numbers is Account No. 2000005235933.

20.    The Trustee Process Defendant Citizens Bank is a bank organized under the laws of the state of Rhode Island with a principal place of business located in Providence, Rhode Island.  At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Remco and Mansfield Rug into one or more Citizens Bank bank accounts maintained by the Defendants.

21.    The Trustee Process Defendant Bank of America, formerly known as Bank of Boston, is a bank organized under the laws of the state of North Carolina with a principal place of business located in Charlotte, North Carolina. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Remco, into one or more Bank of Boston bank accounts at a branch located at 123 Day Hill Road, Windsor, Connecticut, maintained by the Defendants.

22.    The Trustee Process Defendant People's Bank is a bank organized under the laws of the State of Connecticut with principal place of business located at 850 Main Street, 11th Floor, Bridgeport, Connecticut. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Mansfield Rug and Remco, into one or more People's Bank bank accounts maintained by the Defendants.

23.    The Trustee Process Defendant First Union National Bank is a Pennsylvania Financial Institution with a principal place of business located at 301 South College Street, Charlotte, Pennsylvania.  At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Empire Weavers, into one or more First Union National Bank bank accounts maintained by the Defendants.

**<u>FACTS</u>**

24.    Plaintiff IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire.

25.    In the normal course of business, in essence, IFC employs various buyers who work with manufacturer representatives of various supplying companies in order to

9

locate and to purchase merchandise for retail sale.  IFC's buyers then negotiate the terms

of the purchase of said merchandise, and then the buyer places an order with the

supplying company.  The supplying company then ships the merchandise to IFC.  A

warehouse receiver, employed by IFC, verifies that the merchandise received by IFC

meets the order.  The manufacturer representative then forwards an invoice from the

supplying company to buyer.  The buyer then verifies that the invoice meets the request

for merchandise, and, if so, the buyer approves the invoice and forwards it to the

Accounts Payable Department at IFC.  At or around the same time,  the warehouse

receiver prepares and forwards the receiving documents (also known as "Key Reqs")  to

the Accounts Payable Department.  The Accounts Payable Department matches the

invoice to the receiving documents and then pays the invoice.

26.     From approximately October, 1999 through July, 2002, Defendant Adams

served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC.  From

July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the

capacity of the carpet and rug buyer.  In that capacity,  Defendant Adams was responsible

for purchasing remnants, broadloom and woodflooring for IFC.

27.     In or around early April, 2005, the new buyer at IFC, who replaced

Defendant Adams, reported to senior management at IFC that he could not locate certain

inventory, including, without limitation, carpet and rugs, that IFC had supposedly

purchased from various supplying companies.

28.     Among other invoices, the new buyer was unable to confirm receipt of

merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in

the amount of $25,054.77  (Invoice No. 8868).  At that time, IFC requested proof of

delivery (a bill of lading) from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug.

29.     On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams and listing Regional Trucking as the trucking company.  On or about April 20, 2005, the new buyer contacted Regional Express LLC d/b/a Regional Trucking regarding the Bill of Lading.  On April 27, 2005, a representative of Regional Trucking informed the new buyer that Regional Trucking did not pick up the merchandise referred to in Invoice No. 8868.

30.     The new buyer also questioned an invoice dated March 18, 2005 in the amount of $18,313.48 pertaining to the delivery of wood flooring from CCC International.  On May 9, 2005, the new buyer took an inventory of all wood flooring on hand and was unable to locate the wood flooring represented by the invoice.  When contacted, Defendant Brown, who was the manufacturer's representative for CCC International, stated to the new buyer that he could not determine the type of wood flooring that CCC International had shipped on the invoice at issue.

31.     At that point, IFC launched an internal investigation into merchandise which Adams had ordered for IFC.  The initial investigation revealed that Adams had ordered merchandise from several companies which did not appear to exist, including, without limitation, Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers.

32.     As a part of the investigation, IFC asked Defendants Michael Brown and Ronald Mitchell, both of whom were manufacturer representatives, to provide IFC with bills of lading showing the shipment of the merchandise.  Despite the hundreds of

shipments, Defendant Mitchell produced only one bill of lading – a bill of lading that IFC

later determined to be fabricated.  Instead, CCC International, Empire Weaver and Dalton

Padding provided IFC with computer printouts containing Defendant Williams'

signatures.  Neither Mansfield Rug nor Remco provided any bills of lading.  Defendant

Mitchell later told IFC, falsely, that the bills of lading had been inadvertently shredded a

week earlier to its request.

33.     From a review of other shipping documents, IFC was able to locate bills of

ladings and key reqs signed by various receivers and by Defendant Williams for most, or

all, of the other vendors who do, or have done, business with IFC.

34.     Through further investigation during April and May, 2005, IFC calculated

the estimated rug inventory levels at IFC based upon the merchandise purchased and sold

during the period from December 30, 2003 through January 31, 2005.  When IFC

compared the estimate to actual inventory, IFC noticed a gap of approximately five

million dollars at retail value.  At retail value, the amount of merchandise purchased from

Mansfield Rug Company, Mansfield Rug Department, Remco, Dalton Padding, Empire

Weavers, (hereinafter, collectively, "the Fictitious Companies") and CCC International

was approximately $4.5 million dollars.  Moreover, during the same thirteen month

period, IFC made payments in the amount of approximately $1,991,000.00 to CCC

International.  IFC has been unable to locate any bills of ladings or other confirmatory

documentation regarding the receipt of any merchandise from CCC International during

that thirteen month period.

35.     As a part of its investigation, IFC then examined the inventory taken at the

warehouse in January, 2005.  Documentation prepared by Defendants Adams and

Williams showed that IFC supposedly received into the New Bedford warehouse on King Street approximately $313,175.00 worth of carpets and rugs from CCC International during December, 2004 and January, 2005, and that IFC supposedly received into said New Bedford warehouse approximately $205,000.00 in carpets and rugs from Empire Weavers during that same period. Even so, the January, 2005 inventory showed no carpet or rugs on hand at said New Bedford warehouse from any of the Fictitious Companies or from CCC International. Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the Fictitious Companies and all of the fraudulent shipments from CCC International during January, 2005 to said New Bedford warehouse.

36.    In or around May, 2005, IFC retained a private investigator to investigate the matter further. The private investigator determined that Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers (hereinafter, "the Fictitious Companies") do not exist, and that IFC had been making payments to non-existent companies for non-existent merchandise.

37.    In each instance in which IFC allegedly received merchandise from any of the Fictitious Companies, Defendant Tyrone Williams served as a Receiver on behalf of IFC.

38.    For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC, by telephone and facsimile – even during times when Defendant Adams and/or Defendant Britto did not work at IFC. Upon information and belief, at all times relevant, all of the Defendants have maintained a common communication network for sharing

information on a regular basis.  Where necessary, upon information and belief, one or more of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise.  Upon information and belief, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails and/or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise.

39.     Through the investigation, IFC has learned that CCC International, which is an actual company, also sent false invoices and received payment for non-existent merchandise.  Unlike the Fictitious Companies, upon information and belief, CCC International has also engaged in some legitimate merchandise transactions with IFC from 2000 to the present.

40.     As a result of the investigation, IFC has determined that, over the past eight to ten years, Buyers Britto and Adams colluded with manufacturer representatives Brown, Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the Suns created false invoices for non-existent shipments of merchandise from one of the Fictitious Companies and/or CCC International to IFC.  Under the criminal

enterprise, Defendants Britto or Adams would create purchase orders.  Defendant

Williams or Defendant Britto would then generate fabricated Key Reqs in which he

falsely confirmed that IFC had received the non-existent merchandise, and he would then

forward the Key Reqs to Accounts Payable for payment.  Accounts Payable would then

make payments to various individuals and/or entities, including, without limitation,

Mansfield Rug, CCC International, Remco, Empire Weavers, and Accounts Payable

would forward these payments to various addresses, including, without limitation,

addresses for the following individuals, Jane Dziemit (for Remco) [**OMITTED**].

     41.     A representative sample of the Defendants' fraudulent conduct covering

each of the Fictitious Companies and CCC International is as follows:

**<u>Remco</u>**

     42.     On or about October 29, 2002, upon information and belief, IFC prepared

Purchase Order No. 6551 (**Exhibit "A"**, hereinafter "PO 6551") for Remco, requesting

$38,500 of merchandise.  Defendant Adams initialed the purchase order. Defendant

Mitchell served as the manufacturer's representative to fictitious company Remco for

said transaction.

     43.     On or about October 30, 2002, upon information and belief, the

Defendants, through fictitious company Remco, issued Invoice No. 20021030 (**Exhibit
"B"**), referencing PO 6551.  The total amount of the invoice was $38,500.

     44.     On or about November 8, 2002, upon information and belief, Defendant

Williams signed a receiving document, Key-Rec. No. 406836 (**Exhibit "C"**), showing

that IFC had received the merchandise reflected in PO 6551.  At no time did IFC receive

any such merchandise.

45.     On or about November 14, 2002, upon information and belief, IFC issued

Check No. 006271 (**Exhibit "D"**) paid to the order of "REMCO" in the amount of

$37,730.00.  The check was subsequently indorsed "For Deposit Only," and deposited

into a Citizens Bank account in Riverside, RI.

**<u>Mansfield Rug</u>**

46.     On or about November 16, 2002, upon information and belief, IFC

prepared Purchase Order No. 6590 (**Exhibit "E"**, hereinafter "PO 6551") to Mansfield

Rug Co., requesting $43,050 of merchandise (350 eight by ten rugs and 350 nine by

twelve rugs).  Upon information and belief, Defendant Adams initialed the purchase

order. Defendant Mitchell served as the manufacturer's representative to fictitious

company Mansfield Rug for said transaction.

47.     On or about November 21, 2002, upon information and belief, Defendant

Williams signed a receiving document, Key-Rec. No. 406845 (**Exhibit "G"**), showing

that IFC had received the merchandise reflected in PO 6590.  At no time did IFC receive

any such merchandise.

48.     On or about November 25, 2002, upon information and belief, the

Defendants, through fictitious company, Mansfield Rug Co., issued Invoice No. 4462

(**Exhibit "F"**), referencing PO 6590.  The total amount of the invoice was $43,050.

49.     On or about December 4, 2002, upon information and belief, IFC issued

Check No. 006330 (**Exhibit "H"**) paid to the order of "Mansfield Rug Co." in the

amount of $42,189.00.  One of the defendants subsequently indorsed the check "For Deposit Only" and deposited same.

**<u>Empire Weavers</u>**

50.     On or about January 28, 2003, upon information and belief, IFC prepared Purchase Order No. 6660 (**Exhibit "I"**, hereinafter "PO 6660") for Empire Weavers, requesting $35,110 of merchandise (210 five by eight rugs, 350 six by nine rugs, 210 eight by ten rugs and 350 nine by twelve rugs).  Upon information and belief, Defendant Adams initialed the purchase order.  Defendant Brown served as the manufacturer's representative to fictitious company Empire Weavers for said transaction, as demonstrated by PO 6660, which lists Defendant Brown as the contact person.

51.     On or about January 28, 2003, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 406909 (**Exhibit "K"**), showing that IFC had received the merchandise reflected in PO 6660.  At no time did IFC receive such merchandise.

52.     On or about January 31, 2003, upon information and belief, the Defendants, through Empire Weavers, fraudulently issued Invoice No. 12655 (**Exhibit "J"**), referencing PO 6660.  The total amount of the invoice was $38,500.

53.     On or about January 31, 2003, upon information and belief, IFC issued Check No. 006552 (see **Exhibit "L"**) paid to the order of "Empire Weavers" in the amount of $35,397.60.

**<u>Dalton Padding</u>**

54.     On or about March 15, 2005, upon information and belief, IFC prepared Purchase Order No. 7390 (**Exhibit "M"**, hereinafter "PO 7390") for Dalton Padding,

requesting $27,955 of merchandise. Defendant Brown served as the manufacturer's representative to fictitious company Dalton Padding for said transaction.

55.    On or about February 10, 2005, upon information and belief, the Defendants, through Dalton Padding, fraudulently issued Invoice No. 24238 (**Exhibit "N"**), referencing PO 7390.  The total amount of the invoice was $28,032.

56.    In or around February 2005, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 82577 (**Exhibit "O"**), showing that IFC had received the merchandise reflected in PO 7390.  At no time did IFC receive any such merchandise.

57.    On or about March 29, 2005, upon information and belief, IFC issued Check No. 008749 (**Exhibit "P"**) paid to the order of "Dalton Padding" in the amount of $28,032.00.  The Defendants subsequently indorsed and deposited the check "For Deposit Only Dalton Padding 2000014691432."

**CCC International**

58.    In or around February, 2005, upon information and belief, IFC prepared Purchase Order No. 7426 (**Exhibit "Q"**, hereinafter "PO 7426") for CCC International, requesting $25,800 of merchandise.  PO 7426 lists Defendant Mike Brown as a contact person.

59.    On or about January 26, 2005, upon information and belief, CCC International, through its officers, agents, servants or employees, fraudulently issued Invoice No. 63134 (**Exhibit "R"**), referencing PO 7426.  The total amount of the invoice was $25,800.

60.     In or around February, 2005, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 82554 (**Exhibit "S"**), showing that IFC had received the merchandise reflected in PO 7426.  At no time did IFC receive any such merchandise.

61.     On or about February 14, 2005, upon information and belief, IFC issued Check No. 008602 (**Exhibit "T"**) paid to the order of "CCC International" in the amount of $25,284.  The check was subsequently indorsed "CCC International For Deposit Only" and negotiated.

62.     Thus far, IFC has determined that IFC has received invoices in the following total amounts from four fictitious companies for non-existent merchandise:

|     | Years | Company | Amount |
|-----|-------|---------|--------|
| a. | 1999-2005 | Remco | approx. $2,300,000.00 |
| b. | 1999-2005 | Mansfield Rug | approx.    $980,000.00 |
| c. | 1996-2005 | Empire Weavers | approx. $1,170,000.00 |
| d. | 1997-2005 | Dalton Padding | approx.    $394,000.00 |

**Total**:  $4,844,000.00 (approx.)

Of that total, IFC made payments to the Fictitious Companies in the amount of approximately $4,474,000.00 for non-existent merchandise.

63.     From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million.  At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein.

64.    Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars.  While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stands at between four and six million dollars.

## COUNT I

## RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Plaintiff v. All Defendants)

65.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 64 as if expressly set forth herein.

66.    At all times relevant, Defendants Williams, Adams, Britto, Mitchell, Brown, Dziemit, Paul Sun, David Sun and/or CCC International, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose of systematically and surreptiously embezzling substantial sums of money from, and otherwise defrauding, IFC from at least 1997 to and including 2005, have constituted, and continue to constitute, an enterprise within the meaning of 18 U.S.C. §1961(4).  The activities of the enterprise affect interstate and foreign commerce.

67.    Upon information and belief, in furtherance of the criminal enterprise, the Defendants knowingly and purposely used interstate wire in violation of 18 U.S.C. §1343 and interstate mail in violation of 18 U.S.C. §1341, both of which constitute racketeering activity in violation of 18 U.S.C. §1962(a, b, and c).  Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and

making telephone calls in connection with embezzling funds from IFC through the use of fabricated documentation and non-existent companies.

68.    The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. §1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

69.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

**WHEREFORE**, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.    That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.    That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.    That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug

Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.    That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.    That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.    **[OMITTED].**

8.    **[OMITTED].**

9.    That Plaintiff be awarded judgment against the defendant CCC International in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

10.    **[OMITTED].**

11.    That Plaintiff be awarded judgment against the defendant David D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

12.    That Plaintiff be awarded judgment against the defendant Paul Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

13.    That Plaintiff be awarded punitive damages from each defendant found liable in the amount of Five Million Dollars, plus interest and costs.

14.    That Plaintiff be awarded, as part of any judgment, fair and reasonable attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

15.    That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT II

## COMMON LAW CONSPIRACY TO VIOLATE RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Plaintiff v. All Defendants)

70.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 69 as if expressly set forth herein.

71.    Upon information and belief, the Defendants entered into an agreement to violate 18 U.S.C. §1961.

72.    By their acts, conduct and communications, the Defendants conspired to violate 18 U.S.C. §1962(c).

73.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

**WHEREFORE**, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.      That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.      That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.      That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.      That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.      That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.      **[OMITTED].**

8.      **[OMITTED].**

9.      That Plaintiff be awarded judgment against the defendant CCC International in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

10.     **[OMITTED].**

11. That Plaintiff be awarded judgment against the defendant David D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

12. That Plaintiff be awarded judgment against the defendant Paul Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

13. That Plaintiff be awarded punitive damages from each defendant found liable in the amount of Five Million Dollars, plus interest and costs.

14. That Plaintiff be awarded, as part of any judgment, fair and reasonable attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

15. That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT III

## CONVERSION

### (Plaintiff v. All Defendants)

74. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 73 as if expressly set forth herein.

75. From 1997 to the present, as more fully set forth herein, the Defendants have converted property owned by IFC, including, without limitation, purchase orders, invoices, bills of lading, key reqs, telephones, facsimile machines and funds, to their own use and benefit, thus depriving Plaintiff of the use of the property.

76. As a direct and proximate result of the conversion by the Defendants, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT IV

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES

#### (Plaintiff v. All Defendants)

77.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 76 as if expressly set forth herein.

78.     Plaintiff and the Defendants are engaged in trade or commerce within the meaning of M.G.L. c. 93A.

79.     The Defendants committed unfair and deceptive business practices by, *inter alia*, (1) converting funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4) providing false representations in documents by alleging shipments of merchandise were made and received when  in fact no such shipments occurred, (5) taking steps to conceal the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents all with the intention of deceiving and defrauding Plaintiff.

80.    Such conduct constitutes unfair and deceptive trade practices in violation of M.G.L. c. 93A, §§ 2, 9, and 11, and the rules and regulations promulgated thereunder, which violation was both willful and knowing.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, that amount to be trebled, together with interest, costs and attorneys' fees.

## COUNT V

## FRAUD

### (Plaintiff v. All Defendants)

81.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 80 as if expressly set forth herein.

82.    The Defendants, through their officers, agents, servants or employees, knowingly and fraudulently made false statements of material fact and deliberately failed to disclose other material facts to IFC regarding, among other things, (1) converting funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4) providing false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred, (5) taking steps to conceal the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the

Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents, all with the intention of deceiving and defrauding Plaintiff.

83.    Plaintiff was so deceived and defrauded by the actions of the Defendants, through their officers, directors, agents, servants or employees, and in reliance thereon to their detriment, IFC made payments of millions of dollars to various companies for non-existent merchandize based upon fabricated documentation.

84.    As a direct and proximate result of the intentional misrepresentations of the Defendants, through their officers, directors, agents, servants or employees, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

### (Plaintiff v. Defendants Williams, Adams And Britto)

85.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 84 as if expressly set forth herein.

86.    Defendants Williams, Adams and Britto, in their capacity as present or former employees of IFC, owed a fiduciary duty to exercise utmost good faith and loyalty, proper care, skill, diligence and honesty in carrying out their duties on behalf of their employer, IFC.

87.    The aforesaid actions and conduct of the defendants constitute breaches of the aforesaid fiduciary duty, in that Defendants Williams, Adams and Britto, knowingly

and purposefully, (1) converted funds belonging to IFC to their own use, (2) stole funds from IFC, (3) created false documentation in order to obtain stolen funds from IFC, (4) provided false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred (5) took steps to conceal the fraudulent and criminal activity, (6) provided IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) created false and non-existent companies in order to further their criminal enterprise, (8) used office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauded IFC of millions of dollars, (10) caused funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forged documents, in violation of their respective fiduciary duties to Plaintiff.

88.     As a direct and proximate result of the breaches of fiduciary duties of Defendants Williams, Adams and Britto, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

**COUNT VII**

**TRUSTEE PROCESS**

**(Plaintiff v. All Trustee Process Defendants)**

89.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 88 as if expressly set forth herein.

90.     Upon information and belief, as set forth above, the Defendants maintain property and/or one or more accounts with one or more of the Trustee Process Defendants.  Additionally, as a part of their criminal enterprise, the Defendants placed funds into accounts maintained with the Trustee Process Defendants.

91.     The funds held in those accounts, at least in part, are the property of IFC.

92.     Plaintiff has a reasonable likelihood of success on the merits.

93.     Plaintiff knows of no liability insurance that will be available to satisfy their claims, and therefore believe that Defendants have no such insurance.  Upon information and belief, none of the individual Defendants is in the military.

94.     Plaintiff seeks an attachment of the goods, effects or credits of the Defendants in the amount of Five Million Dollars ($5,000,000.00) in the possession of Trustee Process Defendants.

95.     Plaintiff asserts that there is a clear danger that, if Defendants are given notice of the within lawsuit and request for injunctive relief, Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment thereof.

96.     Upon information and belief, there is an immediate danger that the Defendants will purchase, sell, transfer, conceal, manipulate, dilute, dissipate or encumber their assets, and/or the proceeds derived from the sale, transfer or redemption thereof, in order to hinder or delay the satisfaction of the judgment Plaintiff is likely to recover in this action and Plaintiff will be irreparably harmed as a result thereof.

**WHEREFORE**, Plaintiff demands:

> (a)     an order of trustee process, in favor of Plaintiff of the goods, effects or credits of any of the Defendants in the amount of Five Million Dollars in the possession of any or all of the Trustee Process Defendants.

(b)     that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(c)     this Court order such other relief as may seem just and proper.

## COUNT VIII

### INJUNCTIVE RELIEF

### (Plaintiff v. All Defendants)

97.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 96 as if expressly set forth herein.

98.    Plaintiff will suffer immediate and irreparable harm if Defendants are not restrained from (a) transferring, assigning, hypothecating or dissipating real estate and (b) transferring, assigning, dissipating, hypothecating or paying any monies other than in the ordinary course which should be no more than $3,000.00 per month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims.

99.    The harm that Plaintiff will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted.

100.    Plaintiff has a strong likelihood of success on the merits for the reasons set forth herein.

**WHEREFORE**, Plaintiff demands:

(a)     An attachment, in favor of Plaintiff, of real property owned by any or all of the Defendants and/or standing in the name of any or all Defendants.

(b)     that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue an *ex parte* temporary

restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(c)     that the Court issue an *ex parte* temporary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(d)     that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(e)     that the Court issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(f)     that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a permanent restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including

without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(g)      that the Court issue a permanent restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(h)      That Plaintiff be awarded, among other things, compensatory damages, reasonable attorneys' fees and costs.

(i)      that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(j)      this Court order such other relief as may seem just and proper.


**PLAINTIFF DEMANDS A TRIAL**          Plaintiff International Floor
**BY JURY ON ALL ISSUES SO TRIABLE**   Crafts, Inc.
                                       By Its Attorneys,


                                       _____
                                       James B. Krasnoo (BBO#279300)
                                       Paul J. Klehm (BBO#561605)
                                       Law Offices of James B. Krasnoo
                                       23 Main Street
                                       Andover, MA  01810
Dated:  October __, 2005               (978) 475-9955

33