UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

_____
INTERNATIONAL FLOOR CRAFTS, INC.      )
    Plaintiff                                       )
                                                      )
v.                                                     )
                                                      )
DAVID W. ADAMS,                              )
TYRONE WILLIAMS, KEVIN BRITTO,     )      CIVIL ACTION
RONALD E. MITCHELL, Individually and   )      NO. 05-CA-11654-NMG
d/b/a MANSFIELD RUG COMPANY          )
a/k/a MANSFIELD RUG DEPARTMENT and )
REMCO, MICHAEL E. BROWN, Individually)
and d/b/a DALTON PADDING and            )
EMPIRE WEAVERS, JANE DZIEMIT,        )
CHINESE CARPET CENTER, INC. d/b/a     )
CCC INTERNATIONAL,                         )
DAVID D. SUN, and                             )
PAUL SUN                                          )
    Defendants                                      )
                                                      )
v.                                                     )
LOWELL FIVE CENT SAVINGS BANK,      )
WACHOVIA BANK, NATIONAL                )
ASSOCIATION, f/k/a FIRST UNION BANK   )
OF VIRGINIA,                                     )
CITIZENS BANK,                                 )
BANK OF AMERICA f/k/a                      )
BANK OF BOSTON,                             )
PEOPLE'S BANK, and                          )
FIRST UNION NATIONAL BANK             )
    Trustee Process Defendants                )
_____)

**PLAINTIFF'S AMENDED COMPLAINT, DEMAND FOR INJUNCTIVE
RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      This action for damages, injunctive relief, costs and attorneys' fees is brought pursuant to 18 U.S.C. §§1961-68 (2001) against several defendants who engaged in a pattern of racketeering activity under which the defendants embezzled millions of dollars from International Floor Crafts, Inc. ("IFC") over at least the past eight years. The defendants include, without limitation, various present and former employees of IFC and manufacturers' representatives to mainly non-existent companies who conspired to defraud IFC by preparing fabricated purchase orders and fictitious shipping documents in order to cause IFC to make thousands of dollars of payments at a time to illusory companies for non-existent merchandise.

**JURISDICTION**

2.      Counts I through II of this Complaint are brought pursuant to the Racketeering and Corrupt Organizations Act.  Federal subject matter jurisdiction is conferred by 18 U.S.C. §1964(c), and personal jurisdiction is conferred by 18 U.S.C. §1965(a and b).  Additionally, pursuant to 28 U.S.C. §1331, district courts have original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

3.      Counts III through VI aver causes of action which are related to the causes of action set forth in Counts I and II and arise out of the subject matter of those counts. This court has jurisdiction over these Counts by virtue of the doctrine of pendent jurisdiction and 28 U.S.C. §1367(a).

4.      Counts VII and VIII seek injunctive relief and are derived from Counts I through VI.

**PARTIES**

5.      Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") is a corporation organized under the laws of the Commonwealth of Massachusetts with a

principal place of business located at 319 Lincoln Street, Hingham, Plymouth County, Massachusetts.  At all times relevant, Building 19 performed, and does perform, services for IFC.  IFC and Building 19 shall be referred to hereinafter collectively as "IFC."

6.      Defendant David W. Adams is an individual and resides at a last known address of 5 Oxbow Drive, Wilmington, Middlesex County, Massachusetts.  At all times relevant, Defendant Adams served as a Buyer and/or representative for, and on behalf of, IFC.

7.      Defendant Tyrone Williams is an individual and resides at a last known address of 171 Smith Street, New Bedford, Bristol County, Massachusetts.  At all times relevant, Defendant Williams served, and continues to serve, as the department manager in the warehouse and a Receiver for IFC.

8.      Defendant Kevin Britto is an individual and resides at a last known address of 300 W 21st Street, Apt. 25, New York, NY 10011.   Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Britto:

(a)  committing tort in the Commonwealth of Massachusetts;  and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

From approximately July 8, 1988 to approximately November 15, 1997, and from approximately September 28, 1998 through approximately September 28, 2001, Defendant Britto served as a Buyer for IFC.

9.     Defendant Ronald E. Mitchell is an individual and resides at a last known address of 5 Mansfield Grove Road, Apartment #146, East Haven, Connecticut.  At all times relevant, Ronald E. Mitchell was doing business as, and/or under the name of two fictitious entities:  Mansfield Rug Company , a/k/a Mansfield Rug Department (hereinafter, "Mansfield Rug"), with a purported address of 260 Hemingway Avenue, East Haven, Connecticut, and Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut.  At all times relevant, Defendant Mitchell held himself out, and represented himself, as the manufacturer's representative for Mansfield Rug and Remco.  Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Mitchell:

(a)  committing tort in the Commonwealth of Massachusetts; and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

10.     Defendant Michael E. Brown is an individual and resides at a last known address of 2309 South Ravine Way, Dalton, Georgia.  At all times relevant, Michael E. Brown was doing business as, and/or under the name of fictitious entities known as

4

Dalton Padding, with a purported address of P.O. Box 1122, Dalton, Georgia, and Empire Weavers, with a purported address of 1319-E Rockville Pike, Rockville, Maryland. At all times relevant, Defendant Brown held himself out, and represented himself, as the manufacturer's representative for Dalton Padding and Empire Weavers.  Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Brown:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

    11.    Defendant Jane Dziemit is an individual and resides at a last known address of 155 Huntington Road, New Haven, Connecticut. At all times relevant, Jane Dziemit was doing business as, and/or under the name of a fictitious entity named Remco, with a purported address of 260 Hemingway Avenue, East Haven, Connecticut. Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant Dziemit:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

On at least four occasions, Dziemit indorsed a check on behalf of Remco, the funds from which were deposited into a Bank of Boston bank account.

12.    **[OMITTED]**.

13.    **[OMITTED].**

14.    Defendant Chinese Carpet Center, Inc. d/b/a CCC International (hereinafter, "CCC International") is a corporation organized under the laws of the State of Virginia, with a principal place of business located at 7903A Kincannon Place, Lorton, Virginia.  Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant CCC International:

(a)  committing tort in the Commonwealth of Massachusetts; and/or

(b)  transacting business in the Commonwealth of Massachusetts;  and/or

(c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

(d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered,  in this commonwealth.

15.    **[OMITTED].**

16.    Defendant David D. Sun is an individual and resides at a last known address of 7905 Bressingham Drive, Fairfax Station, Virginia.  At all times relevant, David Sun was an officer, agent, servant, or employee of CCC International, and, upon information and belief, David Sun engaged in fraudulent transactions with IFC on behalf

of CCC International.  David Sun serves as a resident agent for CCC International.

Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the Defendant

David Sun:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.

    17.    Defendant Paul Sun is an individual and resides at a last known address of

7838 Preakness Ln, Fairfax Station, Virginia.  At all times relevant, Paul Sun was an

officer, agent, servant, or employee of CCC International, and, upon information and

belief, Paul Sun engaged in fraudulent transactions with IFC on behalf of CCC

International. Pursuant to M.G.L. c. 223A § 3, Plaintiff's cause of action arises from the

Defendant Paul Sun:

    (a)  committing tort in the Commonwealth of Massachusetts; and/or

    (b)  transacting business in the Commonwealth of Massachusetts;  and/or

    (c)  contracting to supply goods in the Commonwealth of Massachusetts;  and/or

    (d)  causing tortious injury in this commonwealth by an act or omission outside

this commonwealth if he regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in this commonwealth.  **[OMITTED]** David D. Sun and/or Paul Sun shall be referred to herein collectively as the "Suns."

18.    The Trustee Process Defendant Lowell Five Cent Savings Bank is a bank organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 24 John Street, Lowell, Massachusetts.   At all times relevant, upon information and belief, Defendant David Adams maintained a bank account at the Lowell Five Cent Savings Bank (Account No. 024-008072).

19.    The Trustee Process Defendant Wachovia Bank, National Association, formerly known as First Union National Bank of Virginia, is a bank organized under the laws of the United States of America with a principal place of business located at 301 South College Street, Suite 4000, One Wachovia Center, Charlotte, North Carolina.  At all times relevant, upon information and belief, Defendant Michael Brown (Account No. 1080002141711), CCC International (Account No. 2000005235933) maintained a bank account at the former First Union National Bank of Virginia, located in Richmond, Virginia.  Moreover, at all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Dalton Padding and Empire Weavers, into one or more First Union National Bank of Virginia bank accounts maintained by the Defendants.  Upon information and belief, one of the account numbers is Account No. 2000005235933.

20.    The Trustee Process Defendant Citizens Bank is a bank organized under the laws of the state of Rhode Island with a principal place of business located in Providence, Rhode Island.  At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Remco and Mansfield Rug into one or more Citizens Bank bank accounts maintained by the Defendants.

21.    The Trustee Process Defendant Bank of America, formerly known as Bank of Boston, is a bank organized under the laws of the state of North Carolina with a principal place of business located in Charlotte, North Carolina. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Remco, into one or more Bank of Boston bank accounts at a branch located at 123 Day Hill Road, Windsor, Connecticut, maintained by the Defendants.

22.    The Trustee Process Defendant People's Bank is a bank organized under the laws of the State of Connecticut with principal place of business located at 850 Main Street, 11th Floor, Bridgeport, Connecticut. At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Mansfield Rug and Remco, into one or more People's Bank bank accounts maintained by the Defendants.

23.    The Trustee Process Defendant First Union National Bank is a Pennsylvania Financial Institution with a principal place of business located at 301 South College Street, Charlotte, Pennsylvania.  At all times relevant, the Defendants deposited various funds stolen from IFC by means of various fictitious entities, including, without limitation, Empire Weavers, into one or more First Union National Bank bank accounts maintained by the Defendants.

### FACTS

24.    Plaintiff IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire.

25.    In the normal course of business, in essence, IFC employs various buyers who work with manufacturer representatives of various supplying companies in order to

9

locate and to purchase merchandise for retail sale.  IFC's buyers then negotiate the terms

of the purchase of said merchandise, and then the buyer places an order with the

supplying company.  The supplying company then ships the merchandise to IFC.  A

warehouse receiver, employed by IFC, verifies that the merchandise received by IFC

meets the order.  The manufacturer representative then forwards an invoice from the

supplying company to buyer.  The buyer then verifies that the invoice meets the request

for merchandise, and, if so, the buyer approves the invoice and forwards it to the

Accounts Payable Department at IFC.  At or around the same time,  the warehouse

receiver prepares and forwards the receiving documents (also known as "Key Reqs")  to

the Accounts Payable Department.  The Accounts Payable Department matches the

invoice to the receiving documents and then pays the invoice.

26.     From approximately October, 1999 through July, 2002, Defendant Adams

served as a consultant purchasing carpet, rugs, padding and wood flooring for IFC.  From

July, 2002 through March 24, 2005, Defendant Adams was an employee of IFC in the

capacity of the carpet and rug buyer.  In that capacity,  Defendant Adams was responsible

for purchasing remnants, broadloom and woodflooring for IFC.

27.     In or around early April, 2005, the new buyer at IFC, who replaced

Defendant Adams, reported to senior management at IFC that he could not locate certain

inventory, including, without limitation, carpet and rugs, that IFC had supposedly

purchased from various supplying companies.

28.     Among other invoices, the new buyer was unable to confirm receipt of

merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in

the amount of $25,054.77  (Invoice No. 8868).  At that time, IFC requested proof of

delivery (a bill of lading) from Defendant Ronald Mitchell, the manufacturer's representative for Mansfield Rug.

29.    On April 20, 2005, Defendant Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams and listing Regional Trucking as the trucking company.  On or about April 20, 2005, the new buyer contacted Regional Express LLC d/b/a Regional Trucking regarding the Bill of Lading.  On April 27, 2005, a representative of Regional Trucking informed the new buyer that Regional Trucking did not pick up the merchandise referred to in Invoice No. 8868.

30.    The new buyer also questioned an invoice dated March 18, 2005 in the amount of $18,313.48 pertaining to the delivery of wood flooring from CCC International.  On May 9, 2005, the new buyer took an inventory of all wood flooring on hand and was unable to locate the wood flooring represented by the invoice.  When contacted, Defendant Brown, who was the manufacturer's representative for CCC International, stated to the new buyer that he could not determine the type of wood flooring that CCC International had shipped on the invoice at issue.

31.    At that point, IFC launched an internal investigation into merchandise which Adams had ordered for IFC.  The initial investigation revealed that Adams had ordered merchandise from several companies which did not appear to exist, including, without limitation, Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers.

32.    As a part of the investigation, IFC asked Defendants Michael Brown and Ronald Mitchell, both of whom were manufacturer representatives, to provide IFC with bills of lading showing the shipment of the merchandise.  Despite the hundreds of

shipments, Defendant Mitchell produced only one bill of lading – a bill of lading that IFC later determined to be fabricated.  Instead, CCC International, Empire Weaver and Dalton Padding provided IFC with computer printouts containing Defendant Williams' signatures.  Neither Mansfield Rug nor Remco provided any bills of lading.  Defendant Mitchell later told IFC, falsely, that the bills of lading had been inadvertently shredded a week earlier to its request.

33.    From a review of other shipping documents, IFC was able to locate bills of ladings and key reqs signed by various receivers and by Defendant Williams for most, or all, of the other vendors who do, or have done, business with IFC.

34.    Through further investigation during April and May, 2005, IFC calculated the estimated rug inventory levels at IFC based upon the merchandise purchased and sold during the period from December 30, 2003 through January 31, 2005.  When IFC compared the estimate to actual inventory, IFC noticed a gap of approximately five million dollars at retail value.  At retail value, the amount of merchandise purchased from Mansfield Rug Company, Mansfield Rug Department, Remco, Dalton Padding, Empire Weavers, (hereinafter, collectively, "the Fictitious Companies") and CCC International was approximately $4.5 million dollars.  Moreover, during the same thirteen month period, IFC made payments in the amount of approximately $1,991,000.00 to CCC International.  IFC has been unable to locate any bills of ladings or other confirmatory documentation regarding the receipt of any merchandise from CCC International during that thirteen month period.

35.    As a part of its investigation, IFC then examined the inventory taken at the warehouse in January, 2005.  Documentation prepared by Defendants Adams and

Williams showed that IFC supposedly received into the New Bedford warehouse on King Street approximately $313,175.00 worth of carpets and rugs from CCC International during December, 2004 and January, 2005, and that IFC supposedly received into said New Bedford warehouse approximately $205,000.00 in carpets and rugs from Empire Weavers during that same period.  Even so, the January, 2005 inventory showed no carpet or rugs on hand at said New Bedford warehouse from any of the Fictitious Companies or from CCC International.  Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the Fictitious Companies and all of the fraudulent shipments from CCC International during January, 2005 to said New Bedford warehouse.

36.    In or around May, 2005, IFC retained a private investigator to investigate the matter further.  The private investigator determined that Dalton Padding, Mansfield Rug Company, Remco and Empire Weavers (hereinafter, "the Fictitious Companies") do not exist, and that IFC had been making payments to non-existent companies for non-existent merchandise.

37.    In each instance in which IFC allegedly received merchandise from any of the Fictitious Companies, Defendant Tyrone Williams served as a Receiver on behalf of IFC.

38.    For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC, by telephone and facsimile – even during times when Defendant Adams and/or Defendant Britto did not work at IFC.  Upon information and belief, at all times relevant, all of the Defendants have maintained a common communication network for sharing

information on a regular basis.  Where necessary, upon information and belief, one or more of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise.  Upon information and belief, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails and/or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise.

39.    Through the investigation, IFC has learned that CCC International, which is an actual company, also sent false invoices and received payment for non-existent merchandise.  Unlike the Fictitious Companies, upon information and belief, CCC International has also engaged in some legitimate merchandise transactions with IFC from 2000 to the present.

40.    As a result of the investigation, IFC has determined that, over the past eight to ten years, Buyers Britto and Adams colluded with manufacturer representatives Brown, Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the Suns created false invoices for non-existent shipments of merchandise from one of the Fictitious Companies and/or CCC International to IFC.  Under the criminal

enterprise, Defendants Britto or Adams would create purchase orders. Defendant Williams or Defendant Britto would then generate fabricated Key Reqs in which he falsely confirmed that IFC had received the non-existent merchandise, and he would then forward the Key Reqs to Accounts Payable for payment. Accounts Payable would then make payments to various individuals and/or entities, including, without limitation, Mansfield Rug, CCC International, Remco, Empire Weavers, and Accounts Payable would forward these payments to various addresses, including, without limitation, addresses for the following individuals, Jane Dziemit (for Remco) [**OMITTED**].

41.    A representative sample of the Defendants' fraudulent conduct covering each of the Fictitious Companies and CCC International is as follows:

**Remco**

42.    On or about October 29, 2002, upon information and belief, IFC prepared Purchase Order No. 6551 (**Exhibit "A"**, hereinafter "PO 6551") for Remco, requesting $38,500 of merchandise. Defendant Adams initialed the purchase order. Defendant Mitchell served as the manufacturer's representative to fictitious company Remco for said transaction.

43.    On or about October 30, 2002, upon information and belief, the Defendants, through fictitious company Remco, issued Invoice No. 20021030 (**Exhibit "B"**), referencing PO 6551. The total amount of the invoice was $38,500.

44.    On or about November 8, 2002, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 406836 (**Exhibit "C"**), showing

that IFC had received the merchandise reflected in PO 6551.  At no time did IFC receive

any such merchandise.

45.    On or about November 14, 2002, upon information and belief, IFC issued

Check No. 006271 (**Exhibit "D"**) paid to the order of "REMCO" in the amount of

$37,730.00.  The check was subsequently indorsed "For Deposit Only," and deposited

into a Citizens Bank account in Riverside, RI.

**Mansfield Rug**

46.    On or about November 16, 2002, upon information and belief, IFC

prepared Purchase Order No. 6590 (**Exhibit "E"**, hereinafter "PO 6551") to Mansfield

Rug Co., requesting $43,050 of merchandise (350 eight by ten rugs and 350 nine by

twelve rugs).  Upon information and belief, Defendant Adams initialed the purchase

order. Defendant Mitchell served as the manufacturer's representative to fictitious

company Mansfield Rug for said transaction.

47.    On or about November 21, 2002, upon information and belief, Defendant

Williams signed a receiving document, Key-Rec. No. 406845 (**Exhibit "G"**), showing

that IFC had received the merchandise reflected in PO 6590.  At no time did IFC receive

any such merchandise.

48.    On or about November 25, 2002, upon information and belief, the

Defendants, through fictitious company, Mansfield Rug Co., issued Invoice No. 4462

(**Exhibit "F"**), referencing PO 6590.  The total amount of the invoice was $43,050.

49.    On or about December 4, 2002, upon information and belief, IFC issued

Check No. 006330 (**Exhibit "H"**) paid to the order of "Mansfield Rug Co." in the

amount of $42,189.00. One of the defendants subsequently indorsed the check "For Deposit Only" and deposited same.

**Empire Weavers**

50.     On or about January 28, 2003, upon information and belief, IFC prepared Purchase Order No. 6660 (**Exhibit "I"**, hereinafter "PO 6660") for Empire Weavers, requesting $35,110 of merchandise (210 five by eight rugs, 350 six by nine rugs, 210 eight by ten rugs and 350 nine by twelve rugs). Upon information and belief, Defendant Adams initialed the purchase order. Defendant Brown served as the manufacturer's representative to fictitious company Empire Weavers for said transaction, as demonstrated by PO 6660, which lists Defendant Brown as the contact person.

51.     On or about January 28, 2003, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 406909 (**Exhibit "K"**), showing that IFC had received the merchandise reflected in PO 6660. At no time did IFC receive such merchandise.

52.     On or about January 31, 2003, upon information and belief, the Defendants, through Empire Weavers, fraudulently issued Invoice No. 12655 (**Exhibit "J"**), referencing PO 6660. The total amount of the invoice was $38,500.

53.     On or about January 31, 2003, upon information and belief, IFC issued Check No. 006552 (see **Exhibit "L"**) paid to the order of "Empire Weavers" in the amount of $35,397.60.

**Dalton Padding**

54.     On or about March 15, 2005, upon information and belief, IFC prepared Purchase Order No. 7390 (**Exhibit "M"**, hereinafter "PO 7390") for Dalton Padding,

requesting $27,955 of merchandise. Defendant Brown served as the manufacturer's representative to fictitious company Dalton Padding for said transaction.

55.    On or about February 10, 2005, upon information and belief, the Defendants, through Dalton Padding, fraudulently issued Invoice No. 24238 (**Exhibit "N"**), referencing PO 7390.  The total amount of the invoice was $28,032.

56.    In or around February 2005, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 82577 (**Exhibit "O"**), showing that IFC had received the merchandise reflected in PO 7390.  At no time did IFC receive any such merchandise.

57.    On or about March 29, 2005, upon information and belief, IFC issued Check No. 008749 (**Exhibit "P"**) paid to the order of "Dalton Padding" in the amount of $28,032.00.  The Defendants subsequently indorsed and deposited the check "For Deposit Only Dalton Padding 2000014691432."

**CCC International**

58.    In or around February, 2005, upon information and belief, IFC prepared Purchase Order No. 7426 (**Exhibit "Q"**, hereinafter "PO 7426") for CCC International, requesting $25,800 of merchandise.  PO 7426 lists Defendant Mike Brown as a contact person.

59.    On or about January 26, 2005, upon information and belief, CCC International, through its officers, agents, servants or employees, fraudulently issued Invoice No. 63134 (**Exhibit "R"**), referencing PO 7426.  The total amount of the invoice was $25,800.

60.     In or around February, 2005, upon information and belief, Defendant Williams signed a receiving document, Key-Rec. No. 82554 (**Exhibit "S"**), showing that IFC had received the merchandise reflected in PO 7426.  At no time did IFC receive any such merchandise.

61.     On or about February 14, 2005, upon information and belief, IFC issued Check No. 008602 (**Exhibit "T"**) paid to the order of "CCC International" in the amount of $25,284.  The check was subsequently indorsed "CCC International For Deposit Only" and negotiated.

62.     Thus far, IFC has determined that IFC has received invoices in the following total amounts from four fictitious companies for non-existent merchandise:

| | Years | Company | Amount |
|---|---|---|---|
| a. | 1999-2005 | Remco | approx. $2,300,000.00 |
| b. | 1999-2005 | Mansfield Rug | approx. $980,000.00 |
| c. | 1996-2005 | Empire Weavers | approx. $1,170,000.00 |
| d. | 1997-2005 | Dalton Padding | approx. $394,000.00 |

**Total**:  $4,844,000.00 (approx.)

Of that total, IFC made payments to the Fictitious Companies in the amount of approximately $4,474,000.00 for non-existent merchandise.

63.     From 1995 through 2005, IFC has made payments to CCC International in the total amount of approximately $5.289 million.  At this time, IFC is unable to determine the total amount of fraudulent transactions involving CCC International, other than as set forth herein.

64.    Over the past eight to ten years, the dollar amount of the individual fraudulent invoices increased into the tens of thousands of dollars.  While IFC continues its investigation, the estimated total payments made by IFC to the Fictitious Companies and to CCC International for fraudulent invoices stands at between four and six million dollars.

## COUNT I

## RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Plaintiff v. All Defendants)

65.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 64 as if expressly set forth herein.

66.    At all times relevant, Defendants Williams, Adams, Britto, Mitchell, Brown, Dziemit, Paul Sun, David Sun and/or CCC International, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose of systematically and surreptiously embezzling substantial sums of money from, and otherwise defrauding, IFC from at least 1997 to and including 2005, have constituted, and continue to constitute, an enterprise within the meaning of 18 U.S.C. §1961(4).  The activities of the enterprise affect interstate and foreign commerce.

67.    Upon information and belief, in furtherance of the criminal enterprise, the Defendants knowingly and purposely used interstate wire in violation of 18 U.S.C. §1343 and interstate mail in violation of 18 U.S.C. §1341, both of which constitute racketeering activity in violation of 18 U.S.C. §1962(a, b, and c).  Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and

making telephone calls in connection with embezzling funds from IFC through the use of fabricated documentation and non-existent companies.

68.    The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. §1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

69.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

**WHEREFORE**, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.    That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.    That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.    That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug

Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.     That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.     That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.     **[OMITTED].**

8.     **[OMITTED].**

9.     That Plaintiff be awarded judgment against the defendant CCC International in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

10.     **[OMITTED].**

11.     That Plaintiff be awarded judgment against the defendant David D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

12.     That Plaintiff be awarded judgment against the defendant Paul Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

13.     That Plaintiff be awarded punitive damages from each defendant found liable in the amount of Five Million Dollars, plus interest and costs.

14.    That Plaintiff be awarded, as part of any judgment, fair and reasonable attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

15.    That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT II

## COMMON LAW CONSPIRACY TO VIOLATE RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (Plaintiff v. All Defendants)

70.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 69 as if expressly set forth herein.

71.    Upon information and belief, the Defendants entered into an agreement to violate 18 U.S.C. §1961.

72.    By their acts, conduct and communications, the Defendants conspired to violate 18 U.S.C. §1962(c).

73.    Plaintiff has been, and continue to be, injured in their business, including, without limitation, the loss of millions of dollars, by reason of the violation of 18 U.S.C. §1962(c) by Defendants.

**WHEREFORE**, Plaintiff demands the following:

1.    That Plaintiff be awarded judgment against the defendant David W. Adams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

2.     That Plaintiff be awarded judgment against the defendant Tyrone Williams, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

3.     That Plaintiff be awarded judgment against the defendant Kevin Britto, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

4.     That Plaintiff be awarded judgment against the defendant Ronald E. Mitchell, individually and d/b/a Mansfield Rug Company a/k/a Mansfield Rug Department and Remco, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

5.     That Plaintiff be awarded judgment against the defendant Michael E. Brown, individually and d/b/a Dalton Padding and Empire Weavers, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

6.     That Plaintiff be awarded judgment against the defendant Jane Dziemit, individually, in the amount of Five Million Dollars, that amount to be trebled, plus interest, costs, and attorneys' fees.

7.     **[OMITTED].**

8.     **[OMITTED].**

9.     That Plaintiff be awarded judgment against the defendant CCC International in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

10.     **[OMITTED].**

11.    That Plaintiff be awarded judgment against the defendant David D. Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

12.    That Plaintiff be awarded judgment against the defendant Paul Sun in the amount of Five Million Dollars, that amount to be trebled, plus interest costs, and attorneys' fees.

13.    That Plaintiff be awarded punitive damages from each defendant found liable in the amount of Five Million Dollars, plus interest and costs.

14.    That Plaintiff be awarded, as part of any judgment, fair and reasonable attorneys' fees against each defendant found liable pursuant to 18 U.S.C. 1961 *et seq*.

15.    That Plaintiff demands such other relief as this Honorable Court may deem meet and just.

## COUNT III

## CONVERSION

### (Plaintiff v. All Defendants)

74.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 73 as if expressly set forth herein.

75.    From 1997 to the present, as more fully set forth herein, the Defendants have converted property owned by IFC, including, without limitation, purchase orders, invoices, bills of lading, key reqs, telephones, facsimile machines and funds, to their own use and benefit, thus depriving Plaintiff of the use of the property.

76.    As a direct and proximate result of the conversion by the Defendants, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT IV

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES

#### (Plaintiff v. All Defendants)

77.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 76 as if expressly set forth herein.

78.    Plaintiff and the Defendants are engaged in trade or commerce within the meaning of M.G.L. c. 93A.

79.    The Defendants committed unfair and deceptive business practices by, *inter alia*, (1) converting funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4) providing false representations in documents by alleging shipments of merchandise were made and received when  in fact no such shipments occurred, (5) taking steps to conceal the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents all with the intention of deceiving and defrauding Plaintiff.

80.    Such conduct constitutes unfair and deceptive trade practices in violation of M.G.L. c. 93A, §§ 2, 9, and 11, and the rules and regulations promulgated thereunder, which violation was both willful and knowing.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, that amount to be trebled, together with interest, costs and attorneys' fees.

## COUNT V

## FRAUD

### (Plaintiff v. All Defendants)

81.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 80 as if expressly set forth herein.

82.    The Defendants, through their officers, agents, servants or employees, knowingly and fraudulently made false statements of material fact and deliberately failed to disclose other material facts to IFC regarding, among other things, (1) converting funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4) providing false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred, (5) taking steps to conceal the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the

27

Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents, all with the intention of deceiving and defrauding Plaintiff.

83.    Plaintiff was so deceived and defrauded by the actions of the Defendants, through their officers, directors, agents, servants or employees, and in reliance thereon to their detriment, IFC made payments of millions of dollars to various companies for non-existent merchandize based upon fabricated documentation.

84.    As a direct and proximate result of the intentional misrepresentations of the Defendants, through their officers, directors, agents, servants or employees, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

### (Plaintiff v. Defendants Williams, Adams And Britto)

85.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 84 as if expressly set forth herein.

86.    Defendants Williams, Adams and Britto, in their capacity as present or former employees of IFC, owed a fiduciary duty to exercise utmost good faith and loyalty, proper care, skill, diligence and honesty in carrying out their duties on behalf of their employer, IFC.

87.    The aforesaid actions and conduct of the defendants constitute breaches of the aforesaid fiduciary duty, in that Defendants Williams, Adams and Britto, knowingly

and purposefully, (1) converted funds belonging to IFC to their own use, (2) stole funds from IFC, (3) created false documentation in order to obtain stolen funds from IFC, (4) provided false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred (5) took steps to conceal the fraudulent and criminal activity, (6) provided IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) created false and non-existent companies in order to further their criminal enterprise, (8) used office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauded IFC of millions of dollars, (10) caused funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forged documents, in violation of their respective fiduciary duties to Plaintiff.

88.    As a direct and proximate result of the breaches of fiduciary duties of Defendants Williams, Adams and Britto, Plaintiff was caused to sustain considerable and substantial losses and other damages.

**WHEREFORE,** Plaintiff International Floor Crafts, Inc. demands judgment against the Defendants for damages sustained in the amount of Five Million Dollars, together with interest and costs.

## COUNT VII

## TRUSTEE PROCESS

### (Plaintiff v. All Trustee Process Defendants)

89.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 88 as if expressly set forth herein.

90.     Upon information and belief, as set forth above, the Defendants maintain property and/or one or more accounts with one or more of the Trustee Process Defendants.  Additionally, as a part of their criminal enterprise, the Defendants placed funds into accounts maintained with the Trustee Process Defendants.

91.     The funds held in those accounts, at least in part, are the property of IFC.

92.     Plaintiff has a reasonable likelihood of success on the merits.

93.     Plaintiff knows of no liability insurance that will be available to satisfy their claims, and therefore believe that Defendants have no such insurance.  Upon information and belief, none of the individual Defendants is in the military.

94.     Plaintiff seeks an attachment of the goods, effects or credits of the Defendants in the amount of Five Million Dollars ($5,000,000.00) in the possession of Trustee Process Defendants.

95.     Plaintiff asserts that there is a clear danger that, if Defendants are given notice of the within lawsuit and request for injunctive relief, Defendants will seek to transfer their accounts and/or real estate in order to avoid attachment thereof.

96.     Upon information and belief, there is an immediate danger that the Defendants will purchase, sell, transfer, conceal, manipulate, dilute, dissipate or encumber their assets, and/or the proceeds derived from the sale, transfer or redemption thereof, in order to hinder or delay the satisfaction of the judgment Plaintiff is likely to recover in this action and Plaintiff will be irreparably harmed as a result thereof.

**WHEREFORE**, Plaintiff demands:

(a)     an order of trustee process, in favor of Plaintiff of the goods, effects or credits of any of the Defendants in the amount of Five Million Dollars in the possession of any or all of the Trustee Process Defendants.

(b)    that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(c)    this Court order such other relief as may seem just and proper.

## COUNT VIII

## INJUNCTIVE RELIEF

### (Plaintiff v. All Defendants)

97.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 to 96 as if expressly set forth herein.

98.    Plaintiff will suffer immediate and irreparable harm if Defendants are not restrained from (a) transferring, assigning, hypothecating or dissipating real estate and (b) transferring, assigning, dissipating, hypothecating or paying any monies other than in the ordinary course which should be no more than $3,000.00 per month, and (c) transferring, assigning, dissipating, or paying all funds in their bank accounts, up to the amount of Five Million Dollars ($5,000,000.00), pending adjudication of Plaintiff's claims.

99.    The harm that Plaintiff will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Defendants will incur if the relief is granted.

100.    Plaintiff has a strong likelihood of success on the merits for the reasons set forth herein.

**WHEREFORE**, Plaintiff demands:

(a)    An attachment, in favor of Plaintiff, of real property owned by any or all of the Defendants and/or standing in the name of any or all Defendants.

(b)    that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue an *ex parte* temporary

restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(c)     that the Court issue an *ex parte* temporary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be temporarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(d)     that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(e)     that the Court issue a preliminary restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be preliminarily restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(f)     that the Court, in accordance with Mass.R.Civ.P. 65 and in the exercise of its general equity powers, issue a permanent restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, alienating, conveying, encumbering, hypothecating, assigning, dissipating, pledging, distributing, or drawing down any of the Defendants' assets, including

32

without limitation, any and all real property, up to Five Million Dollars ($5,000,000.00), plus attorneys' fees, other than in the ordinary course which shall not exceed $3,000 per month.

(g)    that the Court issue a permanent restraining order that Defendants, their agents, servants, successors, assigns, employees, attorneys, all persons acting or purporting to act on their behalf, and all persons having actual notice of any order issued hereunder, be permanently restrained from directly or indirectly, transferring, hypothecating, assigning, or dissipating any real estate held in the names of one or more Defendants.

(h)    That Plaintiff be awarded, among other things, compensatory damages, reasonable attorneys' fees and costs.

(i)    that the Court issue a summons and short order of notice to the Defendants to appear and show cause why Plaintiff is not entitled to the relief prayed for herein.

(j)    this Court order such other relief as may seem just and proper.


**PLAINTIFF DEMANDS A TRIAL**          Plaintiff International Floor
**BY JURY ON ALL ISSUES SO TRIABLE**   Crafts, Inc.
                                        By Its Attorneys,


                                        /s/ Paul J. Klehm
                                        James B. Krasnoo (BBO#279300)
                                        Paul J. Klehm (BBO#561605)
                                        Law Offices of James B. Krasnoo
                                        23 Main Street
                                        Andover, MA  01810
Dated:  October 20, 2005                (978) 475-9955

## CERTIFICATE OF SERVICE

I, Paul J. Klehm, Esq., hereby certify that I have served a copy of the within

document upon all counsel of record not served via ECF and upon all parties not

represented by counsel by first class mail, postage pre-paid, on October 20, 2005.

                                        /s/ Paul J. Klehm
                                        Paul J. Klehm

Exhibit "A"

**PURCHASE ORDER**    6551

BILL TO:
**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

**INTERNATIONAL FLOOR CRAFT, INC., INFOR**

TELEPHONE NUMBER  203-468-4344

CONTACT PERSON  Tony Murray

| DATE OF ORDER | 10/29 | DEPT |
|---|---|---|
| SHIP ON | 11/15 | CANCELLATION DATE |
| ORDER GIVEN BY | DN | |

TERMS: 2 % DISCOUNT / DAYS    NET 30 DAYS

RECEIVING INSTRUCTIONS

trace - ship a per attached

RECEIVED NOV 01 2002

| MANUFACTURER'S NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | DEPT | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5x6 Border Bowl | ea | 280 | — | 44.00 | 21 | 7 | | | | | | | | |
| | to be Bowl | ea | 200 | " | 21.00 | 30.15 | 7 | | | | | | | | |
| | the round | ea | 200 | " | 41.00 | 74.15 | 7 | | | | | | | | |
| | 4x6 Border Bowl | ea | 280 | " | 53.50 | 95.00 | 7 | | | | | | | | |
| | | ea | 330 | ea | 7.00 | 13.14 | 7 | | | | | | | | |

GE/BE  11-1-02

CONDITIONS OF THIS ORDER
ALL COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-690-8800 OR 508-660-0003. FAILURE TO COMPLY WILL RESULT IN CHARGEBACK OF EXCESSIVE FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PRE-PAID.
1. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION.
2. THE RIGHT'S RESERVED TO CANCEL THIS ORDER IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE.
3. THE RIGHT'S RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

| | TOTAL RETAIL | 7071.5 |
|---|---|---|
| COST OF GOODS | 38500 |
| COST OF FREIGHT | 0 |
| TOTAL COST | 38500 |

BUYER'S NOTES:
RATING: (1-10)

Exhibit "B"

11-13-02

# REMCO

PO Box 120221
East Haven, CT 06512
(203) 468-9544

NO'

+1 8X10

Discount!

| Date | Invoice No. | Order No. |
|------|-------------|-----------|
| October 30, 2002 | 20021030 | 6551 |

| Bill to | Ship to |
|---------|---------|
| International Floor Crafts, Inc.<br>319 Lincoln Street<br>Hingham, MA 02043 | Building 19, Warehouse #3<br>One King Street<br>New Bedford, MA 02746 |

| Quantity | Description | Unit Price | Total |
|----------|-------------|-----------|-------|
| 280 | 5 x 8 Berber Bound | $15.00 | $4,200.00 |
| 280 | 6 x 9 Berber Bound | $21.00 | $5,880.00 |
| 280 | 8 x 10 Berber Bound | $41.00 | $11,480.00 |
| 280 | 9 x 12 Berber Bound | $53.50 | $14,980.00 |
| 280 | 4 x 6 Berber Bound | $7.00 | $1,960.00 |
| | These are delivered prices    Total Due | | $38,500.00 |

OK TO pay
Pay as invoiced

Price/qty ok    11-13-02

CORP. _____

1/4    R350

DOR ACCT # _____

JICE NO. 20021030

E    10-30-02

. $ 38,500.00 (970.00)
37070.00

DATE    11-14-02

RIBUTION    451000

Thank you for your order.

11/13/02

Exhibit "C"



Exhibit "D"

INTERNATIONAL FLOOR CRAFTS, INC

319 LINCOLN ST
HINGHAM, MA 02043

Eastern Bank
Massachusetts

No. 006271

53-129
113

*THIRTY-SEVEN THOUSAND SEVEN HUNDRED THIRTY AND XX / 100

CHECK AMOUNT
****37,730.00*

DATE
11/14/2002

Pay to the
Order of

REMCO

P.O. BOX 120221
East Haven, CT 06512

⑈006271⑈ ⑆011301798⑆ 600098222⑈

⑈000377 3000⑈

For Deposit
Only

0449   4 0 / 2 /



*FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

| 🔒 The security features listed below, as well as those not listed, exceed industry standards. | |
| --- | --- |
| SECURITY FEATURES: | Results of document alteration: |
| MicroPrint Border | Small type in side border on front of check appears as dotted line when photocopied |
| Security Screen | Absence of "PROTECT A CHECK SAFETY PAPER" verbiage on back of check |
| Color Background on Front of Check | Chemical or erasure attempts will absorb or remove color background |

Exhibit

**PURCHASE ORDER    6590**

BILL TO:

**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

RECEIVING INSTRUCTIONS

**INTERNATIONAL FLOOR CRAFT, INC., INFORMA**

DISTRIBUTION

DEC 04 2002

RECEIVED

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | DEPT | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Marshfield Rug | | | | | | | | | | | | | | | | |
| E Hook CT | | | | | | | | | | | | | | | | |
| Folding 14 | | | | | | | | | | | | | | | | |
| where in King St | | | | | | | | | | | | | | | | |
| Delivery Instr | | | | | | | | | | | | | | | | |
| 3110 Upper Plush | | 3×10 | ea | 5.30 | 119.95 | 7 | | | | | | | | | | |
| 60.03 Flush | | | | | | | | | | | | | | | | |
| 0XT3 Upper Plush | | 150 | ea | .70.00 | 149.95 | 7 | | | | | | | | | | |
| Lino Shake | | | | | | | | | | | | | | | | |
| GE/BE 12-4-02 | | | | | | | | | | | | | | | | |

PLEASE DO NOT SHIP BACK ORDERS OR PARTIAL SHIPMENTS WHERE ADDITIONAL FREIGHT CHARGES WILL RESULT

SHIPPING INSTRUCTIONS: Call our Traffic Manager at 508-990-8890 DELIVERY APPOINTMENT: Call

DATE OF ORDER

ORDER GIVEN BY

TERMS    2 % DISCOUNT _____ DAYS

NET ____ 15 _____ DAYS

OTHER

| | |
|---|---|
| TOTAL RETAIL | 94.95 |
| COST OF GOODS | 4.0.0 |
| COST OF FREIGHT | 0 |
| TOTAL COST | 43050 |
| MARKUP | 54% |

**ACCOUNTS PAYABLE**

BUYER'S NOTES:

RATING: (1-10)

SIGNATURE

**CONDITIONS OF THIS ORDER**

COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-990-8890 OR 508-990-8893. FAILURE TO COMPLY RESULT IN CHARGEBACK OF EXCESSIVE FREIGHT CHARGES INCURRED. ALL BACK-ORDERS MUST BE SHIPPED PRE-PAID. IS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION. E RIGHT IS RESERVED TO CANCEL IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE. E RIGHT IS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

Exhibit 'F'

# INVOICE

**REMIT TO: MANSFIELD RUG CO.**
**5 MANSFIELD GROVE RD SUITE #146**
**EAST HAVEN, CT 06512**

**No.** 4462

| INVOICE DATE | 11/25/02 |
| CUSTOMER'S ORDER NO. | 6590 |

**SOLD TO:**
INTERNATIONAL FLOORCRAFT INC.

319 LINCOLN ST.

HINGHAM, MA. 02043

**SHIP TO:**
BUILDING 19 WAREHOUSE#3

1 KING ST.

NEW BEDFORD, MA. 02746

| SALESMAN | | SHIPPED VIA | TERMS 2% 15 NET 30 DAYS | F.O.B. DELIVERED | | |
|---|---|---|---|---|---|---|
| QTY. ORDERED | QTY. SHIPPED | DESCRIPTION | | | UNIT | AMOUNT |
| 350 | 350 | 8x10 SUPER PLUSH 60oz AND ABOVE | | | 53.00 | 18,550 00 |
| 350 | 350 | 9x12 SUPER PLUSH 60oz AND ABOVE | | | 70.00 | 24,500 00 |
| | | | | TOTAL DUE | | 43,050 00 |
| | | | | NOV 2 9 2002 | | |

Invoice

12/2  CORP. _____

VENDOR ACCT # M185

INVOICE NO. 4462

DATE 11-25-02

AMT. $ 43,050.00  (861.00)
42,189.00

DUE DATE 12-10-02

DISTRIBUTION 451000

Exhibit "G"

| SHIPPER | SHIPPED FROM | RECEIVED VIA | CARRIER'S NO. | PCS. | WT. | CHGS. | DEPT. | STORE | KEY REC NO. | DATE REC. |
|---|---|---|---|---|---|---|---|---|---|---|
| mansfeild | | | | 700 | | | R46 | W4 3 | 406845 | 11/14 |

REMARKS, EXCEPTIONS, DAMAGES, CUSTOMERS NAME AND ADDRESS IF RETURN, ETC.

NOV 2 5 2002

HDEL CRD. BY: M.M.K.S.S.A.
ORDER CRD BY: T.W.

| MAKE | DESCRIPTION | SEND AGAIN | RETURN TO STOCK | EVEN EXCHANGE | CREDIT TO ACCT | CASH REFUND | FOR SERVICE | COLOR/FINISH | MODEL NO. | QUANTITY | COST | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rems | 9X12 | | | | | | | | | 350 | | |
| | 3X10 | | | | | | | | | 350 | | |

NOTE!!
IF CUSTOMER'S RETURN
BE SURE TO CHECK ( ✓ )
ENTERED IN UNIT CONTROL

DATE 11-21-02

Tyrone William.

TOTAL 700 pcs

PURCHASE ORDER NO.
DUE DATE
NO. CHARGE BACK AMT.
PROOF
INVOICE COST
DISCOUNT

406845

FORM 1650 PR

ORIGINAL

Exhibit "H"

INTERNATIONAL FLOOR CRAFTS, INC

319 LINCOLN ST
HINGHAM, MA 02043

Eastern Bank
Massachusetts

53-179
113

No.      006330

*FORTY-TWO THOUSAND ONE HUNDRED EIGHTY-NINE AND XX / 100

Pay to the
Order of

MANSFIELD RUG CO.
5 MANSFIELD GROVE RD.
SUITE #146
East Haven, CT 06512

DATE
12/04/2002

CHECK AMOUNT
*****42,189.00*

⑅006330⑅ ⑆011301798⑆ 5000098222⑈

020463349 29 5249 5298 121702

⑆0004218900⑆



For Deposit Only

DO NOT WRITE STAMP OR SIGN BELOW THIS LINE





Exhibit J

## EMPIRE WEAVERS
### 1319-E ROCKVILLE PIKE
### ROCKVILLE, MD 20852

INVOICE NO. 12655

| | | |
|---|---|---|
| 6660 | 1-31-2003 | - |
| | | |
| | FOB | TERMS 2/10, N30 |

INTERNATIONAL FLOOR CRAFT
319 LINCOLN ST.,
HINGHAM, MA  02043

BUILDING 19, WAREHOUSE 3,
1 KING ST.,
NEW BEDFORD, MA  02745

| QTY | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|
| 140 ✓ | 6X9 IRREGULAR BOUND AREA RUGS | 19.00 ✓ | 2660.00 |
| 140 ✓ | 9X12  "    "    "    "    " | 38.00 ✓ | 5320.00 |
| 210 ✓ | 5X8 30OZ. PLUSH BOUND AREA RUGS | 15.00 ✓ | 3150.00 |
| 210 ✓ | 6X9  "    "    "    "    " | 24.00 ✓ | 5040.00 |
| 210 ✓ | 8X10  "    "    "    "    " | 40.00 ✓ | 8400.00 |
| 210 ✓ | 9X12  "    "    "    "    " | 55.00 ✓ | 11550.00 |
| | | TOTAL DUE ............. | $36120.00 |

FEB 0 7 2003

2/11/03

CORP.    I✗

2/10

VENDOR ACCT # _____ 8247 _____

INVOICE NO. _____ 12655 _____

DATE _____ 1-31-03 _____

AMT. $ _____ 36,120.00 · 722.40 _____
                     35,397.60

DUE DATE ........ 2·10·05 ..........

DISTRIBUTION  420X 000 -007
                       Rm

2-11-03
verbal ok
Dave Adams
per price

Price [signature] qty ok
[signature] 2-11-03

Exhibit "K"

EMPIRE WEAVERS

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST | | |
|------|-------------|-----------|--------------|----------|------|---|---|
| Roms | 5×8 | | | 210 | ✓ | | |
| | 6×9 | | | 350 | ✓ | | |
| | 8×10 | | | 210 | ✓ | | |
| | 9×12 | | | 350 | ✓ | | |

KEY-REC NO. 406909

Total 1120

406909

ORIGINAL

Reyno William

1-28-03

NOTE!! IF CUSTOMER'S RETURN

JAN 28 2003

Exhibit "L"



Exhibit "M"

# PURCHASE ORDER · 7390

BILL TO:
**INTERNATIONAL FLOOR CRAFT, INC.**
319 LINCOLN STREET · RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

706-326 5587

TELEPHONE NUMBER          CONTACT PERSON

Jim Freedman

## INTERNATIONAL FLOOR CRAFT, INC., INFORM

RECEIVING INSTRUCTIONS

MAR 2 4 2005

FOR: _Delta in Field_

SHIP ON: 3/11
ORDER GIVEN BY: _____
DATE OF ORDER: 3/11
CANCELLATION DATE: _____
DEPT: 45

TERMS
NET ___ % DISCOUNT ___ DAYS
OTHER ___ DAYS

SHIPPING INSTRUCTIONS: Call our Traffic Manager at 508-900-8800
DELIVERY APPOINTMENT: Call

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE | SELL PRICE | DEPT | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

See Attached.

BE 3-24-05

**PLEASE DO NOT SHIP BACK ORDERS OR PARTIAL SHIPMENTS WHERE ADDITIONAL FREIGHT CHARGES WILL RESULT**

**DISTRIBUTION**

TOTAL RETAIL
COST OF GOODS
COST OF FREIGHT
TOTAL COST
% MARKUP

**ACCOUNTS PAYABLE**

**BUYER'S NOTES:**
RATING: (1-10)

SIGNATURE

CONDITIONS OF THIS ORDER
ALL COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-900-8800 OR 508-900-5502. FAILURE TO COMPLY WILL RESULT IN CHARGEBACK OF EXCESSIVE FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PREPAID.
1. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN QUOTED WITHOUT OUR WRITTEN PERMISSION.
2. THE ORDER MUST BE FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE.
3. THE RIGHTS RESERVED TO CANCEL IF NOT FILLED WITHIN SPECIFIED TIME.
3. THE RIGHTS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

MSM INDUSTRIES-NON SLIP

| QUALITY | SIZE | QUANTITY | COST PRICE | RETAIL PRICE | TOTAL COST | TOTAL RETAIL |
|---|---|---|---|---|---|---|
| LIGHT WEIGHT | 2X4 | 0 | $0.62 | $2.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 2X8 | 0 | $1.24 | $4.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 4X6 | 0 | $1.86 | $6.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 5X8 | 0 | $3.10 | $10.00 | $0.00 | $0.00 |
| LIGHT WEIGHT | 6X9 | 700 | $4.20 | $13.50 | $2,940.00 | $9,450.00 |
| LIGHT WEIGHT | 8X10 | 600 | $6.22 | $20.00 | $3,732.00 | $12,000.00 |
| LIGHT WEIGHT | 9X10 | 600 | $8.40 | $27.00 | $5,040.00 | $16,200.00 |
| HEAVYWEIGHT | 2X4 | 0 | $1.15 | $4.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 2X8 | 0 | $2.31 | $8.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 4X6 | 0 | $3.47 | $10.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 5X8 | 0 | $5.77 | $20.00 | $0.00 | $0.00 |
| HEAVYWEIGHT | 6X9 | 500 | $7.80 | $25.00 | $3,900.00 | $12,500.00 |
| HEAVYWEIGHT | 8X10 | 400 | $11.55 | $42.00 | $4,620.00 | $16,800.00 |
| HEAVYWEIGHT | 9X12 | 500 | $15.60 | $50.00 | $7,800.00 | $25,000.00 |
| TOTALS | | 3300 | | | $28,032.00 | $91,950.00 |
| TOTAL YARDS | SQ YDS | 29290 | | | | 69% |
| BUILDING # 19 | | | | | | |
| PO# | | | | | | |

MAR 2 4 2005

Exhibit "N"

Remit Payment To:

**INVOICE#**
**24238**

Dalton Padding
P.O.Box 1122,
Dalton, GA  30722

Terms:
**Net 30 Days**

Bill To:

International Floor Craft, Inc.
319 Lincoln Street, Rte.3A
Hingham, MA  02043

| | |
|---|---|
| Invoice#: 24238   P.O.#: 7390 | Date: 02/10/2005 |
| ShipDate: 02/10/2005 | ShipVia: **Our Truck** |

Ship To:  Building 19, Whse#3,  1 King Street, New Bedford, MA  02746

| Qty | Description: | Price | Extended Price |
|---|---|---|---|
| 700 | 6x9  Light Weight Non Slip Padding | $ 4.20 | $  2940.00 |
| 600 | 8x10 Light Weight Non Slip Padding | 6.22 | 3732.00 |
| 600 | 9x12  Light Weight Non Slip Padding | 8.40 | 5040.00 |
| 500 | 6x9  Heavyweight Non Slip Padding | 7.80 | 3900.00 |
| 400 | 8x10  Heavyweight Non Slip Padding | 11.55 | 4620.00 |
| 500 | 9x12  Heavyweight Non Slip Padding | 15.60 | 7800.00 |

FEB 1 7 2005

SS8 CORP.

**Total Amount:    $ 28,032.00**

VENDOR ACCT #    D300
INVOICE NO.    24238
DATE    2-10-05
AMT. $    28,032.00
DUE DATE    3-12-05
DISTRIBUTION    PADDING
4200-000-045

*Thank you for your business*

Exhibit "O"

| MAKE | DESCRIPTION | MODEL NO. | COLOR/FINISH | QUANTITY | COST | | |
|---|---|---|---|---|---|---|---|
| Non-Skid | 6x9 (H) | | | 500 √ | | | |
| | 6x10 (H) | | | 400 √ | | | |
| | 9x12 (H) | | | 500 √ | | | |
| | 6x9 | | | 700 √ | | | |
| | 8x10 | | | 600 √ | | | |
| | 9x12 | | | 600 √ | | | |

SHIPPER: Patten Bedding

PCS. 3300    WT.

FEB 2 1 2005

CHGS. Au6    DEPT. 3    STORE Wut

KEY-REC NO. 82577

DATE REC. 2/

KEN-REG NO. 82577

MDSE CKD. BY   Dwi T.G.   ORDER CKD. BY   T.W.

PURCHASE ORDER NO. 7340

Total 3300 pcs

Tyrone Williams

82577

FORM 1658 IR

ORIGINAL

Exhibit "P"



Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005    Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005

Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005    Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005

Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005    Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005

Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005    Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005

Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005    Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005

Exhibit "Q"

PURCHASE ORDER  7426

BILL TO:
INTERNATIONAL FLOOR CRAFT, INC.
319 LINCOLN STREET • RTE. 3A
HINGHAM, MA 02043
(781) 749-6900

TELEPHONE NUMBER: 706-—3401    CONTACT PERSON: Mike Brown    FIR

INTERNATIONAL FLOOR CRAFT, INC., INFORMAT

RECEIVING LICTIONS

CCC Int'l

Lorton Virginia
Building, 150 wharo-s
New Bedford MA.

Not (really)

SHIPPING INSTRUCTIONS: Call w/
Traffic Manager at 508-660-6900
DELIVERY APPOINTMENT: Call

PLEASE DO NOT SHIP BACK
ORDERS OR PARTIAL SHIPMENTS
WHERE ADDITIONAL FREIGHT
CHARGES WILL RESULT

FOB

DATE OF ORDER
SHIP ON
ORDER GIVEN BY    DEPT. 7
CANCELLATION DATE

TERMS
NET 30    % DISCOUNT ___ DAYS
OTHER ___ DAYS

| MANUFACTURERS NUMBER | DESCRIPTION | PACK | QUANTITY | BUYING UNIT | COST PRICE |
|---|---|---|---|---|---|
| | See Attached | | | | |
| GE/AE 2-9-05 | | | | | |

DISTRIBUTION

| | SELL PRICE | COMPARATIVE RETAIL | QUANTITY RECEIVED | H | B | N | L | K | V | D |
|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL RETAIL | 0.445 | | | | | | | | | |
| COST OF GOODS | .5800 | | | | | | | | | |
| COST OF FREIGHT | .0 | | | | | | | | | |
| TOTAL COST | .5800 | | | | | | | | | |
| % MARKUP | .0990 | | | | | | | | | |

FEB 0 9 2005

1/2 Naw held  1/2 for

BUYER'S NOTES:
RATING: (1-10)
6x6 8x11 2x11

CONDITIONS OF THIS ORDER
ALL COLLECT SHIPMENTS MUST BE ROUTED BY TRAFFIC DEPARTMENT AT 508-660-6900 OR 1-800-660-6821. FAILURE TO COMPLY
WHERE ADDITIONAL FREIGHT CHARGES INCURRED. ALL BACK ORDERS MUST BE SHIPPED PRE-PAID.
1. THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN SPECIFIED WITHOUT OUR WRITTEN PERMISSION.
2. THE RIGHTS RESERVED TO CANCEL IF NOT FILLED IN ACCORDANCE WITH OUR DELIVERY SCHEDULE.
3. THE RIGHTS RESERVED TO RETURN EXCESS OR DEFECTIVE MERCHANDISE AT SHIPPER'S EXPENSE.

| ZE | COST COMM | SELL | TOT | WHSE-3 | EXT.COST | EXT.RET | YD. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| .3 GOOD | $13.00 | $19.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BETT | $15.50 | $28.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BEST | $17.00 | $28.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 WOW | $19.50 | $34.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 5X8 BERB | $22.00 | $39.85 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 6X9 COMM | $19.00 | $29.95 | 0 | 0 | $0.00 | $0.00 | 4.44 | 0.00 |
| 6X9 COMM | $18.25 | $28.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 IRREG | $18.00 | $34.95 | 800 | 800 | $14,400.00 | $27,960.00 | 6.00 | 4800.00 |
| 6X9 PRIME | $22.00 | $39.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| X9 PREMIUM | $26.00 | $49.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 WOW | $37.00 | $69.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 6X9 BERB | $26.00 | $38.95 | 0 | 0 | $0.00 | $0.00 | 6.00 | 0.00 |
| 8X10 COMM | $30.00 | $47.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 GOOD | $38.50 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BETT | $41.00 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BEST | $45.00 | $99.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 WOW | $53.00 | $119.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X10 BERB | $44.00 | $74.95 | 0 | 0 | $0.00 | $0.00 | 8.89 | 0.00 |
| 8X12 GOOD | $41.50 | $79.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 BETT | $42.00 | $79.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 BEST | $47.00 | $109.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 WOW | $54.00 | $129.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 8X12 BERB | $48.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 10.67 | 0.00 |
| 9X12 GOOD | $35.00 | $48.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 IRREG | $38.00 | $74.95 | 300 | 300 | $11,400.00 | $22,485.00 | 12.00 | 3600.00 |
| 9X12 GOOD | $49.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BETT | $57.00 | $89.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BEST | $69.00 | $129.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 WOW | $75.00 | $149.95 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |
| 9X12 BERB | $58.00 | $95.00 | 0 | 0 | $0.00 | $0.00 | 12.00 | 0.00 |

FEB 0 9 2005

PO 7426

Cost - $25800 —
Retail — $ 50,495 —

Exhibit "R"

# CCC International

Direct Importers• Wholesalers• Since 1975

7903-A Kincannon Place, Lorton, VA 22079
Tel:(703)550-0222 Fax:(703)550-0297
Toll Free:1-800-763-2446
Web Site: www.cccint.com

INVOICE 63134

| Date | Order No. |
|------|-----------|
| Jan. 26, 2005 | 7426 |

TO  ACCOUNTS PAYABLE DEPT

INTERNATIONAL FLOOR CRAFT
319 LINCOLN STREET,
HINGHAM, MA 02043

ShipTo

BUILDING 19, WAREHOUSE #3
1 KING STREET,
NEW BEDFORD, MA 02746

1.All Claims must be made in writing within 7 days.
2.Goods returned are subject to a 15% restocking fee.
3.Buyer shall pay costs of shipping & handling.

4.Accounts past due will be charged 1.5% per month.
5.In the event this invoice is placed for collection. Buyer
  agrees to pay all related expenses such as attorneys fees,
  filing fee,court costs,costs of transportation and so on.

| SALESREP. | DATE SHIPPED | VIA | F.O.B.POINT | TERMS |
|-----------|--------------|-----|-------------|-------|
|  | 01/26/05 | TRUCKING |  | 2%20 DAYS |

| | | Unit | Total |
|---|---|------|-------|
| 800 | 6x9  Bound Rugs/2nds Assorted | 18.00 | $ 14400.00 |
| 300 | 9x12 Bound Rugs/2nds Assorted | 38.00 | 11400.00 |
| | TOTAL DUE: | | $ 25800.00 |

5323 CORP.  I&C

2/4

VENDOR ACCT #  CIO

INVOICE NO.  63134

DATE  1-26-05

AMT. $ 25,800.00   (516.00)  25,284.00

DUE DATE  2-15-05

DISTRIBUTION  REms
              4200-000-007

**THANK YOU**

Exhibit "S"

ORIGINAL

82554

SHIPPER: CCC INT'L

KEY-REC NO. 82554

DATE REC. 1/27

MORE. CHG. BY: TemBs. D.W.

ORDER CHG BY: T.W.

PURCHASE ORDER NO. 7426

DEPT. RU6   STORE WH 3

WT. 1100   PCS. 1100

FEB 04 2005

| MAKE | DESCRIPTION | QUANTITY |
|------|-------------|----------|
| Rems | 6x9 IRReG | 800 |
|      | 9x12 | 300 |

TOTAL 1100 PCS

Tyrone Williams

NOTE!! IF CUSTOMER'S RETURN BE SURE TO CHECK

Exhibit "T"



Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005          Tracer: 12012573 - Amt: $1,670.90 - 02/22/2005

Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005          Tracer: 11046850 - Amt: $25,284.00 - 02/24/2005

Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005          Tracer: 11064632 - Amt: $30,175.00 - 03/03/2005

Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005          Tracer: 11069403 - Amt: $28,000.00 - 03/16/2005

Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005          Tracer: 11155620 - Amt: $28,032.00 - 04/11/2005