UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INTERNATIONAL FLOOR CRAFTS, INC.
Plaintiff,

v.

DAVID W. ADAMS, TYRONE WILLIAMS, KEVIN BRITTO, RONALD E. MITCHELL, Individually and d/b/a MANSFIELD RUG COMPANY a/k/a MANSFIELD RUG DEPARTMENT and REMCO, MICHAEL E. BROWN, Individually and d/b/a DALTON PADDING and EMPIRE WEAVERS, JANE DZIEMIT, CHINESE CARPET CENTER, INC. d/b/a CCC INTERNATIONAL, DAVID D. SUN, and PAUL SUN,

Defendants,

v.

LOWELL FIVE CENT SAVINGS BANK, WACHOVIA BANK, NATIONAL ASSOCIATION, f/k/a FIRST UNION BANK OF VIRGINIA, CITIZENS BANK, BANK OF AMERICA f/k/a BANK OF BOSTON, PEOPLE'S BANK, and FIRST UNION NATIONAL BANK,
Trustee Process Defendants.

CIVIL ACTION
NO. 05-11654-NMG

**MOTION OF RONALD E. MITCHELL TO DISMISS COUNTS I AND II (CIVIL RICO) AND COUNT V (FRAUD) OF THE PLAINTIFF'S AMENDED COMPLAINT**

Defendant Ronald E. Mitchell moves pursuant to Fed. R. Civ. P. 12(b)(6) for the entry of an order dismissing Counts I, II and V of the Plaintiff's Amended Complaint, Demand for Injunctive Relief and Damages, and Demand for Jury Trial (the "Amended Complaint") filed on October 25. 2005 by plaintiff International Floor Crafts, Inc.

("IFC"). In support of his motion, Mitchell respectfully states as follows:

## INTRODUCTION

The allegations of the Complaint are made in sharply contrasting specifics and generality. Where specifics are alleged, plaintiff details the actions of insiders operating under its own roof in Massachusetts as its employees from 1997 to 2005. See Amended Complaint, Count VI (Breach of Fiduciary Duty) (Williams, Adams and Britto).

The Complaint then alleges actions by three sets of non-insiders, at different places and at different times, almost entirely without specifics. In Connecticut, plaintiff alleges actions by Ronald Mitchell, Jane Dziemit, Remco and Mansfield. In Georgia, plaintiff alleges actions by Michael Brown, Dalton Padding and Empire Weavers. In Virginia, plaintiff alleges actions by CCC International, David Sun and Paul Sun. Plaintiff then packs these scattered groups up with the Massachusetts insider defendants and labels them collectively a criminal "enterprise," a naked generalization, itself pleaded on information and belief.

Plaintiff has pleaded none of the detail required to maintain an action challenging a RICO "association in fact" enterprise in which Ronald Mitchell is alleged to have been involved. Its RICO Counts I and II thus fail, as no specific facts are pleaded which show that the supposed "association in fact" existed at all (or that its members even knew of each other -- let alone met, communicated and together planned a complex long-running multistate fraud). The fraud Count V fails as well, as plaintiff has not pleaded fraud alleged to have been conducted by Ronald Mitchell through a supposed "association" with the specificity mandated by Fed. R. Civ. P. 9(b).

**PLAINTIFF'S ALLEGATIONS**

In the original Complaint,[1] and the Amended Complaint, the plaintiff details close continuous contact among the insider defendants Williams, Adams and Britto.[2] "For the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC, by telephone and facsimile -- even during times when Defendant Adams and/or Defendant Britto did not work at IFC." Amended Complaint, ¶ 38, at 13. Of the actions that are specifically alleged in either version of plaintiff's complaint, almost all were by insiders.[3] Defendant Adams is alleged to have directed fictitious shipments to plaintiff's New Bedford warehouse. Amended Complaint, ¶ 35, at 13. "Under the criminal enterprise, Defendants Britto or Adams would create purchase orders. Defendant Williams or Defendant Britto would then generate fabricated Key Reqs in which he falsely confirmed that IFC had received the non-existent merchandise, and he would then forward the Key Reqs to Accounts Payable for payment." Amended Complaint, ¶ 40, at 15. "Defendant Adams initialed the purchase order." Amended Complaint, ¶¶ 42, 46 and 50.

With respect to the non-insider defendants, the bold combined portrait that is offered is explicitly based on nothing more than information and belief. The plaintiff has now twice painted the non-insider group in broad strokes, but admits, by dismissal

---

[1] Plaintiff's Complaint, Demand for Injunctive Relief and Damages, and Demand for Jury Trial, filed on August 8, 2005 (the "Complaint").

[2] The plaintiff employed David W. Adams as a buyer and/or representative. Amended Complaint, ¶¶ 6 and 26. The plaintiff employed Kevin Britto as a buyer. Amended Complaint, ¶ 8. The plaintiff employed Tyrone Williams as a warehouse manager and receiver. Amended Complaint, ¶¶ 7 and 37.

[3] Plaintiff also alleges that Jane Dziemit endorsed Remco checks for deposit in a Bank of Boston account on four occasions, and that Ronald Mitchell misrepresented facts regarding carpet said to have been delivered in about March 2005. Amended Complaint, ¶¶ 11 and 32.

and amendment, that much of whatever foundation it had for the original joint portrait set before this Court on August 8, 2005 was wrong. Plaintiff continues to be dogged by the consequences of scattershot unfounded pleading. See Docket Nos. 92 (letter filed on October 26, 2005 confirming that plaintiff will not record an attachment of White Plains, New York real estate owned by an unrelated person named "Ronald Mitchell") and 94 (letter and pleading filed on October 31, 2005 confirming dismissal of a civil action and release of writ of attachment against an unrelated person named "Ronald Mitchell").

The enterprise allegations that were made in the original Complaint, ¶ 38 are indisputably false with respect to the defendants Agatha Esposito, Donald Shoop, and John D. Sun, as to each of whom the Complaint stands dismissed.[4]

> ***Upon information and belief***, at all times relevant, all of the Defendants have maintained a common communication network for sharing information on a regular basis. Where necessary, ***upon information and belief, one or more*** of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise. ***Upon information and belief***, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise.

Complaint, ¶ 38 (emphasis added).

---

[4] Agatha Esposito and Donald Shoop were dismissed as defendants by notice filed on September 16, 2005, Docket No. 52, and John D. Sun was dismissed as a defendant by notice filed on October 4, 2005, Docket No. 84.

Yet identical "enterprise" allegations, without any facts pleaded in support since the allegations failed against Esposito, Shoop and John Sun, are made in the Amended Complaint against a reconfigured defendant group. Amended Complaint, ¶ 38. The plaintiff again alleges a "common communication network" among all defendants, but again says nothing further of it anywhere. Plaintiff again alleges meetings, in person and/or by telephone, at which "the defendants" are said to have gathered to discuss their alleged criminal enterprise, but again backtracks instantly, saying such meetings were among "one or more of the Defendants." In other words, the "group" meetings boldly alleged in paragraph 38 presumably mean nothing other than the close contact among IFC insiders detailed in the opening sentence of paragraph 38.

No factual tie has been pleaded linking Ronald E. Mitchell with either the original or the reconstituted "enterprise." Plaintiff originally alleged the constituency of its RICO "enterprise" as follows: "At all times relevant, Defendants Williams, Adams, Britto, Mitchell, Brown, Dziemit, Esposito, Shoop <u>and/or</u> CCC International, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose of systematically and surreptitiously embezzling substantial sums of money from, and otherwise defrauding, IFC from at least 1997 to and including 2005, have constituted, and continue to constitute, an enterprise within the meaning of 18 U.S.C. § 1961(4)." Complaint, ¶ 66 (emphasis added). Plaintiff has since admitted that this indefinitely framed group ("<u>and/or</u>") was not the "enterprise" by dismissals and by the filing of an Amended Complaint. In the Amended Complaint, identical allegations are made as to a recomposed indefinite group: "Williams, Adams, Britto, Mitchell, Brown, Dziemit, Paul Sun, David Sun <u>and/or</u> CCC International." Amended Complaint, ¶ 66 (emphasis added).

Allegations concerning Ron Mitchell are few. He is alleged to be a Connecticut resident who did business under the names of two allegedly fictitious entities, Remco and Mansfield Rug Company. Amended Complaint, ¶¶ 9, 42 and 46. Ronald Mitchell is alleged to have misrepresented facts regarding carpet said to have been delivered in about March 2005, and to have colluded with Britto and Adams to create false invoices for non-existent shipments of merchandise. Amended Complaint, ¶¶ 32 and 40.

Allegations detailing links between Ronald Mitchell and any defendant -- or the alleged RICO "enterprise" -- are rare. In the original Complaint, specific allegations of fact are made which could be read to link Ronald Mitchell to three other defendants through Remco or Mansfield Rug:

> (1) Jane Dziemit, alleged to have done business under the name of an allegedly fictitious Connecticut entity called Remco, and to have endorsed Remco checks for deposit. Complaint, ¶ 11.
>
> (2) Agatha Esposito, alleged to have done business under the name of an allegedly fictitious Connecticut entity called Remco. Complaint, ¶ 12 (deleted from the Amended Complaint).
>
> (3) Donald Shoop, alleged to have done business under the name of an allegedly fictitious Connecticut entity called Remco. Complaint, ¶ 13 (deleted from the Amended Complaint).

Yet of these three links, only one, a possible tie with Jane Dziemit, has survived through to the Amended Complaint (¶ 11).

Indeed, neither the original nor the Amended Complaint even include a direct allegation of action by defendant Ronald E. Mitchell. Instead the passive voice allegation is made that after [unspecified] investigation "IFC has determined that, over the past eight to ten years, Buyers Britto and Adams colluded with manufacturer representatives Brown, Mitchell and the Suns to create a criminal enterprise in which Brown, Mitchell and the Suns created false invoices for non-existent shipments of

merchandise from one of the Fictitious Companies and/or CCC International to IFC." Amended Complaint, ¶ 40 (emphasis added).[5]

## ARGUMENT

### I. COUNT I (RICO) MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD THE EXISTENCE OF AN "ASSOCIATION IN FACT" CONSTITUTING A SECTION 1961(4) RICO ENTERPRISE

While pleadings are to be construed liberally, "a greater degree of specificity is required in RICO cases." Bessette v. Avco Fin. Services, Inc., 230 F.3d 439, 443 (1st Cir. 2000) (affirming dismissal of inadequately pleaded RICO enterprise), cert. denied, 532 U.S. 1048 (2001). To state a RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must allege each of the four elements required by the statute: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995). The RICO "enterprise," broadly defined in 18 U.S.C. § 1961(4), includes any union or group of individuals associated in fact. United States v. Turkette, 452 U.S. 576, 580 (1981). The RICO enterprise must be an entity, "a group of persons associated together for a common purpose of engaging in a course of conduct." It must be "an ongoing organization, formal or informal," with evidence that its various associates function as a continuing unit." Turkette, 452 U.S. at 583.

---

[5] The following actions by Remco and Mansfield are alleged:

It is alleged that Mansfield Rug sent plaintiff Invoice No. 8868 dated March 25, 2005 in the amount of $25,054.77, and that Mansfield Rug and Remco failed to provide evidence of delivery of product to the plaintiff. Amended Complaint, ¶¶ 28, 29 and 32.

It is alleged that on or about October 30, 2002 Remco sent plaintiff Invoice No. 20021030 in the amount of $38,500, that Adams initialed the relevant purchase order, and that Williams signed a receiving document although plaintiff did not receive the subject merchandise. It is alleged that Remco was paid $37,730.00 on November 14, 2002. Amended Complaint, ¶¶ 42-45.

It is alleged that on or about November 25, 2002 Mansfield Rug sent plaintiff Invoice No. 4462 in the amount of $43,050, that Adams initialed the relevant purchase order, and that Williams signed a receiving document although plaintiff did not receive the subject merchandise. It is alleged that Mansfield Rug was paid $42,189.00 on December 4, 2002. Amended Complaint, ¶¶ 46-49.

As a prerequisite to "association in fact" enterprise liability in the First Circuit, it must be shown that the alleged component groups "constitute a larger unit, over and above their separate structures and operations." Libertad, 53 F.3d at 442.[6] "[S]imilarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination." Id., 53 F.3d at 443.

Many complaints have been dismissed for the failure to provide a factual basis for "association in fact" enterprise allegations. While the dismissal of a RICO complaint was affirmed on other grounds in Feinstein v. Resolution Trust Corp., 942 F.2d 34 (1st Cir. 1991), the First Circuit took pains to note that:[7]

> Although the complaint made a ritualistic averment, in wholly conclusory terms, that the defendants, including the appellees, "constitute[d] an enterprise ostensibly engaged in the business of buying, selling, mortgaging, hypothecating, exchanging and pledging certain properties . . . located in various states," it contained no allegations articulating how any of the appellees may have comprised part of an "ongoing organization" or "function[ed] as a continuing unit." . . . Under the circumstances, the district judge's assessment that the complaint did not plead an association in fact adequate to satisfy RICO's enterprise requirement seems unassailable.

942 F.2d at 41 n.7 (emphasis added). Across the circuits, the pleading of specific facts to support "association in fact enterprise" allegations has been required.

> Plaintiffs certainly have not advanced any factual allegations that the Vahabzadeh Enterprise was an "ongoing organization, formal or informal," or any "evidence that the various associates" of the alleged enterprise functioned "as a continuing unit." Turkette, 452 U.S. at 583. Moreover, Plaintiffs have failed to provide us with any solid information regarding the "hierarchy, organization, and activities" of this alleged association-in-fact enterprise, . . . from which we

---

[6] "As a matter of law, it is not sufficient that several organized, ongoing groups come together for one concerted action, unless those groups can also be shown to constitute a larger unit, over and above their separate structures and operations, and that this unit meets the Turkette criteria for an "association-in-fact." Libertad, 53 F.3d at 442

[7] "Our quest for brevity should not, however, be equated with any lack of confidence in the perspicacity of the district court's views." 942 F.2d at 41 n.7.

> could fairly conclude that its "members functioned as a unit." . . . Thus, there is no basis to support the conclusion that the supposed constituent entities of the Vahabzadeh Enterprise were "associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583.

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 174-175 (2d Cir. 2004) (affirming dismissal of complaint); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 676 (7th Cir. 2002) (affirming dismissal of complaint) ("we cannot accept Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure.").[8] "A properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" Begala v. PNC Bank, Ohio, N.A., 214 F.3d 776, 781 (6th Cir. 2000) (dismissal affirmed),[9] cert. denied, 531 U.S. 1145 (2001), quoting Frank v. D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993).

Factors considered in the First Circuit in determining whether association-in-fact enterprise has been properly asserted include:

"(1) whether the associates have a common purpose, *see id.* At 442-443;

(2) whether there is 'systematic linkage, such as overlapping leadership, structured or financial ties or continuing coordination,' *id.*, at 443;

(3) whether there is a common communication network for sharing information on a regular basis, *see id.* At 444;

---

[8] "Aside from naming a string of participants, the amended complaint offers no intelligible clue as to the scope and duration of the enterprise itself; the duration here presumably is a function of UCC's existence, but that is insufficient because UCC is not the enterprise. In any event, Appellants offer nothing to show that this group of participants ever functioned as an ongoing RICO organization. As a consequence, the RICO claim is worthy of dismissal, notwithstanding whether the participants had a common purpose." 229 F.3d at 676-677.

[9] "In this case, the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages." 214 F.3d at 781.

(5) whether the associates hold meetings and sessions where important discussions take place, *see* United States v. Patrick, 248 F.3d 11, 19 (1st Cir. 2001);

(6) whether the associates wear common colors, signs or insignia to make the group identifiable, *see id.*; and

(7) whether the group conducted common training and instruction, *see id.*

In re Pharmaceutical Industry Average Wholesale Price Litigation, 263 F. Supp. 2d 172, 182 (D. Mass. 2003), citing Libertad v. Welch, 53 F.3d at 442-44. "None of these factors is dispositive." Id., 263 F. Supp. 2d at 182.

In the Pharmaceutical Industry case, the complaint was ordered dismissed where facts had not been specifically alleged to support the claimed RICO "enterprise." Id., 263 F. Supp. 2d at 184.[10] In discussing deficiencies of the amended complaint that was filed in response by the plaintiffs, the Court noted that:

> There are no allegations of a common command structure or any considered response to evolving conditions. Allegations of a common communication network beyond the sending of AWP information to be published are barebones; there are no common communications alleged beyond those that would be exchanged by parties to an arms-length contract. The Plaintiffs do not attempt to allege the remaining factors (meetings, joint training, etc.) relevant to a determination of whether an association-in-fact existed.

In re Pharmaceutical Industry Average Wholesale Price Litigation, 307 F. Supp. 2d 196, 205 (D. Mass. 2004). Similarly, in granting a motion to dismiss an inadequately pleaded RICO "enterprise," Judge Stearns noted that there was no allegation that the defendant members of the alleged enterprise "were associated together in any meaningful sense, or were even aware of one another's existence as participants in a scheme to defraud."

---

[10] "Again, however, the complaint fails to allege facts which would support an entity consisting of all the PBMs joined with a drug company in a common purpose." Pharmaceutical Industry,

In re Lupron Marketing and Sales Practices Litigation, 295 F. Supp. 2d 148, 173-174 (D. Mass. 2003) (emphasis added).

A looting complaint was ordered dismissed which failed to detail the structure and goals of an alleged RICO enterprise.

> The Liquidator does not describe this structure at all, nor does he explain which affairs the purported enterprise conducted. The Liquidator only alleges in a cursory fashion that the association-in-fact enterprise "functioned in a hierarchical decision-making structure as a continuing unit from at least 1989 to 1996, and was engaged in and the affairs of which affected interstate commerce." (R. 1-1, Compl. ¶ 88.) An enterprise cannot exist with only these bare allegations.

Shapo v. O'Shaughnessy, 246 F. Supp. 2d 935, 962 (N.D. Ill. 2002) (citations omitted). In Blue Cross of Calif. v. Smithkline Beecham Clinical Laboratories, Inc., 62 F. Supp. 544 (D. Conn. 1998), claims similar to the claims made in this civil action were dismissed as 'devoid of specific allegations' supporting the "enterprise." Alleging a scheme using varying types of fraudulent billing practices, plaintiff nonetheless failed to explain "how this 'group of persons associated together for a common purpose of engaging in a course of conduct'; United States v. Turkette, 452 U.S. 576, 583 (1981); and how they 'functioned as a continuing unit.' Id." 62 F. Supp. 2d at 552-553 (emphasis added).

Specific facts demonstrating the actual existence of an "association in fact" must be pleaded. Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc., 200 F. Supp. 2d 756, 760 (E.D. Mich. 2002) (Rule 12(b)(6) dismissal of RICO claims) ("Plaintiffs do not allege any facts which would establish that the alleged association-in-fact was an ongoing organization.");[11] Bank v. Brooklyn Law School, 2000 WL 1692844, *4 (E.D.N.Y.

---

263 F. Supp. 2d at 184.

[11] "Paragraphs 60, 62 and 63 do not set forth any facts which would suggest that this group of corporations functioned as an ongoing organization, the first element of an association-in-fact. Plaintiffs do not plead any facts which suggest that the alleged association-in-fact had any type

Oct. 6, 2000) (RICO complaint dismissed); Pasacic v. Ameriquest Mortgage Co., 2005 WL 1200373, *4 (N.D. Ohio May 19, 2005) (Magistrate Judge decision recommending dismissal of RICO complaint);[12] ABN Amro Mortgage Group, Inc. v. CBSK Fin. Group, Inc., 2004 WL 2452022, *1 (N.D. Tex. 2004) (plaintiff "has not sufficiently pleaded an association in fact functioning through a hierarchical or consensual decision-making structure. . . . The allegations to that effect are conclusory and an unwarranted deduction from the specifically pleaded facts in the first ninety paragraphs of the complaint.") (RICO claims ordered dismissed under Rule 12(b)(6)); State Farm Mut. Automobile Ins. Co. v. Giventer, 212 F. Supp. 639, 650 (N.D. Tex. 2002) ("State Farm, however, has not shown the existence of an ascertainable structure separate and apart from the alleged pattern of racketeering.") (inadequate complaint failed post-default).

In the Amended Complaint, the plaintiff has entirely failed to plead the factual basis for its association in fact allegations. No facts have been pleaded which show a common enterprise purpose. To the contrary, there are at least three separate groups, as to whom no connection has been shown. No facts have been pleaded showing "systematic linkage, such as overlapping leadership, structured or financial ties or continuing coordination." Although plaintiff has twice alleged a common communication network, now said to have existed and to have been maintained among

---

of organizational structure, hierarchy for decision-making, or mechanism for conducting the group's affairs." 200 F. Supp. 2d at 761.

[12] "Indeed, Plaintiff does not plead any facts which suggest that the alleged association-in-fact had any type of organizational structure, hierarchy for decision-making, or mechanism for conducting the group's affairs. Rather, the allegations simply delineate 'a string of entities allegedly comprising the enterprise, and . . . a string of supposed racketeering activities in which the enterprise purportedly engages.' Begala, 214 F.3d at 781. Such bare allegations are insufficient to state a claim that the alleged association-in-fact functioned as an ongoing organization." 2005 WL 1200373, at *4.

two distinct sets of defendants,[13] no facts have ever been alleged to show that such "communication network" is anything other than fantasy. No facts have been pleaded which show that the associates held meetings and sessions where important discussions take place. To the contrary, as noted above, plaintiff has made it fairly clear that the only meetings alleged are intramural meetings among the insider defendants Adams, Britto and Williams alone. No facts have been pleaded which show that the enterprise "associates" had any common identification. No facts have been pleaded which would show that the group conducted common training and instruction. Indeed, no facts have been alleged showing that any of the non-insider defendant groups knew of each other, let alone actually communicated with each other, even once.

In the absence of this required fact pleading, it is of course possible that diverse business people in scattered locations around the country and with no prior connection gathered in a brazen and blatantly obvious scheme to ship nothing at all, bill handsomely for goods that were not shipped, and thereby defraud the Massachusetts plaintiff. Yet it is equally or even more possible that the insider defendants used the absence of internal controls and the cover of plaintiff's legitimate business to hoodwink one or more of the non-insider defendants in further frauds practiced on them in turn. The firm rule that the factual basis of an "association in fact" enterprise must be specifically pleaded is a defense against this uncertainty, and this injustice, in RICO cases.

The plaintiff's failure to plead facts demonstrating actual ties among scattered defendant groups assembled by pleading and alleged to be a RICO "association in fact" requires dismissal of its Count I (Civil RICO) of its Amended Complaint.

---

[13] Complaint, ¶ 38; Amended Complaint, ¶ 38.

## II. COUNT I (RICO) MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PROPERLY PLEAD PARTICIPATION IN THE CONDUCT OF THE PREREQUISITE "ASSOCIATION IN FACT"

In order to be found liable under 18 U.S.C. § 1962(c) for conducting or participating, directly or indirectly, in the conduct of an enterprise, "one must participate in the operation or management of the enterprise itself." Pharmaceutical Industry., 263 F. Supp. 2d at 185, quoting Reeves v. Ernst & Young, 507 U.S. 170, 185 (1993). As the Supreme Court stressed, "some part in directing the enterprise's affairs is required." 507 U.S. at 179 (emphasis in the original). The plaintiff has provided no facts showing Ron Mitchell's participation in the operation or management of an "enterprise" which itself is described by conclusory allegation alone. By contrast, in In re Lupron Marketing and Sales Practices Litigation, 295 F. Supp. 2d 148, 172 (D. Mass. 2003):

> The Amended Complaint alleges that high-ranking Takeda officials were installed in TAP's headquarters to oversee its activities, that Abbott and Takeda collectively determined the price that TAP would charge doctors for Lupron, that Abbott and Takeda set the published AWP thereby determining the spread, and that Abbott and Takeda supervised and directed TAP's Lupron marketing scheme, including the distribution of free samples. These allegations are sufficient to satisfy the Reeves test.

As the plaintiff has failed both to detail the subject RICO "association in fact" enterprise as required by applicable precedent, and to detail Ron Mitchell's alleged participation in the suggested "enterprise," the Section 1962(c) claim made in Count I (Civil RICO) of its Amended Complaint must be dismissed.

## III. COUNT II (RICO) MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PROPERLY PLEAD THE "ASSOCIATION IN FACT" PREQUISITE TO AN ALLEGED RICO CONSPIRACY

The elements needed to plead a RICO conspiracy are: (1) the existence of an enterprise; (2) that each defendant knowingly joined the enterprise; and (3) that each

defendant agreed to commit, or in fact committed, two or more predicate crimes as part of his participation in the enterprise. United States v. Angiulo, 847 F.2d 956, 964 (1st Cir.), cert. denied, 488 U.S. 852 (1988); United States v. Winter, 663 F.2d 1120, 1136 (1st Cir. 1981) (same), cert. denied, 460 U.S. 1011 (1983). "For claims under Sec. 1962(d), a plaintiff must show that each defendant in the RICO conspiracy case joined knowingly in the scheme and was involved himself, directly or indirectly, in the commission of at least two predicate acts." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995).

The failure to establish a RICO enterprise, as detailed above, is fatal to the plaintiff's conspiracy claim. "Because State Farm has failed to show the existence of an association-in-fact enterprise, it cannot establish that Giventer and Merlin conspired to violate subsection (c). State Farm's claim for conspiracy under § 1962(d) therefore necessarily fails as a matter of law." State Farm Mut. Automobile Ins. Co. v. Giventer, 212 F. Supp. 639, 650 (N.D. Tex. 2002); Bank v. Brooklyn Law School, 2000 WL 1692844, *8 (E.D.N.Y. Oct. 6, 2000) (RICO complaint dismissed); Pasacic v. Ameriquest Mortgage Co., 2005 WL 1200373, *4 (N.D. Ohio May 19, 2005) (Magistrate Judge decision) ("Failing to state a substantive RICO claim, the undersigned also concludes that Plaintiff has failed to state a RICO conspiracy claim, alleged under Section 1962(d)."); ABN Amro Mortgage Group, Inc. v. CBSK Fin. Group, Inc., 2004 WL 2452022, *1 (N.D. Tex. 2004) ("And because plaintiff cannot plead an enterprise under 18 U.S.C. § 1962(c), its conspiracy claim under § 1962(d) necessarily fails.") (RICO claims ordered dismissed under Rule 12(b)(6)).

Count II (RICO conspiracy) of the Amended Complaint must be dismissed due to the plaintiff's failure to plead the required factual basis for the RICO enterprise that has been alleged.

## IV. COUNT V (FRAUD) MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD THE EXISTENCE OF THE "ASSOCIATION IN FACT" PREQUISITE TO THE ALLEGED RICO CONSPIRACY

In Count V, plaintiff makes a collective allegation of fraud said to have been carried out by the members of its supposed "enterprise." Fed. R. Civ. P. 9(b) requires that the circumstances constituting fraud or mistake shall be stated with particularity. To the extent plaintiff alleges that defendant Ronald E. Mitchell engaged in fraudulent activity through a sketchily alleged "association in fact" enterprise with individuals scattered about the country, this pleading lacks the factual specificity required by Rule 9(b). The averments of fraud by Mitchell said to have been carried out through the collective enterprise are not stated with particularity as required by the rule. Count V (Fraud) of the Amended Complaint must be dismissed due to plaintiff's failure to plead the circumstances constituting fraud by Ronald Mitchell with particularity.

RONALD E. MITCHELL

By his attorney,

Frederic D. Grant, Jr.
BBO No. 543115
727 Atlantic Avenue, 2nd floor
Boston, Massachusetts 02111
(617) 357-6555
(617) 357-5030 (Telefax)
grant@grantboston.com

Dated: October 31, 2005

LOCAL RULE 7.1(A)(2) CERTIFICATE

I, Frederic D. Grant, Jr., hereby certify pursuant to Local Rule 7.1(A)(2) that prior to filing this motion I spoke by telephone with Paul J. Klehm, Esquire, counsel to the plaintiff, in a good faith effort to resolve or narrow the issues presented by this motion. As this motion seeks dismissal of the RICO counts of the complaint, attorney Klehm advised me that the plaintiff will oppose the motion.

Frederic D. Grant, Jr.

CERTIFICATE OF SERVICE

I, Frederic D. Grant, Jr., hereby certify that I served the foregoing document this 31st day of October, 2005 by causing a true and correct copy of the same to be sent by First Class U.S. Mail, postage prepaid, to:

James B. Krasnoo, Esquire
Paul J. Klehm, Esquire
Law Offices of James B. Krasnoo
23 Main Street
Andover, Mass. 01810
(Counsel to the plaintiffs)

Isaac H. Peres, Esquire
Law Office of Isaac H. Peres
50 Congress Street, Suite 225
Boston, Mass. 02109
(Counsel to defendant David W. Adams)

William A. Brown, Esquire
31 Milk Street, Suite 501
Boston, Mass. 02109
(counsel to defendant Ronald E. Mitchell)

Robert Xifaras, Esquire
5 Dover Street, Suite 101
New Bedford, Mass. 02740
(counsel to defendant Tyrone Williams)

Paul V. Kelly, Esquire
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, Mass. 02110
(counsel to defendant Michael E. Brown)

John Thorpe Richards, Jr., Esquire
Trout Cacheris, PLLC
1350 Commonwealth Avenue, N.W., Suite 300
Washington, D.C. 20030
(counsel to defendants CCC International, Inc, David D. Sun and Paul Sun)

Peter B. Krupp, Esquire
Lurie and Krupp, LLP
One McKinley Square
Boston, Mass. 02109
(counsel to defendants CCC International, Inc, David D. Sun and Paul Sun)

Andrew Good, Esquire
Good & Cormier
83 Atlantic Avenue
Boston, Mass. 02110
(counsel to defendant John D. Sun)

Frederic D. Grant, Jr.