UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC., | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 05-11654-NMG |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID W. ADAMS, TYRONE WILLIAMS, | ) | |
| KEVIN BRITTO, RONALD MITCHELL, | ) | |
| Individually and d/b/a MANSFIELD RUG | ) | |
| DEPARTMENT and REMCO, MICHAEL | ) | |
| E. BROWN, Individually and d/b/a DALTON | ) | |
| PADDING and EMPIRE WEAVERS, JANE | ) | |
| DZIEMIT, CHINESE CARPET CENTER, INC. | ) | |
| DAVID D. SUN, and PAUL SUN, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LOWELL FIVE CENT SAVINGS BANK, | ) | |
| WACHOVIA BANK, NATIONAL | ) | |
| ASSOCIATION, f/k/a FIRST UNION BANK | ) | |
| OF VIRGINIA, CITIZENS BANK, BANK OF | ) | |
| AMERICA f/k/a BANK OF BOSTON, | ) | |
| PEOPLE'S BANK, and FIRST UNION | ) | |
| NATIONAL BANK, | ) | |
| | ) | |
| Trustee Process Defendants. | ) | |

## COMBINED MEMORANDUM OF LAW OF JANE DZIEMIT
## (1) IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND (2) IN SUPPORT OF HER MOTION TO DISMISS

After two attempts, thirty-three pages, and one hundred numbered paragraphs, plaintiff

International Floor Crafts, Inc. ("IFC" or "Building 19") alleges a broad conspiracy against more

than a dozen defendants whose identities shift with each new version of the complaint.  In its

blunderbuss approach, IFC asserts that several categories of defendants purportedly engaged in a scam to charge IFC for resale goods, rugs, that were never delivered.  IFC admits in its amended complaint that *its own* poor internal controls allowed three alleged IFC insiders (Defendants Adams, Williams, and Britto) to place and get paid for an uncertain number of fictitious orders for rugs over the course of some four or five (or even eight to ten) years.[1]  According to the amended complaint, these cheating IFC employees used certain outsiders (Defendants Mitchell, Mansfield Rug, REMCO, Brown, Dalton Padding, Empire Weavers, Chinese Carpet Center, Inc., and the two Suns) to submit the allegedly fictitious invoices based on the fictitious purchase orders the insiders had written.  Three of the outside defendants named in the original complaint, about whom the plaintiff solemnly and under oath assured the Court were direct participants in this terrible conspiracy, were summarily dropped from the amended complaint.  One can predict with confidence that plaintiff's second amended complaint will further shift who the plaintiff will then say defrauded it.

And then, there is defendant Jane Dziemit.  In the one hundred paragraphs of IFC's amended complaint, Ms. Dziemit's only connection to the purported conspiracy of three unfaithful IFC employees is that she received and deposited certain IFC checks for ordered goods.  In the amended complaint, once one gets beyond the paragraphs identifying the parties,

---

[1] IFC has clearly inflated its claimed damages for dramatic effect. In its amended complaint and supporting affidavits, it tosses around figures of as much as $5 million, which it sheepishly concedes is the "retail" value of rugs that it says it may never have received.  As a retailer, presumably IFC paid some fraction  ($2 million? $1.5 million? $1 million?) for what it hoped it could sell for $5 million.  Moreover, one need not examine the amended complaint and the supporting affidavits with a magnifying glass to understand that IFC actually does not know, and does not say it knows, which of scores of invoices for rugs were for rugs which were actually delivered (and therefore as to which it has no claim) and which invoices are for rugs that it says it never received.  An internal system of controls that never took a real, effective inventory during the course of some five years while three insiders allegedly plundered IFC for "millions," is not an internal system that can be relied upon to provide any accurate answers years later.

Jane Dziemit makes only two cameo appearances.[2]  Other than Ms. Dziemit's receipt of several checks, the amended complaint is silent on her "role" in the supposed conspiracy to defraud Building 19.  Such few references to Ms. Dziemit are, of course, the first indication that the complaint is not well-founded as to her.  Such few allegations not only fail to comply with Fed. R. Civ. P. 9(b) and 12(b)(6), but they immediately raise the likelihood that, whatever her "involvement," it was devoid of fraud and devoid of knowledge of any fraud.  When a plaintiff shoots wildly in the dark, as this plaintiff has done now on two occasions, some of those shots will graze innocent parties.

In this case, Ms. Dziemit participated in no fraud.  Rather, as her affidavit notes, based on purchase orders issued ***by IFC***, for a period of time, she loaned money to Defendant Mitchell and REMCO.  These loans were for the purchase of rugs and the like for resale.  Having loaned monies to Mitchell, she undertook a variety of means to ensure repayment, including, for a period of time, the requirement that the checks be sent to a post office box she had access to, so that she could process these receivables, repay the monies she had advanced, and otherwise dispense the monies as directed by the borrower, Mitchell.  In sum, she operated the equivalent of a lender's lockbox for financed receivables.  Not only does such an arrangement ***not*** constitute the participation in the fraud alleged here, such loans and advances made to or for the benefit of Mitchell actually affirmatively undermine the plaintiff's theory of the case.  IFC says that it spent millions on invoices where there were no rugs delivered to it.  If, as the amended complaint alleges, there were no rugs, then Mitchell did not need funds to buy nonexistent rugs and would

---

[2] In paragraph 40, IFC alleges that some payments for REMCO were sent to Ms. Dziemit.  In paragraph 66, IFC includes Ms. Dziemit in a shopping list of all defendants in a conclusory allegation saying that some of these defendants ("and/or") conspired together.  See also paragraphs 71-72, 75-76, 78-79, 82-84 (generally referring to "Defendants" as a whole; Ms. Dziemit is not even mentioned separately).  Little more detail is set forth as to Ms. Dziemit in the supporting affidavits, other than that one particular check to defendant Mitchell was sent by overnight mail to Ms. Dziemit, who called about it when it was misdelivered.  (Gemme Aff. at ¶ 28; see also Dziemit Aff. at ¶ 13.)

not have needed to borrow.  Indeed, the scheme outlined by plaintiff IFC needed no financing whatsoever.  Here, however, Ms. Dziemit advanced *real* money to Mitchell for the purchase of rugs for resale to IFC.  Given that money is ***not*** needed to purchase non-existent rugs, there are really only two logical possibilities:  (1) Mitchell used the funds advanced to buy rugs and there is ***no claim*** against either of them; or (2) Mitchell did not use the monies to buy rugs, in which case both Ms. Dziemit and IFC were defrauded and there is ***still no*** viable claim against Ms. Dziemit.  The few allegations of the amended complaint which pertain to Ms. Dziemit fail to meet the burden of stating a claim under Rule 12(b)(6) or the burden of pleading fraud with specificity under Rule 9(b).  Therefore, IFC's claims against Ms. Dziemit must be dismissed.

But IFC did not stop at including Ms. Dziemit in its blunderbuss allegations.  With no more detail or specificity, IFC also asked this Court to grant a preliminary injunction against Ms. Dziemit.  For the same reasons why the claims against Ms. Dziemit must be dismissed, it is even more compelling that the request for a preliminary injunction must fail.  Indeed, not only is the request for a preliminary injunction without the necessary factual support, it demonstrably exceeds the limits of what this Court could do even if there were a solid factual basis for the motion.  It seeks extra-territorial prejudgment security against a non-resident of Massachusetts in the guise of a "preliminary injunction," something that is simply outside of this Court's equitable powers to grant.

## BACKGROUND

**IFC's Limited Claims and Allegations Against Ms. Dziemit**

In its amended complaint, IFC has brought claims against Ms. Dziemit for violations of the Racketeer-Influenced and Corrupt Organizations Act ("RICO Act") (Count I), conspiracy to violate the RICO Act (Count II), Conversion (Count III), violation of G.L. c. 93A (Count IV),

and fraud (Count V). IFC alleges that the defendants engaged in a "pattern of racketeering activity" to "defraud IFC by preparing fabricated purchase orders and fictitious shipping documents . . . to illusory companies for non-existent merchandise." (Amended Complaint at ¶ 1.) In doing so, IFC identifies certain "insiders" of IFC that fabricated the purchase orders, certain "outsiders" that billed IFC based on the fabricated purchase orders, and certain companies that never delivered merchandise. (Amended Complaint at ¶¶ 26-35.) And then, there is Ms. Dziemit. IFC alleges that Ms. Dziemit is somehow connected to this "racketeering activity" by way of her receipt, endorsement and deposit into a Bank of Boston account of **four** checks on behalf of one of the other Defendants – the alleged "illusory company" – Defendant REMCO. (Id. at ¶¶ 6, 40.) Ms. Dziemit's cashing of a check sent to REMCO provides the **sole support** for IFC's conclusion that Ms. Dziemit, along with the other defendants, "conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a 'pattern of racketeering activity.'" (Id. at ¶ 68.)

IFC also requests prejudgment security against Ms. Dziemit by way of trustee process attachments (Count VII) and injunctive relief against dissipating any assets (Count VIII). Initially, on August 11, 2005, this Court entered an *ex parte* temporary restraining order that applied to Ms. Dziemit concerning the above prejudgment security requests. (See Memorandum and Order dated Oct. 19, 2005, Docket #86.) That temporary restraining order expired and this Court declined to enter a preliminary injunction. (Id.) As a result, IFC filed its present, renewed motion for preliminary injunction, which Ms. Dziemit now opposes.

**Ms. Dziemit had No Involvement in or Knowledge of the Purported Scheme**

Ms. Dziemit does not now hesitate to tell of her limited, and innocent, involvement with some of the other Defendants. She has tried to do so directly to IFC, but IFC insists that she

remain in this action, presumably as yet another source of recovery.

By way of summary, and as stated in more detail in the accompanying Affidavit of Jane Dziemit, Ms. Dziemit is in the business of making loans, typically real estate loans secured by mortgages. (Dziemit Aff. at ¶ 5.) In 1999, Defendant Ronald Mitchell, a long-time friend of Ms. Dziemit, approached her and requested a modest loan to support his business – the purchase and resale of rugs. (Id. at ¶ 6.) Ms. Dziemit ultimately agreed to loan Mr. Mitchell the money, but insisted on documentation. (Id. at ¶¶ 7, 8.) Ms. Dziemit, upon the advice of her accountant, initially took a promissory note from Mr. Mitchell and then, for a limited time, entered into what is commonly referred to as a "lockbox" arrangement, whereby Ms. Dziemit advanced the money for the purchase of the goods based on particular invoices and purchase orders and then received, endorsed, and deposited the payment checks. (Id.) Under this arrangement, after Ms. Dziemit deposited a payment check, she allocated the proceeds by: first repaying the principal and interest on the loan; then advancing money for new rug purchases (if requested by Mr. Mitchell); and then distributing the remainder to Mr. Mitchell or as Mr. Mitchell, the borrower, directed. (Id.)

Ms. Dziemit does not know whether or not IFC was the victim of the scam it alleges was perpetrated on it. (Id. at ¶¶ 16-18.) But, to the extent that IFC was defrauded, Ms. Dziemit, who actually advanced money for goods, is also a victim of that fraud. (Id. at ¶ 18.) Ms. Dziemit was not involved in any plan to defraud IFC. (Id. at ¶¶ 16-18.) Accordingly, Ms. Dziemit now opposes IFC's Motion for Preliminary Injunction and moves to dismiss the claims against her under Fed. R. Civ. P. 9(b) and 12(b)(2) & (6).

## ARGUMENT

**I.    IFC Fails To State A Claim Against Ms. Dziemit**

Under Fed. R. Civ. P. 12(b)(6), this Court must dismiss a complaint where it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Campagna v. Massachsuetts Dept. of Environmental Protection, 334 F.3d 150, 154 (1st Cir. 2003). While the Court must accept a plaintiff's properly pled factual averments in reviewing a motion under Rule 12(b)(6), the plaintiff cannot rely on "subjective characterizations" or "conclusory descriptions of a general scenario." Judge v. City of Lowell, 160 F.3d 67, 77 (1st Cir. 1998), *rev'd on other grounds* 367 F.3d 61.

> **A.    IFC has not alleged that Ms. Dziemit participated in the purported "pattern of racketeering activity"**

To state a RICO Act claim, IFC must allege : "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003), quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Additionally, the "pattern" element above requires a showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Moreover, the courts in this district require a showing, in a RICO case, that to be liable, a specific defendant "must participate in the operation or management of the enterprise itself." Bowdoin Construction Corp. v. Rhode Island Hospital Trust National Bank, N.A., 869 F. Supp. 1004, 1009 (D. Mass. 1994). In this context, participation requires "some part in directing the enterprise's affairs." Id. Even where a lender has knowledge of the fraud, or even the ability to induce those controlling the fraud to take certain steps, that is not enough to support a RICO Act claim. Id. (RICO Act

claims against two defendants that loaned money to those who allegedly engaged in the fraud

must fail, even if those defendants knew of the fraud, because they did not control fraud). <u>See</u>

<u>also</u> <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993)(outside accountants and other professionals

not directing an enterprise's affair are not liable under RICO Act); <u>McNew v. People's Bank of</u>

<u>Ewing</u>, 999 F.2d 540, 1993 WL 243772 (6th Cir. July 6, 1993)(even where defendant lender had

knowledge of purported scheme, it was insufficient for RICO claim to allege only that defendant

dealt with others through financial loan transactions and not participation in fraud scheme; lender

does not violate RICO Act by having a particular customer).

  Further, to state a RICO Act claim, the plaintiff must identify a specific "enterprise," in

other words, a group of individuals associated in fact. <u>United States v. Turkette</u>, 452 U.S. 576,

580 (1981). The RICO Act enterprise must be a "group of persons associated together for a

common purpose of engaging in a course of conduct." <u>Id.</u> The various associates must be

functioning as a continuing unit.[3] <u>Id.</u>

  Here, there are simply no allegations that can be used to infer that Ms. Dziemit worked

together with, or even had knowledge of, the purported criminal enterprise. Instead, all of the

allegations support Ms. Dziemit's lack of liability, as reflected in her Affidavit, that she loaned

monies to Mr. Mitchell and was paid back by Mr. Mitchell directly or via checks that she was

authorized to endorse and deposit. As a lender, her object was to advance funds for the purchase

---

[3] Defendant Ronald Mitchell discusses the law on this point in greater detail in his motion to dismiss filed October 31, 2005. (Docket #95.) For the sake of brevity, Ms. Dziemit will not restate such well-established law that is already in front of the Court. Ms. Dziemit points out that, even under the allegations of the amended complaint, she is even more removed from the purported "enterprise" than Mr. Mitchell. Thus, Ms. Dziemit incorporates those overlapping arguments raised by Mr. Mitchell. Fed. R. Civ. P. 10(c). In opposing Mr. Mitchell's motion, IFC relies on the six factors in <u>Libertad v. Welch</u>, 53 F.3d 428, 441 (1st Cir. 1995) to support a claim that all defendants were engaged in a common "enterprise." (Opp. to Mit. Mot. Dismiss at pp. 8-9.) Yet, each of these six factors in turn require some degree of concerted action among all defendants. Here, Ms. Dziemit did not even know of the existence of the majority of the other defendants. ***Tellingly, IFC itself concedes that in this case there may not have been a single enterprise but instead "three separate associations-in-fact (one involving Defendant Brown, one involving Defendant Mitchell, and one involving CCC International).*** (Opp. to Mit. Mot. Dismiss at p. 11.) Absent from this list is an alleged "association-in-fact" involving Ms. Dziemit.

of *real* goods and to get repaid when those real goods were sold.  As a lender, even if she had

had knowledge of the supposed fraud, which she did *not*, lending does not rise to the requisite

level of participation or control over the enterprise.  Bowdoin, 869 F. Supp. at 1009; People's

Bank of Ewing, *supra*.  This is nothing more than the equivalent of a financing "lockbox"

arrangement that is common in commercial lending.  In such financing lockbox arrangements,

the lender, often a bank, has the authority to receive, endorse, and deposit payments sent to the

debtor business by its customers.  There is nothing sinister about this type of lender-debtor

relationship.  Indeed, it is typically a mechanism to secure the lender's interests as a lender

taking a check in these situations does so free and clear of any outside claims because it is a

holder-in-due-course.[4]

The logic behind this "lockbox rule" is that a party taking a negotiable instrument, a

check, has no duty to scrutinize the circumstances surrounding its taking of this instrument in

exchange for reducing another's debt.  Waltham Citizens National Bank, 353 Mass. 696, 699

(1968); McLaughlin v. Paine Furniture Co., 245 Mass. 377, 382 (1923).[5]  See also St. Paul Fire

and Marine v. Bank of Salem, 412 N.E.2d 103, 111-112 (Ind. App. 1980).[6]  Only *actual*

---

[4] Marine Midland Bank New York v. Graybar Electric Co., Inc., 363 N.E.2d 1139, 1143 (N.Y. 1977)(where a party is authorized to receive a check in a lockbox and deposit it into an account, the party acquires the status of a holder). Waltham National Citizens Bank, 353 Mass. at 741-42 (a holder does not lose its status and rights by acting as a collection agent for the payee or other holder); Long Island National Bank v. Zawada, 312 N.Y.S.2d 947, 947 (A.D.2d 1970)(same).  Both Massachusetts and Connecticut (where the loans were made) have adopted the provisions of the Uniform Commercial Code with respect to lenders and holders of negotiable instruments.  G.L. c. 106, §§ 4-101, *et seq*. (Mass.); C.G.S.A. §§42a-4-101, *et. seq*. (Conn.).

[5] In Waltham Citizens National Bank, the bank taking a check was deemed a holder in due course because it reduced the debt of the person giving up the check.  353 Mass. at 699.  Even though the bank had extensive prior dealings with the person and the person later became insolvent, the bank did not have actual notice of any defense or claim to the check, and the bank was not precluded from being a holder in due course.  Id. at 699.  Likewise, in New Bedford Institution for Savings, the court found that while the bank should have employed better banking practices and deviated from its normal procedures for accepting a negotiable instrument, the bank did not have any actual notice of fraud.  36 Mass. App. Ct. at 653-54.

[6] In St. Paul Fire and Marine, a grain distributor paid a farmer with a check that he altered and gave to his local bank in exchange for satisfaction of promissory.  Id.  The court found that the bank was a holder in due course because it

knowledge of specific defects or defenses will preclude a holder from becoming a holder in due course. See New Bedford Institution for Savings v. Gildroy, 36 Mass. App. Ct. 647, 653-54 (1994). Here, without actual participation or even knowledge of the purported fraud, two things IFC specifically fails to allege under Rule 11 in its amended complaint, Ms. Dziemit, and all other lenders in her position, cannot be held responsible for the purported fraud of others and cannot be required to turn over the monies received.

IFC's theory of the case founders when one recognizes that Ms. Dziemit actually loaned money to Mr. Mitchell. IFC outlines a scam through which products were invoiced but never delivered. No money is needed for such a scheme if no real products are purchased for resale and no products are delivered. The very nature of the fraud scheme outlined by IFC is "money for nothing." It defies logic that Ms. Dziemit would provide capital to an criminal enterprise that did not need capital, and in fact was supposedly set up to avoid needing capital to operate. Once one recognizes that Ms. Dziemit advanced funds to Mitchell/REMCO for the purchase of goods, it becomes clear that, to the extent that any fraud took place, Ms. Dziemit was defrauded as well. Although IFC argues that the "enterprise would be unable to function without [each of] the Defendants" (Opp. to Mitchell Mot. Dismiss at p. 10), in reality, the scheme alleged by IFC does not require the presence a lender such as Ms. Dziemit. Only *real* purchases require a lender.

Finally, even if IFC's amended complaint sufficiently alleges that Ms. Dziemit participated in the purported pattern of racketeering activity, there is no connection between her acts and the damage IFC claims to have suffered. There must be a causal link between violations of the RICO Act and the alleged harm. Miranda v. Ponce Federal Park, 948 F.2d 41, 48-49 (1st Cir. 1991). In reality, IFC is accusing Ms. Dziemit of participating not in the actual theft of the

---

did not have notice of the mistake or notice of problems with the check at the time it took the check for value. Id. at 109. The bank had no duty to scrutinize the details surrounding its taking of the check. Id

funds, but in the use of the funds after the fact. The only allegations about her concern her depositing supposed ill-gotten monies into an account. Even assuming this to be true, her acts cannot be viewed as the cause of the harm suffered by IFC, which harm was allegedly caused by the theft perpetrated by other defendants. This is insufficient to support a RICO Act claim against Ms. Dziemit. See generally 18 U.S.C. § 1962(a) (defendant can only be liable for money laundering if the plaintiff alleges it was actually injured by reason of the defendants' investment of the proceeds of the racketeering activity); Miranda, 948 F.2d at 48-49 (even where there is an allegation of money laundering, nothing would be gained by the plaintiff unless it could establish that its harm was a direct result of the money laundering).

### B.    IFC's state-law claims must fail

IFC's state common law claims against Ms. Dziemit also fail as a matter of law.[7] IFC has not included any well-pled allegations that Ms. Dziemit either participated in the purported fraud[8] or actually conspired with other defendants to do so.[9] Further, Ms. Dziemit, as the lender

---

[7] IFC's conclusory allegation of personal jurisdiction under G.L. c. 233A, § 3, without substantiating evidence, is insufficient to overcome Ms. Dziemit's well-grounded challenge to personal jurisdiction. See, e.g., Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 2 (1979); Buckeye Assoc., Ltd. v. Fila Sports, Inc., 616 F. Supp. 1484, 1492 (D. Mass. 1985) (holding "conclusory allegations" that plaintiffs "committed tortious acts in" the jurisdiction were insufficient to sustain jurisdiction under Massachusetts long-arm statute and constitutional test), rev'd on other grounds by Amtrol, Inc. v. Vent-Rite Valve Corp., 646 F. Supp. 1168 (D. Mass. 1986). To satisfy its burden, plaintiff must show both: (1) the assertion of jurisdiction is authorized under the Massachusetts long-arm statute; and (2) if authorized, the exercise of jurisdiction is consistent with basic due process requirements mandated by the United States Constitution. See, e.g., Good Hope Industries, Inc., 378 Mass. at 5-6. Here, IFC bases its allegation of personal jurisdiction over Ms. Dziemit solely on her alleged participation in the purported fraudulent enterprise.

[8] To bring a claim for fraud or misrepresentation, a plaintiff must demonstrate that the defendant made a false representation of a material fact with actual or constructive knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, which the plaintiff did rely as true and acted on to his damage. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982). There is no allegation that Ms. Dziemit made any representations to IFC (and Ms. Dziemit has never made any representations to IFC). Rather, Ms. Dziemit received representations from IFC (its purchase orders). If anyone has a claim for misrepresentation, it is Ms. Dziemit who has a claim against IFC.

[9] Kurker v. Hill, 44 Mass. App. Ct. 184, 188-89 (1998)(holding that Massachusetts provides two ways to find civil conspiracy: the first one requires coercion, and the other depends on proof of underlying tortious acts in which two or more persons acted in concert and in furtherance of a common design or agreement); Stock v. Fife, 13 Mass. App. Ct. 75, 82 n. 10 (1982)( "The doctrine [of civil conspiracy] appears to be reserved for application to facts which

and eventual holder-in-due-course of the disputed checks, took those several checks free and clear of any claims or defenses, including conversion.[10]  Additionally, because there is no allegation that Ms. Dziemit engaged in a ***commercial transaction in Massachusetts with IFC***, IFC's G.L. c. 93A claim must fail.  G.L. c. 93, §§ 2, 11; Kuwaiti Danish Computer Co. v. Digital Equipment Corporation, 438 Mass. 459, 475 (2003).

### C.    IFC's claims are barred by the statute of limitations

IFC alleges that the defendants, including Ms. Dziemit, engaged in a pattern of racketeering activity "over at least the past eight years."  (Am. Compl. at ¶ 1.)  The mandate from the Supreme Court is clear.  The four-year statute of limitations with respect to RICO Act claims begins to run upon the first injury to the plaintiff, and not after the development of, and the plaintiff's discovery of, the overall pattern of activity.  Rotella v. Wood, 528 U.S. 549, 558-59 (2000); Rodriguez v. Banco Central, 917 F.2d 664, 666 (1st Cir. 1990).  While the Supreme Court has permitted the application of the so-called "discovery rule," which allows the limitation period to begin to run at the time the plaintiff knew or should have known of the injury, it has said that a RICO Act plaintiff is in no different position to investigate potential claims than are other tort plaintiffs.  Rotella, 528 U.S. at 556-57.  Under the discovery rule, a potential plaintiff has an obligation to investigate and discover its injuries without delay.

Presumably, IFC will argue that it had no way to discover the purported racketeering activity until 2005, when Mr. Adler took over Mr. Adams' division and stumbled across some irregularities.  (Adler Aff. at ¶¶ 2, 3.)  Yet, several years earlier, at least with respect to

---

manifest a common plan to commit a tortious act where the participant knew of the plan and its purpose and took affirmative steps to encourage the achievement of the result").

[10] In bringing a claim for conversion, a plaintiff need allege that a defendant "exercised acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ."  Abington Natl. Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985).

Mitchell's sales, the only sales to which IFC connects Ms. Dziemit, Mr. Adler was directly involved with these purchases and the inspection of delivered products. (Dziemit Aff. at ¶¶ 16, 17, Ex. A.) Logically, the person directly responsible for making purchase orders is a better position to discover the alleged fraud than is the person reviewing purchases after-the-fact. At the very least, the fact that Mr. Adler and IFC could not discover the purported scheme until many years after it began, is plain evidence that Ms. Dziemit, as a lender, had no reason to suspect that anything improper was going on. IFC should not be able to claim that it did not, or could not, have discovered its injuries at any earlier point in time. It was IFC, and not Ms. Dziemit, that had the obligation to make sure IFC's inventory was correct and that its own employees properly (and not illegally) were performing their duties.

## II.    IFC Has Not Pled Its Fraud, RICO Act And Other Claims Against Ms. Dziemit With The Requisite Degree Of Specificity

Over a century ago, Chief Justice Holmes wrote that, "[a] charge of fraud is regarded as something more serious than a rhetorical embellishment, and if a man puts his case on that ground, he must maintain it on that ground or lose it." Nichols v. Rosenfeld, 181 Mass. 525 (1902). Today, it remains well-settled, within both the Massachusetts courts and the federal courts in this Circuit, that the circumstances underlying allegations of fraud must be pled with particularity, including the specification of the time, place and content of any alleged false representation. Fed. R. Civ. P. 9(b); Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985); Friedman v. Jablonski, 371 Mass. 482, 488-89 (1976); Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 48 (1991). "*[T]he plaintiff may not delay setting out facts to support his claim pending discovery, but must detail them in the complaint or face dismissal.*" Alton v. Prudential-Bache Securities, Inc. 753 F. Supp. 39, 42 (D. Mass. 1990)(quoting Shamsi v. Dean Witter Reynolds, Inc., 743 F. Supp. 87, 90 (D. Mass. 1989). The First Circuit has been

"especially rigorous" in demanding such detailed factual support.  Greebel v. FTP Software, Inc., 194 F.3d 185, 193-94 (1st Cir. 1999).

The purpose of the particularity requirement "is to (1) place the defendant on notice and enable him or her 'to prepare a *meaningful defense* to fraud; (2) to prevent the use of *conclusory allegations* of fraud as a basis for strike suits and fishing expeditions; and (3) to protect defendants from *groundless charges which tend to damage their reputations*.'"  Alton v. Prudential-Bache Sec., Inc., 753 F. Supp. at 42 (quoting Shamsi, 743 F. Supp. at 90)(emphasis added).  "[I]t is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself *on record* as to what the alleged fraud consists of *specifically*."  Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2nd Cir. 1982)(emphasis added).  "In other words, '[i]n cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action.'"  Hayduk, 775 F.2d at 443 (quoting Lopez v. Bulova Watch Co., Inc., 582 F. Supp. 755, 766 (D.R.I. 1984)).  An "oblique remark" suggesting fraud is simply not sufficient.  Charbonnier v. Amico, 367 Mass. 146, 152 (1975).

This principle extends to each party who must defend a charge of misrepresentation or fraud.  "Where multiple defendants are involved, each person's role in the alleged fraud must be particularized."  Loan v. Federal Deposit Ins. Corp., 717 F. Supp. 964, 968 (D. Mass. 1989).  See also Margaret Hall Found., Inc. v. Atlantic Financial Management, Inc., 572 F. Supp. 1475, 1481 (D. Mass. 1983).  Plaintiff must "inform *each individual defendant* of what role [it] is alleged to have played in the fraud."  Konstantinakos v. FDIC, 719 F. Supp. 35, 38 (D. Mass. 1989)(emphasis added).

Dismissal under Rule 9(b) is appropriate in RICO Act cases.  <u>See</u> <u>New England Data Services, Inc. v. Becher</u>, 829 F.2d 286, 288-90 (1st Cir. 1987); <u>Feinstein v. Resolution Trust Corp.</u>, 942 F.2d 34, 44 (1st Cir. 1991); <u>Miranda v. Ponce Federal Park</u>, 948 F.2d at 44.  In fact, the above requirement is "particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim."  <u>See</u> <u>Kates v. Mzzocone</u>, 1995 WL 44531 (E.D. Pa. 1995), <u>citing</u> <u>Alfaro v. E.F. Hutton & Co.</u>, 606 F. Supp. 1100, 1118 (E.D. Pa. 1985) and <u>O'Brien v. National Property Analysts Partners</u>, 719 F. Supp. 222, 230 (S.D.N.Y. 1989) ("all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions").

> [I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants. ***Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly***; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees.  For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.

<u>Miranda</u>, 948 F.2d at 44.

Here, IFC has failed to put Ms. Dziemit on notice of the basis of the fraud and RICO Act claims brought against her.  IFC makes only broad-brush, unsubstantiated statements that Ms. Dziemit must have been part of the fraud enterprise solely by way of endorsing and depositing the few checks.  But IFC does not provide any specific allegations detailing her relationship to the other defendants or the enterprise itself.  Given the serious nature of the charges brought against Ms. Dziemit, IFC cannot bring those claims without giving her specific notice as to their basis.  IFC's allegations of fraud, conspiracy, RICO Act violation, and related claims have not

been sufficiently pled and should be dismissed for that reason.  As noted in <u>Miranda</u>, the mere fact that Ms. Dziemit is accused of racketeering constitutes irreparable damage to her reputation.

**III.    To The Extent Any Of IFC's Claims Survive, They Cannot Support A Request For Prejudgment Security By Way Of Preliminary Injunction**

To be entitled to preliminary injunctive relief, the moving party must demonstrate (1) the likelihood of success on the merits; (2) that they will suffer immediate irreparable harm if the order is not granted; (3) that any injury they might suffer outweighs any harm the order will cause the non-moving party to suffer; and (4) that the public interest will not be adversely affected by the order.  <u>Ocean Spray Cranberries, Inc. v. Pepsico, Inc.</u>, 160 F.3d 58, 61 (1st Cir. 1998); <u>Quincy Cablesystems, Inc. v. Sully's Bar, Inc.</u>, 640 F. Supp. 1159, 1160 (D. Mass. 1986).[11]

**A.    IFC Will Not Likely Succeed On the Merits Of Its Claims Against Ms. Dziemit**

IFC's claims fail as a matter of law and dismissal is appropriate.  However, even assuming that IFC's claims survive a motion to dismiss, for the same reasons stated above, the allegations supporting these claims are hardly strong enough to demonstrate a likelihood of success on the merits.  IFC cannot be allowed to obtain extraordinary relief based solely on the generalized allegation that Ms. Dziemit somehow, somewhere, through some means, and with some other persons must have engaged in a scheme to defraud it.

**B.    IFC Has Not Alleged Any Irreparable Harm and the Balance of Harm Favors Ms. Dziemit**

---

[11] Ms. Dziemit notes that IFC has submitted only a three-page, twelve-paragraph Motion for Preliminary Injunction that does not address the prerequisites for Rule 65 relief, either individually or as a whole.  IFC has also not submitted any memorandum of law setting forth the specific reasons it believes it is entitled to such extreme relief.

Much like it fails to allege facts that can support a claim against Ms. Dziemit, IFC fails to allege that it will suffer irreparable harm absent an injunction against Ms. Dziemit.  Just as there is no evidence, let alone any sufficient allegations, that Ms. Dziemit engaged in any past fraudulent or conspiratorial activity, there is no evidence or suspicion that she continues to do so or will take any improper steps to hinder IFC's ability to recover its damages in the very unlikely event that it prevails against her.

To the contrary, IFC seeks to impose a very heavy burden on Ms. Dziemit and her family.  IFC seeks to tie up assets and encumber real property, something that will have an adverse impact on her family's personal finances and will essentially shut down her business. Ms. Dziemit is in the business of making mortgage loans, and without the ability freely to access her own assets, she will be unable to continue this line of work.  Moreover, the result of any prejudgment security against Ms. Dziemit will further the stigma associated with the baseless RICO Act claims IFC has brought against her.  Miranda, *supra*.

### C.    This Court Lacks Jurisdiction To Grant Prejudgment Security By Way Of Attachment Or Trustee Process Outside Of Massachusetts

IFC bases its request for a preliminary injunction, by way of attachment and trustee process, solely under Fed. R. Civ. P. 65.  However, Rule 65 does not confer authority on the federal courts to grant prejudgment relief by way of an injunction freezing assets or ordering persons to refrain from acting.  Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999).  In Grupo Mexicano, the Court explained that the equity powers granted to the federal courts are limited to those powers traditionally afforded to the English Courts of Chancery, which powers do not include the right to attach property or freeze assets prior to a judgment.  Id.  Rule 65 simply incorporates those traditional equitable powers as they pertain to injunctive relief.  Id.

Given this limitation, the authority of the federal courts to grant prejudgment security can arise in only three circumstances.  First, the federal court can allow prejudgment security as would a state court applying state law.  Fed. R. Civ. P. 64.  Second, a federal court can order prejudgment relief in accordance with specific statutory authority to do so. Grupo Mexicano, 527 U.S. at 333.  Third, a federal court, as well as a state court sitting in equity, can secure assets and maintain the *status quo* where those specific assets are the subject of the dispute before it.[12] Deckert v. Independence Shares Corp., 311 U.S. 282 (1940).  See also United States v. Oncology Associated, Inc., 198 F.3d 489, 495-97 (4th Cir. 1999).

1.    The RICO Act does not provide statutory authority for the requested prejudgment security

The language of the RICO Act does provide authority for some limited form of injunctive relief to enjoin ongoing acts of racketeering.  18 U.S.C. § 1964.  However, such language does not allow a federal court to order ***prejudgment security*** to secure assets in advance of a judgment for monetary damages in a private civil RICO case for past acts.  First National Bank and Trust Co., Rogers Arkansas v. A.L. Hollingsworth, 701 F. Supp. 701 (W.D. Ark. 1988); DeMent v. Abbott Capital Corp., 589 F. Supp. 1378 (N.D. Ill. 1984).

In DeMent, the court discussed the legislative history of the RICO Act in concluding that Congress did not intend to include a private right of prejudgment security via injunctive relief. DeMent, 589 F. Supp. at 1382-83.  Had Congress intended such a private right, "it surely would have avoided language that had previously [in the original Sherman Act] that had previously been held by the Supreme Court not to permit such relief."  Id.  Moreover, the DeMent court

---

[12] Here, the claims brought against Ms. Dziemit are for RICO violations (Count I), conspiracy to violate RICO (Count II), conversion (Count III), violations of G.L. c. 93A (Count IV), and fraud (Count V).  In connection with these claims, Plaintiff requests compensatory damages.  (Prayer h.)  Plaintiff is not asserting an equitable claim against the specific property of Ms. Dziemit that it seeks to attach.  Therefore, this Court does not have any general powers of equity to grant the requested prejudgment security by ordering such attachments.

cites to the Congressional Record where such a private right to injunctive relief was "turned

away on the floor of the House." Id. at 1383. Likewise, in First National, the court looked to the

legislative history and several other cases that touched on this issue. 701 F. Supp. at 702-03. It

also concluded that it had no authority under RICO to grant prejudgment relief by freezing assets

by way of a writ of attachment. Id.[13] It is for this reason that when this Court is faced with a

request for prejudgment security in a RICO Act case, it should apply the appropriate

Massachusetts law as incorporated through Fed. R. Civ. P. 64. See Digital Equipment Corp. v.

Currie Enterprises, 142 F.R.D. 16, 20 (D. Mass. 1992), *questioned on other grounds* 370 F.3d

151.

        2.     Massachusetts law limits prejudgment security to the attachment of
              property within Massachusetts

The Massachusetts courts simply lack jurisdiction to reach property located outside

Massachusetts by attachment or trustee process. Stephens v. Walker, 743 F. Supp. 670, 674

(W.D. Ark. 1990);[14] Cox v. Central Vt. R.R. Co., 187 Mass. 596, 609 (1905); see also Shapiro et

al., 48 Mass. Practice: Collection Law, § 5.18 (2000). This jurisdictional limitation is recognized

in the very statutes providing for these forms of prejudgment relief. See, e.g., G.L. c. 246, § 1

("[a]n individual who is not an inhabitant of the commonwealth, or a foreign corporation or

association, shall not be so summoned unless he or it has a usual place of business in the

commonwealth"). This limitation must apply to federal courts sitting in Massachusetts and

applying the statutes of this state. Fed. R. Civ. P. 64; Warner Co. v. Brann & Stuart Co., 198 F.

---

[13] 18 U.S.C. 1964 was amended in 1995 by the Private Securities Litigation Reform Act, which inserted language relevant in the securities context to subsection (c). The text of section 1964 that was relied on in First National and DeMent has not been amended.

[14] In Walker, a federal court in Arkansas ruled that an attachment issued by a federal court in Massachusetts could not apply to real property in Arkansas for several reasons based on the language of Mass. R. Civ. P. 4.1 and G.L. c. 223, § 20. 743 F. Supp. at 673. The court also acknowledged that even if an attachment of out-of-state property could be issued, there would be an issue about the enforcement or formal recognition of the attachment. Id. at p. 675-77.

Supp. 634, 635-36 (D. Pa. 1961)(counterclaimant's foreign attachment not permitted by state law and, under Rule 64, attachment was not permitted by federal court).  See also Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 33 (1st Cir. 2005)("on the merits, trustee process may be barred here if [Trustee] has no connection with Massachusetts"); Hasbro, Inv. v. Serafino, 958 F. Supp. 19, 22-23 (D. Mass. 1997)(limiting from attachment "personal and real property owned . . . . outside Massachusetts, as to which attachment procedures would be ineffective").

> 3.    IFC Cannot Avail Itself Of Massachusetts Trustee Process or Reach and Apply Attachment Against Ms. Dziemit Because She Owes No Liquidated Amount By Contract to IFC

Trustee process is a form of prejudgment relief that is limited to use in situations where the defendant unconditionally owes the plaintiff money and has no valid defense for non-payment.  See Mass. R. Civ. P. 4.2 and G.L. c. 246.  This form of prejudgment relief is appropriate in an action on a judgment or for money due under a contract.  Id.  Similarly, an attachment by the statutory reach and apply attachment requires that the underlying suit be one on a debt and not a mere claim for unliquidated damages.  G.L. c. 214, § 3(6); cf., Garsoon v. American Diesel Engine Corp., 310 Mass. 618, 568 (1942)(discussing term "debt" in reach and apply statute includes only debts as distinguished from mere claims for damages).  Here, however, the claims against Ms. Dziemit are based on various fraud allegations and there is no assertion that Ms. Dziemit had any contractual or other relationship with IFC.  There is no certain liquidated amount of damages asserted against Ms. Dziemit.  Therefore, IFC cannot pursue trustee process or a reach and apply attachment against Ms. Dziemit.

## CONCLUSION

For all of the above reasons, Ms. Dziemit respectfully requests that this Court (1) deny

IFC's Motion for Preliminary Injunction and (2) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(2),

(6), dismiss all of the claims asserted by IFC against her.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Defendant Jane Dziemit hereby requests that this Court hold

oral argument on her Motion to Dismiss and on Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,

JANE DZIEMIT

By her attorneys,

s/Matthew C. Welnicki/

_____
Richard J. Yurko (BBO#538300)
Matthew C. Welnicki (BBO#647104)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108
(617) 723-6900

Dated:  December 29, 2005