UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

_____
                                                    )
INTERNATIONAL FLOOR CRAFTS, INC.                    )
            Plaintiff,                              )
                                                    ) Civil Action No. 05-11654-NMG
v.                                                  )
                                                    )
DAVID W. ADAMS, *et al*,                            )
            Defendants.                             )
_____)

**PLAINTIFF INTERNATIONAL FLOOR CRAFTS, INC.'S MEMORANDUM IN
OPPOSITION TO DEFENDANT JANE DZIEMIT'S MOTION TO DISMISS**

Plaintiff International Floor Crafts, Inc. ("IFC") hereby opposes Defendant Jane

Dziemit's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(2) and 9(b), where

IFC's Amended Complaint states a proper claim for relief and satisfies the specificity

requirements for Racketeer-Influenced and Corrupt Organizations Act ("RICO") claims and

fraud claims, and where this Court has personal jurisdiction over Defendant Dziemit.

On December 29, 2005, Defendant Dziemit filed a "Combined Memorandum of Law of

Jane Dziemit (1) In Opposition to Plaintiff's Motion for Preliminary Injunction and (2) in

Support of Her Motion to Dismiss (hereinafter, the "Combined Memorandum"). The Combined

Memorandum relies upon an Affidavit of Jane Dziemit which was filed on that same date. That

Dziemit Affidavit recites new alleged facts not found in the Amended Complaint and which, IFC

contends, are not appropriate for consideration in the context of a motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(6) and 9(b). On January 20, 2006, IFC filed a motion to exclude the Dziemit

Affidavit from consideration in ruling upon the motion to dismiss, or, in the alternative, a motion

to extend time for IFC to respond to the Motion for ninety days for purposes of taking discovery

pursuant to Fed.R.Civ.P. 56(f) (hereinafter, the "Motion to Exclude").  The Motion to Exclude remains pending.

<div align="center">**FACTS**</div>

In the Combined Memorandum, Dziemit fails to include a recitation of facts in the light most favorable to IFC.  IFC sets forth the pertinent facts below:

IFC is engaged in the business of selling discounted merchandise to the public through fifteen retail stores located in Massachusetts, Rhode Island and New Hampshire.  (Amended Complaint, ("AC"), ¶24).  In a nearly twenty page fact pattern, the Amended Complaint recites, with specificity, the details of a criminal enterprise in which the organization, which included, without limitation, Defendant Dziemit, bilked IFC out of millions of dollars over a period of approximately eight years by means of falsified documents, illusory companies and non-existent merchandise. (*See* AC, ¶¶ 1 – 64).  The Defendants in this action, include, without limitation, various present and former IFC employees and representatives (like Defendant Dziemit) of mainly non-existent companies who conspired to defraud IFC.  (AC, ¶1).

In the normal course of business, IFC employs various buyers who work with manufacturer representatives, such as Mitchell of various supplying companies in order to locate and to purchase merchandise, and then the buyer places an order with the supplying company. (*See* AC, ¶25).  The supplying company then ships the merchandise to IFC.  (*See* AC, ¶25).  A warehouse receiver, employed by IFC, then verifies that the merchandise received by IFC meets the order.  (*See* AC, ¶25).  The manufacturer representative then forwards an invoice from the supplying company to buyer.  (*See* AC, ¶25).  The buyer then verifies that the invoice meets the request for merchandise, and, if so, the buyer approves the invoice and forwards it to the Accounts Payable Department at IFC.  (*See* AC, ¶25).  At or around the same time, the

warehouse receiver prepares and forwards the receiving documents (also known as "Key Reqs")

to the Accounts Payable Department.  (*See* AC, ¶25).  The Accounts Payable Department

matches the invoice to the receiving documents and then pays the invoice; such payments are

forwarded to, without limitation, Defendant Dziemit.  (*See* AC, ¶¶25, 40).

The Amended Complaint paints a detailed picture of an ongoing criminal enterprise. (*See*

AC, ¶ 40).  At all times relevant, Defendant Williams served as a receiver on behalf of IFC for

the fictitious shipments at issue.  (AC, ¶37).  At different times, Defendants Adams and Britto

served as buyers at IFC.  (*See* AC, ¶40).  Defendants Brown, Mitchell, the Suns, and Dziemit, in

turn, also played roles in the enterprise.  (*See* AC, ¶ 40).  Defendant Mitchell served as the

manufacturer's representative for non-existent companies Mansfield Rug and Remco, and

Dziemit would receive, indorse and deposit payments to Remco.  (AC, ¶¶9, 11, 40).

The enterprise operated as follows:

> [O]ver the past eight to ten years, Buyers Britto and Adams colluded with
> manufacturer representatives Brown, Mitchell and the Suns to create a criminal
> enterprise in which Brown, Mitchell and the Suns created false invoices for non-
> existent shipments of merchandise from one of the fictitious companies and/or
> CCC International[1] to IFC.  Under the criminal enterprise, Defendants Britto or
> Adams would create purchase orders.  Defendant Williams or Defendant Britto
> would then generate fabricated Key Reqs [shipping documents] in which he
> falsely confirmed that IFC had received the non-existent merchandise, and he
> would then forward the Key Reqs to Accounts Payable for payment.  Accounts
> Payable would then make payments to various individuals and/or entities,
> including, without limitation, Mansfield Rug, CCC International, Remco, Empire
> Weavers, and Accounts Payable would forward these payments to various
> addresses, including, without limitation, addresses for the following individuals,
> Jane Dziemit (for Remco) …

(AC, ¶ 40).

In the Amended Complaint, IFC alleges that it paid approximately 4.47 million dollars to

cover invoices for non-existent merchandise "purchased" from the four non-existent companies,

---

[1] Chinese Carpet Center, Inc. d/b/a CCC International (hereinafter, "CCC International").

including, without limitation, Mansfield Rug and Remco.  (AC, ¶62).  IFC received invoices from Mansfield Rug from 1999 through 2005 in the amount of approximately $980,000.00, and it received invoices totaling approximately $2.3 million from 1999 to 2005 from Remco, which, again, does not exist.  (AC, ¶62).

In an effort to elucidate the criminal enterprise, IFC included a representative sample of the course of the Defendants' fraudulent conduct concerning each of the fictitious companies and CCC International in the Amended Complaint. (AC, ¶¶41-61).  The sample pertaining to Remco, with whom Dziemit is alleged to have been associated, is summarized below:

On or about October, 2002, IFC, through Defendant Adams, sent a $38,500 purchase order to Remco through its manufacturer's representative, Defendant Mitchell.  (*See* AC, ¶ 42).  Remco, in turn, issued an invoice referencing that purchase order for $38,500.  (*See* AC, ¶43).  Defendant Williams then signed a receiving document ("Key-Req") falsely indicating that IFC received the merchandise.  (*See* AC, ¶ 44).  About two weeks after IFC sent out the initial purchase order to Remco, IFC issued a check in the amount of $38,500.00 paid to the order of Remco, which was subsequently deposited.  (*See* AC, ¶ 45).  On at least four occasions, Dziemit indorsed a check on behalf of Remco, the funds from which were deposited into a Bank of Boston bank account.  (*See* AC, ¶11).

The Amended Complaint further alleges that, for the past several years, Defendant Williams has maintained almost daily contact with Defendant Adams and Defendant Britto from both inside and outside of IFC, by telephone and facsimile.  (AC, ¶38).

> Upon information and belief, at all times relevant, all of the Defendants have maintained a common communication network for sharing information on a regular basis. Where necessary, upon information and belief, one or more of the Defendants have held meetings, in person and/or by telephone, to discuss their criminal enterprise.  Upon information and belief, the Defendants have (a) knowingly placed in or caused to be placed in the U.S. mail various letters to

accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various letters from other members of the criminal enterprise (b) knowingly sent or caused to be sent various emails and/or facsimiles to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received various emails and/or facsimiles, from other members of the criminal enterprise, and (c) knowingly made or caused to be made various telephone calls to accomplish the embezzlement of IFC funds and, directly or indirectly, and through agents or employees, received telephone calls from other members of the criminal enterprise, all in furtherance of the criminal enterprise.

(AC, ¶38).

In or around April, 2005, IFC discovered this pattern of fraud when a new buyer at IFC, Adams' replacement, reported that he could not locate certain inventory.  (*See* AC, ¶ 27). Among other invoices, the new buyer was unable to confirm receipt of merchandise allegedly purchased by IFC from Mansfield Rug dated March 25, 2005 in the amount of $25,054.77, and, at that time, IFC requested proof of delivery (a bill of lading) from Defendant Mitchell, the manufacturer's representative for Mansfield Rug.  (*See* AC, ¶ 28).  On April 20, 2005, Mitchell forwarded to IFC a light copy of bill of lading signed by Defendant Williams listing Regional Trucking as the trucking company which had purportedly delivered the merchandise to IFC. (*See* AC, ¶ 29).  On or about April 20, 2005, the new buyer contacted Regional Express LLC d/b/a Regional Trucking regarding the Bill of Lading.  (*See* AC, ¶ 29).  On April 27, 2005, a representative of Regional Trucking informed the new buyer that Regional Trucking did not pick up the merchandise referred to in the March 25, 2005 invoice.  (*See* AC, ¶ 29).

At that point, IFC launched an internal investigation into merchandise which Defendant Adams had ordered for IFC, and IFC asked Defendant Mitchell to provide bills of lading showing the shipment of merchandise from Mansfield Rug and Remco to IFC.  (*See* AC, ¶ 31 – 32).  Despite having arranged for hundreds of shipments to IFC, Mitchell was only able to produce a single bill of lading – the one referred to above which was found to be fabricated.  (*See*

AC, ¶ 32). Defendant Mitchell later told IFC that the bills of lading had been inadvertently shredded a week before IFC made the request for the bills of lading. (*See* AC, ¶ 32).

In January, 2005, during the course of the investigation, IFC examined its warehouse inventory. (AC, ¶35). According to paperwork prepared by Defendants Williams and Adams, the IFC warehouse in New Bedford had supposedly received a total of approximately $500,000.00 worth of carpet and rugs from CCC International and Empire Weavers during December, 2004 and January, 2005. (AC, ¶35). Upon information and belief, Defendant Adams directed all of the fictitious shipments from all of the fictitious companies and from CCC International during January, 2005 to the New Bedford warehouse. (AC, ¶35). Nonetheless, the January, 2005 inventory, revealed that there were no carpet or rugs at that New Bedford Warehouse from any of the fictitious companies or from CCC International. (AC, ¶35).

Over the past eight to ten years, the dollar amount of the individual fraudulent invoices from the enterprise increased into the tens of thousands of dollars. (AC, ¶64). While IFC continues its investigation, the estimated total payments made by IFC to the fictitious companies and to CCC International for fraudulent invoices stands in the millions of dollars. (AC, ¶64).

## ARGUMENT

### I.    THE STANDARD OF REVIEW

The Court may only dismiss a Complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Albright*, 2004 WL 1240900 at *2, quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984). When examining a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this Court must accept all of the allegations of the Complaint as true and must draw all reasonable inferences in favor of the plaintiff -- here, IFC. *Albright v. Morton*, 2004 WL 1240900, at *2 (D.Mass. 2004) citing

*Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir.1994).  Instead of taking the facts in such

a light, Defendant Dziemit erroneously relies upon her own affidavit in the Combined

Memorandum.  Generally, Fed. R. Civ. P. 12(b) forbids consideration of documents outside the

pleadings, such as the Dziemit Affidavit, unless the proceeding is converted to a Fed. R. Civ. P.

56 motion for summary judgment.  *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody

& Co.*, 993 F.2d 269, 272-273 (1st Cir. 1993).[2]   For purposes of the motion to dismiss based

upon Rule 12(b)(6), therefore, this Court must ignore the Dziemit Affidavit[3], and the legal

arguments put forward by Dziemit which rely thereon.  When one examines the facts alleged in

the Amended Complaint in the light most favorable to IFC, the sole conclusion which emerges is

that a denial of the motion to dismiss is warranted.

## II.    A DISMISSAL OF COUNT I (RICO)  AND COUNT II (RICO CONSPIRACY) IS NOT WARRANTED WHERE IFC HAS SUFFICIENTLY PLEADED DEFENDANT DZIEMIT'S PARTICIPATION IN A PATTERN OF RACKETEERING ACTIVITY AND AN ENTERPRISE.

In Count I of the Amended Complaint, IFC alleges that the various Defendants,

including, without limitation, Dziemit, participated in an illegal enterprise for the common

purpose of embezzling substantial sums of money from IFC from 1997 to and including 2005.

(See e.g., AC, ¶66).  In Count II of the Amended Complaint, IFC alleges a RICO conspiracy

count against all Defendants.  On pages 7 through 11 of the Combined Memorandum, Dziemit

---

[2] Despite this maxim, there are narrow classes of documents which "merge" into the pleadings, i.e., "documents the authenticity of which are not disputed by the parties; … official public records; … documents central to plaintiffs' claim; or … documents sufficiently referred to in the complaint."  *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001), *quoting Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). Dziemit's Affidavit does not fall into any of these classes of documents.

[3] As discussed below, in footnote 7 on page 11 of the Combined Memorandum, Dziemit seeks a dismissal for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).  That motion, unlike a 12(b)(6) motion, may be supported by affidavits.  *Cruickshank v. Clean Seas Co.*, 402 F.Supp.2d 328, 331 (D.Mass. 2005).  The Dziemit Affidavit, however, does not directly address issues of personal jurisdiction, and Dziemit does not even cite to her affidavit in that portion of her argument.

suggests that IFC's Amended Complaint fails to allege an enterprise and fails to allege that Dziemit participated in a pattern of racketeering activity.

### a.    IFC Has Properly Alleged That Defendant Dziemit Participated in a Pattern of Racketeering Activity.

On page 7 of the Combined Memorandum, Defendant Dziemit argues that IFC has not alleged a "pattern" of related racketeering activity.  To state a RICO claim under 18 U.S.C. §1962(c), "a plaintiff must allege each of the four elements required by the statute:  1) conduct; 2) of an enterprise;  3) through a pattern;  4) of racketeering activity." *Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir. 1995).  The "pattern" element requires a showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Racketeering predicates are "related" when "[c]riminal conduct … embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*, at 240, *quoting* 18 U.S.C. § 3575(e).  In the case at bar, IFC alleges that the Defendants, including Dziemit, united for the common purpose of systematically and surreptiously embezzling substantial sums of money from, and otherwise defrauding, IFC from at least 1997 to and including 2005, (AC, ¶66), and alleges a series of criminal acts that share a common method.  (*See* AC, ¶¶40, 42-61). The "threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*, at 242.

In the case at bar, IFC alleges that the Defendants' elaborate scheme was repeated over the course of several years constituting the enterprise's regular way of doing business.  (*See* AC, ¶¶ 40,66).  IFC made payments to various individuals involved in the scheme, including, without limitation, Jane Dziemit (for Remco).  (*See* AC, ¶40).  On at least four occasions, Dziemit

indorsed a check on behalf of Remco, a fictitious company.  (*See* AC, ¶11).  While the
Defendants embezzled sums of money in the range of tens of thousands of dollars at a time, the
total amount stolen amounted to millions of dollars.  (*See* AC, ¶¶ 45,49,53,57,61,62-64).

### b.      IFC Has Properly Alleged an Enterprise.

On page 8 of the Combined Memorandum, Dziemit argues that IFC has failed to allege a
RICO "enterprise."  IFC incorporates by reference the legal argument with regard to this issue set
forth on pages 7 through 14 of IFC's memorandum in opposition to Defendant Ronald Mitchell's
motion to dismiss, which remains pending.

> Pursuant to 18 U.S.C. §1962(c),
>
> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

The definition of a RICO "enterprise" includes "any union or group of individuals associated in
fact."  *United States v. Turkette*, 452 U.S. 576, 580 (1981); *see also  Libertad v. Welch*, 53 F.3d
428, 441 (1st Cir. 1995) (Court finds sufficient evidence of "enterprise" as to some Defendants).
"[A] RICO conspiracy [under §1962(d)] does not demand total fusion or that all defendants
participate in all racketeering acts, know of the entire conspiratorial sweep, or be acquainted with
all other defendants."  *Libertad*, 53 F.3d, at 445, quoting *United States v. Boylan, et al.*, 898 F.2d
230, 242 (1st Cir.), *cert. denied*, 498 U.S. 849 (1990).  IFC must simply show "the existence of
the enterprise, *of which* the [Defendants] were a part."  *Libertad*, 53 F.3d at 442 (emphasis in
original). "An enterprise is 'operated' not just by upper management by also by lower-rung
participants in the enterprise who are under the direction of upper management." *In re*

*Pharmaceutical Industry Average Wholesale Price Litigation ("Pharm II")*[4], 307 F.Supp.2d 196,

206 (D.Mass. 2004)(Saris, J.) (Held:  certain defendants were participating in enterprise).

 Here, Defendant Dziemit played an active role in the scheme, helping to defraud IFC out

of significant sums of money.  *United States v. Shifman*, 124 F.3d 31, 36 (1st Cir. 1997)(Debtor

who referred persons to loan shark in exchange for benefits participated in loan sharking

enterprise).  Dziemit was responsible for, among other things, processing the ill-gotten gains.  In

*Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546* (1st Cir. 1994), the First Circuit found that

defendants who, with others, processed fraudulent insurance claims, exerted the requisite control

for RICO liability:

> [Defendants] caused the Aetna appraisers to approve false claims and conduct
> their appraisals in a manner contrary to Aetna's business practices and caused
> Aetna to pay out large sums of money on false claims.  The evidence was
> sufficient to support a finding that [defendants] exerted control over the
> enterprise, if not by bribery .... then at least by other methods of inducement.

*In re Pharmaceutical Industry Average Wholesale Price Litigation ("Pharm I")*, 263 F. Supp. 2d

172, 186 (D. Mass. 2003), quoting *Aetna*, 43 F.3d at 1560.  In signing the checks made payable

to a fictitious entity, Defendant Dziemit was one of the people operating the enterprise[5]. Thus,

IFC has sufficiently alleged the existence of a RICO enterprise which includes Dziemit. [6]

---

[4] After the Court partially dismissed the original complaint in *Pharm I*, Plaintiffs filed an Amended Complaint.  The Defendants filed a motion to dismiss the amended complaint, which led to *Pharm II.*

[5] On pages 8 through 10 of her memorandum, Defendant Dziemit argues that as a lender of money to Defendant Mitchell, she is not liable to IFC, because "lending does not rise to the requisite level of participation or control over the enterprise."  The Court must not consider Dziemit's assertions that she lent money to Mitchell, where there is no allegation in the Amended Complaint that Defendant Dziemit ever lent money to anyone, and where the Court must take the allegations of the Amended Complaint in the light most favorable to IFC.  (*See* AC, ¶¶ 1-100); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269, 272-273 (1st Cir. 1993).  For the same reason, this Court must also not consider Dziemit's assertion on page 8 of the Combined Memorandum that she had no knowledge of the fraud being perpetrated upon IFC.

[6] With respect to Dziemit's suggestion in footnote 3 on page 8 of the Combined Memorandum that she is even farther removed from the enterprise than Defendant Mitchell, IFC calls the Court's attention particularly to the argument's raised in IFC's Initial Memorandum at pp.10-11, which is reproduced below:

<u>c.    **IFC Has Properly Alleged a Nexus Between Dziemit's Conduct And the Harm at Issue.**</u>

On pages 10 through 11 of the Combined Memorandum, Dziemit argues that even if IFC alleges a pattern of racketeering, there is no causal link between Dziemit and any harm to IFC. Dziemit's reliance upon *Miranda v. Ponce Federal Bank*, 948 F.3d 41, 48-49 (1st Cir. 1991), is misplaced.  In *Miranda*, the plaintiff was fired from a bank that had been criminally convicted of currency reporting violations; her dismissal resulted from her unwillingness to participate in the criminal activity.  *Id.*, at 43.  The Court found that because her loss resulted from the bank's decision to fire her rather than "as a direct consequence of the defendants' money-laundering activities, the requisite causal nexus was lacking in her case." *Id.*, at 49.  Unlike in *Miranda*, IFC has alleged that Dziemit "knowingly and fraudulently made false statements of material fact and deliberately failed to disclose other material facts to IFC …"  (*See* AC, ¶82).  IFC further alleges that Dziemit's processing of IFC checks made payable to Remco, a fictitious entity, for non-existent goods is part of the enterprise's overall scheme.  (*See* AC, ¶¶11,40).  While the role of

---

In *Turkette*, the Court found that the "[t]he common thread to all counts was respondent's alleged leadership of this criminal organization through which he orchestrated and participated in the commission of the various crimes delineated in the RICO count …" *Turkette*, 452 U.S. at 579. Like *Turkette*, Adams, Britto and Williams in the case at bar played the central role as "insiders" under IFC's roof for approximately eight years.  (*See* Defendant Mitchell's Memorandum, at p.2.) Nonetheless, the enterprise would be unable to function without remaining Defendants.  (*See* AC, ¶ 40).  While the role of Defendants Adams, Britto and Williams provided the common thread of leadership, Defendants Mitchell, Brown, Dziemit, CCC International and the Suns played their *designated roles*, serving as manufacturer's representatives to fictitious corporations (except for CCC International), setting up transactions involving non-existent merchandise, preparing false documentation and receiving and negotiating the checks for fictitious shipments of merchandise. (*See* AC, ¶¶ 40, 43, 45).  *See United States v. Connolly*, 341 F.3d 16, 28 (1st Cir. 2003) (finding a discernable structure to the enterprise where the members played "designated roles in keeping the enterprise functioning as a viable unit").  As in *Connolly*, the roles of Mitchell, Brown, Dziemit, CCC International and the Suns were necessary to keep the enterprise functioning as a viable unit: the fictitious companies and CCC International not only provided the invoices necessary to defraud IFC, but they also received and channeled all of the illicit funds.  (*See* AC, ¶ 40, 42 – 64). The commonalities of conduct among the Defendants, in an intricate scheme to defraud IFC, as well as the large amount of cash sent to the Defendants (approximately $ 4.8 million to the four fictitious companies alone over a period of several years (*See* AC, ¶ 62)), demonstrate not only the common purpose of the enterprise but also a systematic linkage.  *See Libertad*, 53 F.3d at 442 (crediting evidence of substantial planning and coordination).

Defendants Adams, Britto and Williams provided the common thread of leadership, Defendants

Mitchell, Brown, Dziemit, CCC International and the Suns played their *designated roles*, serving

as manufacturer's representatives to fictitious corporations (except for CCC International),

setting up transactions involving non-existent merchandise, preparing false documentation and

receiving and negotiating the checks for fictitious shipments of merchandise.  (*See* AC, ¶¶ 40,

43, 45).  *See United States v. Connolly*, 341 F.3d 16, 28 (1st Cir. 2003) (finding a discernable

structure to the enterprise where the members played "designated roles in keeping the enterprise

functioning as a viable unit").  Dziemit's ongoing role in the organization has directly harmed

IFC.  (*See* AC, ¶ 69).

     In short, contrary to Defendant Dziemit's assertions, IFC has alleged her participation in

the enterprise for purposes of the RICO statute.  As a result, IFC respectfully requests that this

Court deny Dziemit's motion to dismiss as to Counts I and II of the Amended Complaint.

### III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT DZIEMIT WHERE OF THE MASSACHUSETTS LONG-ARM STATUTE AND THE RICO STATUTE AUTHORIZE THE EXERCISE OF JURISDICTION OVER DZIEMIT AND WHERE THE BASIC CONSTITUTIONAL DUE PROCESS REQUIREMENTS ARE MET.

     Defendant Dziemit relegates her lack of personal jurisdiction argument to footnote 7 on

page 11 of the Combined Memorandum.  In that footnote, she suggests that that she has a "well-

grounded" challenge to personal jurisdiction," without clearly setting forth the nature of the

challenge.   In considering such a motion in the absence of an evidentiary hearing, "the

the court will look to the facts alleged in the pleadings and the parties' supplemental filings,

including affidavits."  *Cruickshank*, 402 F.Supp.2d at 333, *Sawtelle v. Farrell,* 70 F.3d 1381,

1385 (1st Cir.1995); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994). The

Court takes facts alleged as true.  *Cruickshank*, 402 F.Supp.2d at 333. It will then "add to the mix

facts put forward by the defendants, to the extent that they are uncontradicted." *Id.*, *quoting*

*Mass. School of Law v. ABA*, 142 F.3d 26, 34 (1st Cir. 1998).  Here, Defendant Dziemit

submitted an affidavit, but that affidavit does not directly address the jurisdictional issue, and

Dziemit does not cite to any portion of her affidavit in support of her jurisdictional argument.  As

a result, this Court should not consider the Dziemit affidavit in ruling upon the motion to dismiss

for lack of personal jurisdiction.

IFC has submitted an Affidavit of William Gemme, who controls the payment of invoices

for IFC, for the limited purpose of opposing Dziemit's claim of lack of personal jurisdiction.  In

that affidavit, Gemme identifies 18 checks made payable by IFC to Remco which bear the

apparent signature of Defendant Dziemit.  Thus, Dziemit received numerous checks from IFC,

which is located in Massachusetts.  The checks are drawn on a Massachusetts bank.

In order to demonstrate that this Court may exercise personal jurisdiction over Dziemit,

IFC must show that the long-arm statute authorizes the assertion of jurisdiction and that the basic

constitutional due process requirements are met.  *Buckeye Assoc., Ltd. v. Fila Sports, Inc.,* 616

F.Supp. 1484, 1492 (D.Mass. 1985) *rev'd on other grounds by Amtrol, Inc. v. Vent-Rite Valve

Corp.,* 646 F.Supp. 1168 (D. Mass. 1986).  In Paragraph 11 of the Amended Complaint, IFC

alleges that personal jurisdiction over Dziemit is proper pursuant to M.G.L. c. 223A §3.  In

particular, IFC alleges that Dziemit, among other things, committed a tort in Massachusetts and

caused tortious injury in Massachusetts.  See M.G.L. c. 223A §3.  In particular, Dziemit

received and indorsed numerous checks from IFC in Massachusetts made payable to Remco.  As

a result of her wrongful conduct, IFC suffered harm here in Massachusetts.  Thus, even though

she may not reside in the Commonwealth, she is subject to the Massachusetts long arm statute[7].

---

[7]  For the same reasons, IFC has demonstrated that Dziemit meets the minimum contacts test for due process purposes.

Moreover, Defendant Dziemit does not claim that she has not been served with process in this matter.  As a result, pursuant to the RICO statute (18 U.S.C. §1965(d)), *in personam* jurisdiction over her is established in any federal district court, so long as it meets due process considerations. *D'Addario v. Geller*, 264 F.Supp.2d 367, 387 (E.D.Va. 2003);  see *Omni Video Games, Inc. v. Wing Company, Ltd.*,754 F.Supp. 261, 263 (D. R.I. 1991).   The due process clause protects "the liberty interests of individuals against unfair burden and inconvenience." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)."[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id*. at 627 (citation omitted). "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *D'Addario*, 264 F.Supp.2d at 387, citing *Republic of Panama v. BCCI Holdings (Luxembourg)* S.A., 119 F.3d 935, 948 (11th Cir.1997) (internal quotations and alterations omitted).  Dziemit has not submitted any information to this Court that would suggest that there is any unfair burden or convenience associated with proceeding in this forum.  As a result, Defendant Dziemit's motion to dismiss based upon lack of personal jurisdiction must fail.

## IV.    IFC HAS SUFFICIENTLY PLEADED STATE-LAW CLAIMS AGAINST DZIEMIT.

In the Amended Complaint, IFC alleges state law claims against all Defendants, including, without limitation, Dziemit, for conversion, 93A violations, fraud and breach of fiduciary duty. In a single paragraph on pages 11 and 12 of the Combined Memorandum, Dziemit suggests that all of IFC's state law claims fail.  As for the first reason advanced by Dziemit – that the Amended Complaint does not allege that Dziemit participated in and/or conspired to participate in, the fraud, the facts section of the Amended Complaint, along with

Count V (Fraud) itself, set forth claims against her for fraud. As noted above, Dziemit signed checks on behalf of Remco, a fictitious company, for non-existent goods as a part of the scheme.

Dziemit also suggests that she is a holder in due course - a suggestion which relies upon facts not alleged in the Amended Complaint and which cannot serve as the basis for a motion to dismiss.

In a single sentence, Dziemit suggests that the 93A claim must fail because, she alleges, there is no allegation that she engaged in a commercial transaction in Massachusetts with IFC. The scheme giving rise to the claims in this case involve conduct that took place primarily in Massachusetts. Dziemit accepted checks from Massachusetts. Where the determination of whether the "center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth must be made on the basis of factual findings," such a determination is inappropriate for a motion to dismiss. *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 118 (D.Mass. 2003) quoting *Kuwaiti Danish Computer Co. v. Digital Equipment Corporation*, 438 Mass. 459, 473, 781 N.E.2d 787, 799 (2003), upon which Dziemit relies. Dziemit's reliance upon *Kuwaiti* is also misplaced because, in that case, "virtually all" of the purportedly unfair and deceptive conduct occurred outside of Massachusetts. *Id.* at 475, 781 N.E.2d at 800.

**V.    IFC'S RICO CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS WHERE IFC FIRST LEARNED THAT IT HAD BEEN INJURED BY THE DEFENDANTS' RACKETEERING ACTIVITIES UNTIL IN OR AROUND <u>APRIL, 2005.</u>**

On pages 12 through 13 of the Combined Memorandum, Dziemit suggests that IFC's RICO Act claims are barred by the statute of limitations[8]. The statute of limitation for RICO civil actions is four years. *Rotella v. Wood*, 528 U.S. 549 (2000), *citing Agency Holding Corp. v.*

---

[8] The Combined Memorandum does not raise the statute of limitations argument in the context of any other counts of the Amended Complaint.

*Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).  Under the "injury discovery" rule

followed by the First Circuit, "the statutory clock begins to run when a plaintiff knew, or

reasonably should have known, of his injury." *Lares Group, II v. Tobin*, 221 F.3d 41, 43 (1st

Cir. 2000), *construing Rotella*, 528 U.S. 549.   "Whether a plaintiff knew or should have known

of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury

issue." *In re Lupron Marketing and Sales Practices Litigation*, 295 F.Supp. 2d 148, 183

(D.Mass. 2003)(Denying motion to dismiss RICO claims for running of statute of limitations

where defendants claims lack of reasonable investigation by plaintiff).

Even so, IFC has asserted its RICO Act claims within the statute of limitations where it

did not discover its injury until in or around April, 2005.  (See AC, ¶27).  In the case at bar,

while IFC alleges that the criminal activity has taken place over the previous eight years, (*See*

AC, ¶1), IFC also alleges that all Defendants have taken steps to conceal their fraudulent and

criminal activity, provided IFC with fabricated documents to conceal the wrongful criminal

enterprise.  (*See* AC, ¶¶79,82).

Moreover, IFC alleges that the fraud perpetrated against it was carried out, in part by

three of its own (now former) employees:  Adams, Britto and Williams.  (*See* AC, ¶¶40).  IFC

alleges that it relies upon buyers to order merchandise and warehouse receivers to verify that the

merchandise ordered has actually arrived.  (*See* AC, ¶25).  IFC's own employees were creating

fraudulent documents which thwarted IFC's accounting system, (*see* AC, ¶40). IFC did not learn

of the elaborate scheme until in or around April, 2005.  (*See* AC, ¶27).  Within a month after IFC

had replaced the fraudulent buyer Adams, the new buyer uncovered the scheme, and IFC

launched a full investigation, which uncovered Defendants' fraudulent scheme.  (See AC, ¶¶26-

36).  In fact, IFC's investigation led to the filing of the original complaint in or around August,

2005, less than five months after IFC initially discovered the injury which had been done to it, well within the RICO Act's statute of limitations. (*See* AC, ¶27).[9]  As a result, IFC's claims are not barred by the statute of limitations.  At the very least, the determination of when IFC had sufficient knowledge of injury is a question of fact for a jury.

**VI.    IFC HAS PLEADED ITS FRAUD, RICO AND OTHER CLAIMS AGAINST DZIEMIT WITH THE REQUISITE PARTICULARITY, AND, TO THE EXTENT THAT THE RICO CLAIMS LACK THE REQUISITE PARTICULARITY, IFC REQUESTS LEAVE TO TAKE DISCOVERY AND TO AMEND COMPLAINT.**

IFC's Amended Complaint contains approximately eleven pages of detailed facts which outline the fraudulent scheme giving rise to the RICO, fraud and other counts against the Defendants, including, without limitation, Dziemit.  Dziemit suggests that the fraud, RICO and other claims should be dismissed because they were not pleaded with particularity.  Fed.R.Civ.P. 9(b) requires that fraud claims be pleaded with particularity.  The same principle holds true for RICO claims.  *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).   Counsel is not aware of any similar requirement that IFC plead their conversion and breach of fiduciary duty claims with particularity.  Such claims are only subject to Fed.R.Civ.P. 8(a), which simply requires a notice pleading.  As to the conversion (Count III) and breach of fiduciary duty (Count VI) claims, therefore, the motion to dismiss should be denied.

One of the main purposes of the specificity rule is to let the Defendant know of the fraudulent claims and the acts forming the basis of that claim.  *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).  "In cases in which fraud lies at the core of the action, the rule does not

---

[9] At pages 12 and 13 of the Combined Memorandum, relying upon her affidavit, Dziemit argues that Adler, an IFC employee and Defendant Adams' replacement, was directly involved with the purchase and inspection of products for which she received payments, such that Adler and IFC were in a better position than Dziemit to discover Remco's fraudulent invoices.  Since those facts are not alleged in the Amended Complaint, this Court should exclude those facts from consideration.

permit a complainant to file suit first, and subsequently to search for a cause of action." Id., quoting *Lopez v. Bulova Watch Co., Inc.,* 582 F.Supp. 755, 766 (D.R.I.1984).

Turning to the fraud count, in Count V, IFC alleges, among other things, that the Defendants knowingly and fraudulently made false statements of material fact and deliberately failed to disclose other material facts to IFC regarding, among other things, (1) converting funds belonging to IFC to their own use, (2) stealing funds from IFC, (3) creating false documentation in order to obtain stolen funds from IFC, (4) providing false representations in documents by alleging shipments of merchandise were made and received when in fact no such shipment occurred, (5) taking steps to conceal the fraudulent and criminal activity, (6) providing IFC with fabricated documents in order to conceal the wrongful criminal enterprise, (7) creating false and non-existent companies in order to further their criminal enterprise, (8) using office property, including, without limitation, facsimiles, telephones and mailing items, in order to effectuate the fraud, (9) defrauding IFC of millions of dollars, (10) causing funds to be transferred outside of the Commonwealth of Massachusetts in order to render recapture of the funds more difficult, and (11) forging documents, all with the intention of deceiving and defrauding Plaintiff.  (A.C. ¶82).

The Amended Complaint here does not baldly allege claims for the purpose of searching for a cause of action through discovery.  Throughout the Amended Complaint, in paragraphs that are incorporated therein by reference, IFC sets forth in detail the wrongful conduct which is specific to Defendant Dziemit.  Those facts are discussed throughout the within memorandum. In essence, Dziemit signed and deposited checks from IFC made payable to Remco, a fictitious company, in payment for shipment of non-existent goods.  The facts alleged in the Amended Complaint afford Dziemit sufficient notice of the acts which give rise to the fraud Count[10].

---

[10]    The facts alleged thus far have been sufficient for IFC to obtain injunctive relief against most of the Defendants. IFC's motion for a preliminary injunction concerning Defendants Dziemit and Britto remains pending.

In the First Circuit, courts must perform a two-part test in assessing a claim that a RICO count does not particularize the mail or wire fraud sufficiently. *New England Data*, 829 F.2d at 290-91.

> Initially, the court must determine whether the complaint satisfies Rule 9(b) by adequately specifying the time, place and content of the mail and wire fraud allegations. If it does, the inquiry ends and the complaint is sustained. But if the dictates of Rule 9(b) are not satisfied, the court must decide whether or not to provide the plaintiff with limited discovery and a chance to amend the complaint to supply the missing details.

*Konstantinakos v. FDIC*, 719 F.Supp.35, 39 (D.Mass. 1989)

The RICO Counts, while stated differently, rely upon essentially the same core set of facts as the fraud count, and they incorporate the "facts" section of the Amended Complaint by reference. In Paragraph 38, IFC alleges that the Defendants (including, without limitation, Dziemit) have held meetings, by person and in telephone, and have used the mails, emails and facsimiles in furtherance of their scheme. The four sample factual scenarios set forth in Paragraphs 42 through 61 describe the various communications necessary to accomplish the fraud. Since the scheme lasted from approximately 1997 through 2005, it is difficult, if not impossible, for IFC to recite each and every communication using the wire and/or mails in the Amended Complaint. The Amended Complaint satisfies the particularity requirements in order to support a RICO claim against Defendant Dzeimit.

Even so, Dziemit's Combined Memorandum does not claim that there is a lack of particularity with regard to the wire and fraud allegations. Dziemit simply claims that "IFC does not provide any specific allegations detailing her relationship to the other defendants or the enterprise itself." (Combined Memorandum, at p. 15). The Amended Complaint contains allegations that Dziemit was associated with Defendant Mitchell of Remco, and it details the role she played with regard to IFC checks made payable to Remco. Dziemit has fair, particularized

19

notice of the claims against her.  IFC has met the requirements of Fed.R.Civ.P. 9(b), and a denial of Dziemit's motion to dismiss is warranted.

To the extent that this Court finds the allegations of the fraud and/or RICO Counts insufficient to meet the particularity requirements on any grounds (including, without limitation, the wire and fraud allegations or the details of Dziemit's relationship to the other defendants or to the enterprise), IFC respectfully requests that this Court grant IFC a limited opportunity to take discovery and an opportunity to amend its complaint under parameters set by the Court.

## CONCLUSION

IFC respectfully requests that this Court DENY Defendant Dziemit's motion to dismiss. In the alternative, to the extent that this Court finds the allegations of the fraud and/or RICO Counts insufficient to meet the particularity requirements on any grounds (including, without limitation, the wire and fraud allegations or the details of Dziemit's relationship to the other defendants or to the enterprise), IFC respectfully requests that this Court grant IFC a limited opportunity to take discovery and to amend its complaint under parameters set by the Court.

<div style="margin-left:40%">

Plaintiff
International Floor Crafts, Inc.
By Its Attorneys,

/s/ Paul J. Klehm
James B. Krasnoo
*james@krasnoolaw.com*
Paul J. Klehm
*pklehm@krasnoolaw.com*
Law Offices James B. Krasnoo
23 Main Street, Suite 1
Andover, MA  01810
(978) 475-9955

</div>

Dated:  January 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record or upon each party not represented by an attorney via ECF or via first class mail, postage pre-paid, on January 26, 2006.  On January 26, 2006, I have also forwarded a copy of the within opposition via first class mail, postage pre-paid, to Kevin Britto, 300 W. 21st Street, Apartment #25, New York, NY.

/s/ Paul J. Klehm
Paul J. Klehm