UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL FLOOR CRAFTS, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> DAVID W. ADAMS, TYRONE WILLIAMS, ) <br> KEVIN BRITTO, RONALD MITCHELL, ) <br> Individually and d/b/a MANSFIELD RUG ) <br> DEPARTMENT and REMCO, MICHAEL ) <br> E. BROWN, Individually and d/b/a DALTON ) <br> PADDING and EMPIRE WEAVERS, and JANE ) <br> DZIEMIT ) <br> ) <br> Defendants ) | Civil Action No. 05-11654-NMG |

**DEFENDANT JANE DZIEMIT'S MEMORANDUM IN OPPOSITION TO (1) PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS ASSERTED BY DEFENDANT JANE DZIEMIT, (2) IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND (3) MOTION TO STRIKE CLAIMS AGAINST BUILDING 19, AN UNNAMED ENTITY**

Counterclaim-plaintiff Jane Dziemit ("Ms. Dziemit"), hereby submits her opposition to the Counterclaim-defendant's Motion to Dismiss the Counterclaims Asserted by Defendant Jane Dziemit, (2) in the Alternative, Motion for More Definite Statement and (3) Motion to Strike Claims Against Building 19, an Unnamed Entity.

**INTRODUCTION**

Having survived a motion to dismiss itself of its own claim against Jane Dziemit based on merely two paragraphs in its amended complaint that directly mention her, plaintiff International Floor Crafts, Inc ("IFC"[1]) now suggests that Ms. Dziemit's counterclaim is fatally

---
[1] See discussion below at p. 9 regarding plaintiff's explicit definition of IFC as including both International Floor Crafts, Inc. and Building 19.

deficient. Not only do IFC's arguments have no merit, but if IFC's own amended complaint had been subject to the hair-splitting it seeks now, IFC's own amended complaint would never have survived. There are not two sets of federal rules here, but one.

Ms. Dziemit's counterclaims are well-grounded. Both Ms. Dziemit's counterclaim and IFC's amended complaint proceed from a common nucleus of operative facts. At the core of each is an elaborate conspiracy by three <u>IFC</u> insiders to bilk IFC and Ms. Dziemit out of hundreds of thousands of dollars. In IFC's amended complaint, it gilds the lily and suggests that everyone in the world, including Ms. Dziemit, knew of the fraud. In her counterclaim, Ms. Dziemit states that she did not know of the fraud and that, in fact, the fraud was practiced <u>on</u> her by these employees and agents <u>of</u> IFC, causing her to advance large sums of money based on IFC-issued purchase orders and IFC-issued checks following the supposed <u>non</u>-delivery of the referenced goods. On a motion to dismiss, this Court must accept as true Ms. Dziemit's factual contentions that she did not know of any fraud and that she relied on the genuineness of IFC purchase orders and checks issued by persons with the authority to do so. Accordingly, there simply cannot be a basis in law to dismiss the counterclaim.

**FACTS**

Ms. Dziemit is a 48-year-old homemaker and mother of two young children. (Counterclaim of Jane Dziemit, hereinafter "Counterclaim," ¶ 5.) In the mid-1990's Ms. Dziemit began making a small number of mortgage loans to earn an income working out of her home while she cared for her children. (Counterclaim, ¶ 5.) In or about 1999, although Ms. Dziemit previously engaged in primarily mortgage lending, she loaned money to Ron Mitchell d/b/a Remco, who operated as a broker of goods to be sold to Building 19 and IFC, based upon and in

reliance upon representations made by Building 19 and IFC.[2] (Counterclaim, ¶ 6.) The representations made by Building 19 and IFC included (approximately three dozen) company purchase orders for the purchase of goods and a like number of payment checks on such purchase orders. (Counterclaim, ¶¶ 7, 9.) Ms. Dziemit was a lender here.[3]

According to the amended complaint, during the relevant period, Defendants Adams and Williams were employees of IFC and/or Building 19, serving as a buyer and/or representative and as a department manager and receiver, respectively. (Plaintiff's Amended Complaint, hereinafter "Amended Complaint," ¶¶ 6-7.) Defendant Britto was an IFC and/or Building 19 employee, serving as a buyer, from July 8, 1988 to November 15, 1997 and September 28, 1998 through September 28, 2001. (Amended Complaint, ¶ 8.) Throughout their work for the company, these individuals and others, acting within the scope of their implied or actual authority, made various representations on behalf of IFC through purchase orders, payment checks, and key reqs. (Counterclaim, ¶¶ 7, 10.)

The IFC purchase orders, in combination with the IFC checks that were issued thereupon, contained the implicit representations that: (1) the entity issuing the purchase order was seeking to buy goods; (2) the entity seeking to purchase goods had done a modicum of due diligence to ensure that it was purchasing goods from a legitimate, approved vendor; (3) the person issuing

---

[2] Originally, Ms. Dziemit's basis for these loans was a promissory note from Ron Mitchell. After one or two of these loans, which were repaid following IFC's issuance of a purchase order and then payment for the respective order. Relying thereon, Ms. Dziemit shifted to a "lock-box" type arrangement in which she would loan money for REMCO to buy goods and, after receipt of the IFC purchase order, REMCO would issue and invoice for the goods directing payment to a post-office box controlled by Ms. Dziemit. She would then obtain payment for the loan from the IFC checks sent to the post-office box.

[3] The lock-box arrangement was devised by Ms. Dziemit upon the advice of her accountant. To ensure that she had unquestioned authority to deposit the monies received, as a lender, Ms. Dziemit also took a pro forma equity interest in the REMCO partnership for 1999-2001. This was done to ensure that she had authority to act on checks received payable to REMCO. She did not receive any profits of REMCO but rather her interest with each loan was paid back. In 2001, when she wanted to cease making loans to Mitchell for the purchase of rugs, she ceased being even a pro forma partner of REMCO.

the purchase order had the authority to do so in the ordinary course of the entity's business; (4) the entity would pay for the goods purchased according to the terms thereof when such goods were delivered, and (5) if the goods were not, in fact, delivered, the entity would not make payments thereon. (Counterclaim, ¶ 8). Through payment checks on invoices, IFC and/or Building 19 further represented that the ordered goods had been, in fact, received, inspected, and counted by IFC. (Counterclaim, ¶ 9.) However, according to the first amended complaint, all of the above representations were false. (Counterclaim, ¶ 10, 13.)

Indeed, IFC and/or Building 19 did no due diligence to ensure that they were purchasing goods from a legitimate approved vendor or that ordered goods were, in fact, received, inspected and counted. (Counterclaim, ¶ 11.) The persons signing the purchase orders on behalf of IFC and/or Building 19, including <u>both</u> alleged co-conspirators and those <u>still</u> <u>employed</u> by IFC, did no due diligence whatsoever with respect to orders placed. (Counterclaim, ¶ 12.) Even though, according to its own complaint in this matter, numerous persons still employed by IFC and/or Building 19 issued the fake purchase orders and payment checks thereon, to this day neither IFC nor Building 19 has disciplined these at least negligent employees. (Counterclaim, ¶ 12.)

IFC and/or Building 19 are bound by the actions of persons appointed to various positions within the companies acting within the scope of their actual or implied authority. (Counterclaim, ¶ 14.) As testified by Kevin Britto, one of the inside conspirators, these persons consciously intended to mislead Mitchell and Ms. Dziemit. (Counterclaim, ¶14.) As a matter of fact and law, these misrepresentations by the conspirators were misrepresentations of IFC and/or Building 19 and they were deliberate and intentional. (Counterclaim, ¶ 14.) Similar misrepresentations by others at IFC and/or Building 19 who were not conspirators were negligent. To the extent that any person making any of these misrepresentations, either

intentionally or negligently, was acting outside the scope of their authority without proper supervision by their superiors, IFC and/or Building 19 were negligent. (Counterclaim, ¶15.)

## ARGUMENT

A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the counterclaim, as well as any reasonable inferences to be drawn in the counterclaim-plaintiff's favor. See American Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 251 (D. Mass. 1995)(Gertner, J.); Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). A counterclaim should not be dismissed for failure to state a claim "unless it appears beyond doubt that the [counterclaim]-plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(emphasis added). There is no need whatsoever for the counterclaim-plaintiff to plead detailed evidence. "[I]t is enough for the [counterclaim] to contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Charbonnier v. Amico, 367 Mass. 146, 152 (1975); see also, Langadinos v. American Airline, Inc.,199 F.3d 68, 72-73 (1st Cir. 2000); American Glue & Resin v. Air Products & Chemicals, Inc., 835 F. Supp. 36, 40 (D. Mass. 1993)(Gorton, J.).

B.  Under Massachusetts Law A Claim For Intentional Interference With Advantageous Relations Can Be Solely Based On The Underlying Complaint.

Plaintiff's contention that it is "absolutely immune" from Ms. Dziemit's claims arising out of the allegations set forth in the amended complaint is a substantial misstatement of the law. Under Massachusetts law, maliciously filing a baseless civil complaint is a proper basis for a claim of intentional interference with advantageous relations. Powers v. Leno, 24 Mass. App. Ct. 381, 509 N.E.2d 46, 49 (1987) ("[I]t was for the jury to determine whether [the defendant]

5

interfered with the plaintiffs' relationship by maliciously bringing or continuing the litigation"); IPL Sys., Inc. v. EMC Corp., No. 952816E, 1993 WL 818577, at *4 (Mass. Super. Nov. 30, 1993)("Maliciously bringing or continuing litigation so as to delay or derail an agreement is one example of intentional interference with an advantageous relationship").  The courts of this district have accordingly held that an otherwise well-pled counterclaim for intentional interference with advantageous relations that is solely based on the underlying complaint nonetheless survives a motion to dismiss.  Fafard Real Estate Dev. Corp. v. Metro-Boston Broad., Inc., 345 F. Supp. 2d 147, 153-54 (D. Mass. 2004)(Stearns, J.).

Additionally, IFC and Building 19 are not immune from claims arising from the allegations set forth in the amended complaint and point to no authority for the proposition that allegations set forth in a complaint, as opposed to witness testimony, are absolutely immune from suit for intentional interference with advantageous relations.  While IFC may cite to several valid but irrelevant legal principles in its memorandum, the legal principles cited regarding witness testimony (as opposed to allegations contained in a complaint) being immune from action for defamation (as opposed to intentional interference with advantageous relations) are plainly inapplicable.

The overreach of the plaintiff's argument is obvious.  If, as the plaintiff suggests, there is absolute immunity from the filing and service of a frivolous complaint, there could be no sanctions under Rule 11; there could not exist a claim for abuse of process; there could be no liability under 28 U.S.C. § 1927; and so forth.  But, liability under Rule 11 does exist; claims for abuse of process do exist; liability under 28 U.S.C. § 1927 does exist.  See, e.g, Cruz v. Savage, 896 F.2d 626 (1st Cir. 1990)(liability under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927); Fafard Real Estate, 345 F. Supp. 2d at 153 (discussing abuse of process liability).  Similarly, as noted

above, liability for intentional interference with advantageous relations will lie from such baseless complaints.

    C.    <u>Under Massachusetts Law It Is Legally Immaterial That A Principal Was Unaware Of The Fraudulent Conduct Of Its Agent Or That The Agent Was Acting Outside Of The Scope Of His Employment.</u>

In support of its motion to dismiss Count II of Ms. Dziemit's counterclaim, IFC simply cites to no legal authority whatsoever to support the argument that IFC is not bound by the acts of its agents. The reason for the omission is clear. Under Massachusetts law a principal, here IFC and/or Building 19, is liable for the fraudulent conduct of its agents, here Britto, Williams, and Adams, even when the principal had no knowledge of the agents' fraudulent scheme. <u>New England Acceptance Corp. v. Am. Mfrs. Mut. Ins. Co.</u>, 373 Mass. 594, 368 N.E.2d 1385, 1387 (1977)("[T]he defendant companies are liable as principals for the conduct of [defendant agents], as a matter of law, even though they had no knowledge of the [agents'] fraudulent scheme"). In fact, a principal is liable for the fraudulent conduct of its agents even when, as is alleged here, the agent misuses his authority to work a fraud against his principal. <u>Kansallis Fin. Ltd. v. Fern</u>, 421 Mass. 659, 659 N.E.2d 731, 737 (1996)("[T]here could be vicarious liability even though 'the agent were acting entirely for their own purposes.' Indeed, . . . that will usually be the case where a dishonest agent misuses his apparent authority to work a fraud against both his principal and a third party")(internal citations omitted).

Taking the allegation in the counterclaim as true, in Count II Ms. Dziemit has amply stated a claim for intentional misrepresentation. Clearly, IFC and/or Building 19 cannot insulate

7

themselves from the actions of their employees and agents[4] by asserting that those employees and agents acted outside the scope of their employment. As such, the motion to dismiss Count II must be denied.

> D. Under Massachusetts Law An Employer Is Vicariously Liable for the Negligent Acts Of Its Employees Acting Within The Scope of Their Employment And Is Directly Liable For The Negligent Supervision of Its Employees.

As in its baseless argument to dismiss Count II of Ms. Dziemit's counterclaim, IFC again cites to no pertinent legal authority in support of its argument that, because the representations were not authorized by the company, IFC and/or Building 19 cannot be liable for the negligent acts of its employees acting within their scope of employment and for its own negligent supervision of its employees. The argument is wholly without merit. Under the doctrine of *respondeat superior* an employer is vicariously liable for the negligent acts of its employees committed within the scope of employment. Dias v. Brigham Med. Assocs., Inc., 348 Mass. 317, 780 N.E.2d 447, 449 (2002). Additionally, an employer is directly liable for negligently supervising its employees if those employees cause harm to third parties. Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 526 N.E.2d 1309, 1310-11 (1988).

As alleged in the counterclaim, IFC and/or Building 19 are vicariously liable for the negligent acts of the non-conspirator employees acting within the scope of their employment who negligently issued fake purchase orders and checks on goods never delivered. Additionally, IFC is directly liable for its failure to supervise properly employees under its control, both in failing to supervise those employees making negligent misrepresentations without first

---

[4] Strangely, IFC and/or Building 19 state in their memorandum that Defendants Adams, Britto and William "at one time worked for IFC" while in their Amended Complaint they assert that Adams "at all times relevant served as a buyer and/or representative for, and on behalf or, IFC," Williams "at all times relevant served, and continues to serve, as the department manager in the warehouse and a Receiver at IFC," and Britto served as a buyer from July 8, 1988 to November 15, 1997 and from September 28, 1998 to September 28, 2001.

conducting any due diligence and in failing to supervise those conspirator-employees making intentional misrepresentations. In failing adequately to supervise its employees, IFC and/or Building 19 failed properly to vet their inventory, purchase, and order systems[5], allowing the alleged fraudulent scheme to continue unabated and allowing its own agents to continue making false representations for, as alleged by IFC, <u>at least eight years</u>. Clearly, the allegations in the counterclaim are sufficient to defeat this motion to dismiss.

      E.    <u>Because Counts I, II and III of the Counterclaim Should Not Be Dismissed, the Declaratory Judgment Claim Should Also not Be Dismissed.</u>

Because IFC and/or Building 19 rely on their arguments in support of their dismissal of Counts I, II, and III of the counterclaim in support of their motion to dismiss Count IV for declaratory relief, Ms. Dziemit relies on the arguments set forth <u>supra</u> in opposing this portion of the motion. The only argument asserted by IFC and/or Building 19 in support of its motion to dismiss Count IV of Ms. Dziemit's counterclaim is that, "to the extent that this Court finds that Defendant Dziemit has failed to state a claim in Counts I, II, and III of her counterclaim, she also cannot state a claim under Count IV." As set forth above, this Court cannot find that Ms. Dziemit has failed to state a claim under Counts I, II, and III. As a result, IFC and/or Building 19 cannot support their position that Ms. Dziemit has failed to state a claim under Count IV of her counterclaim.

Moreover, Dziemit's declaratory judgment count is <u>not</u> just a repeat of her three claims for affirmative relief. The declaratory judgment count contains the plain and simple request for a determination "that any recovery against her is barred by various principles of law and equity."

---

[5] By IFC's own admission, the scheme described in the amended complaint lasted for at least eight years and involved millions of dollars. It is mind-boggling that IFC and Building 19 had no inventory or purchase and order control that could detect the non-delivery of <u>scores</u> of truckloads of bulky goods (rugs) over and eight-year period. Any retail organization the size of IFC and Building 19 with any many stores as IFC and Building 19 either has a sophisticated inventory system or consciously runs the risk of employee theft.

(Counterclaim, ¶ 34.) This request includes a declaration that her affirmative defenses, such as her "holder in due course" status (First Affirmative Defense), IFC's laches (Third Affirmative Defense), IFC's failure to act within the statute of limitations (Seventh Affirmative Defense), IFC's unclean hands (Sixth Affirmative Defense) and estoppel (Fifth Affirmative Defense) bar recovery here. Each of these defenses would bar, in whole or in part, any liability to IFC and a request for such a declaration is not suitable for dismissal.

    F.    <u>Building 19 Is A Proper Defendant in the Counterclaim As It Is Defined *As A Plaintiff To This Action* In The Amended Complaint.</u>

IFC's disingenuous request that "any alleged claims against an entity known as 'Building 19' be stricken" should not give the Court any pause. IFC, the corporation, has treated Building 19 as one and the same as IFC, the plaintiff in this action. <u>In</u> <u>its</u> <u>amended</u> <u>complaint</u>, IFC states unequivocally that "IFC and Building 19 *shall be referred* to hereinafter collectively as 'IFC'" and in the same paragraph of the amended complaint defines "<u>Plaintiff</u> International Floor Crafts, Inc." as "IFC." Because IFC defines "<u>Plaintiff</u> International Floor Crafts, Inc." and "Building 19 and IFC" as "IFC," clearly Building 19 is already a party to this action and the requirements of Local Rule 15.1 need not be met. There is no need to add Building 19 as a separate party as it is already defined <u>by</u> the plaintiff <u>as</u> the plaintiff.

    G.    <u>IFC's Motion For A More Definite Statement Must Be Denied As It Has Failed Even To Allege That the Pleading Is Too Vague or Ambiguous to Respond To.</u>

That IFC and/or Building 19, whose amended complaint contains a sum total of two factual allegations specifically concerning Ms. Dziemit, one of which is contained in the recitation of the parties, asks this Court for a more definite statement from Ms. Dziemit with regard to her counterclaim is simply outrageous. A motion for more definite statement is to be granted only when a pleading is "so vague or ambiguous that a party cannot reasonably be

required to frame a responsive pleading." Fed. R. Civ. P. 12(e). IFC fails even to attempt to approach this showing, asserting merely that it "seeks to learn the nature of Defendant Dziemit's intentional misrepresentation claims with greater particularity so as to be <u>better able to respond</u> thereto" and relies upon this assertion in seeking a more definite statement on Ms. Dziemit's negligent misrepresentation claim. By IFC's own implicit admission it is perfectly capable of responding to the counterclaim and has not alleged that the pleading is either vague or ambiguous. As IFC merely wishes it were "better able to respond" to Ms. Dziemit's counterclaim, the motion must be denied.

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion to Dismiss the Counterclaims Asserted by Defendant Jane Dziemit, (2) in the Alternative, Motion for More Definite Statement and (3) Motion to Strike Claims Against Building 19, an Unnamed Entity must be denied.

## Request For Oral Argument

Pursuant to Local Rule 7.1(E), Ms. Dziemit hereby requests oral argument on the plaintiff's Motion to Dismiss the Counterclaims Asserted by Defendant Jane Dziemit, (2) in the Alternative, Motion for More Definite Statement and (3) Motion to Strike Claims Against Building 19, an Unnamed Entity and Ms. Dziemit's above Opposition thereto.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JANE DZIEMIT, |
|  | By Her Attorneys, |
|  | /s/ Anthony B. Fioravanti |
|  | _____ |
|  | Richard J. Yurko (BBO# 538300)<br>Anthony B. Fioravanti (BBO# 664823)<br>YURKO, SALVESEN & REMZ, P.C.<br>One Washington Mall, 11th Floor<br>Boston, MA 02108<br>(617) 723-6900 |
| Dated: July 17, 2006 |  |

## Certificate of Service

    I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 17, 2006.

                                           /s/ Anthony B. Fioravanti