```
              United States District Court
                District of Massachusetts
_____
                              )
INTERNATIONAL FLOOR CRAFTS,   )
INC.,                         )
                              )
        Plaintiff,            )    Civil Action No.
                              )    05-11654-NMG
        v.                    )
                              )
DAVID W. ADAMS, et al.,       )
                              )
        Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The underlying case involves allegations that current and former employees of the plaintiff, International Floor Crafts, Inc. ("IFC"), contrived and perpetuated a scheme with individuals in several states to extort approximately $5 million from IFC. Currently pending before the Court is plaintiff's motion to dismiss the counterclaims filed by one of the defendants, Jane Dziemit ("Dziemit").

I.   **Background**

IFC, a seller of discount merchandise, alleges that multiple defendants organized and participated in a fraudulent scheme to induce IFC to make payments to existing and fictitious companies for non-existent shipments of merchandise.

-1-

Dziemit is alleged to have received payments from IFC on behalf of "Remco", a fictitious company involved in the scheme to defraud.  From 1996 until 2005, IFC allegedly paid "Remco" approximately $2.3 million for goods that did not exist.  In its complaint, IFC alleges that Dziemit participated in fraud, racketeering and unfair business practices but, in response to Plaintiff's First Amended Complaint (Docket No. 156), Defendant Dziemit moved to dismiss the claims against her.  On April 21, 2006, this Court denied that motion.

On June 15, 2006, Dziemit filed an answer to the complaint in which she asserts four counterclaims against both IFC and "Building 19": 1) Intentional Interference with Advantageous Relations, 2) Intentional Misrepresentation, 3) Negligent Misrepresentation and 4) for Declaratory Judgment.  In that pleading, Dziemit denies doing business as the fictitious entity, "Remco" and claims that she has worked out of her home since the 1990's making small mortgage loans.  She asserts that, in 1999, she loaned money to Ronald E. Mitchell ("Mitchell"), a co-defendant, who did business as "Remco" and brokered goods to be sold to IFC.  Dziemit contends that her loans to Mitchell, d/b/a "Remco", were based and made in reliance upon several signed IFC purchase orders and payment checks.  She claims that she was not involved in the conspiracy but that she, too, was misled and suffered damages as a result of the fictitious orders and

fraudulent checks presented by IFC's employees.

IFC seeks dismissal of Dziemit's counterclaims for failure to state claims upon which relief can be granted or, alternatively, to order Dziemit to provide a more definite statement of her counterclaims within ten days.  In addition, IFC moves to strike "Building 19", an unnamed party, as a counterclaim or third-party defendant for failure to follow appropriate rules of civil procedure.  Because Dziemit's counterclaims are directed against both IFC and "Building 19", the Court will address that question before proceeding to the substantive legal issues of the counterclaims.

## II.  "Building 19" Counterclaims

In her counterclaims, defendant Dziemit makes allegations against both IFC and "Building 19".  She contends that "Building 19" is "on information and belief, a separate Massachusetts corporation related to IFC."

IFC moves the Court to strike "Building 19" as a counterclaim defendant, contending that 1) "Building 19" is not a named party, 2) Dziemit has failed to follow the appropriate civil rules regarding the joinder of additional parties and, therefore, 3) she cannot seek relief from that entity.

In response, Dziemit directs the Court's attention to the Plaintiff's Amended Complaint, which states that:

-3-

> Plaintiff International Floor Crafts, Inc. (hereinafter, "IFC") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 319 Lincoln Street, Hingham, Plymouth County, Massachusetts. At all relevant times, Building 19 performed, and does perform services for IFC. IFC and Building 19 shall be referred to hereinafter collectively as "IFC".

Amd. Compl. ¶ 5. Dziemit contends that she is not required to follow any specific procedural rules to join "Building 19" as a party because Plaintiff has already made "Building 19" a party plaintiff by defining itself as an entity which includes "Building 19".

As an initial matter, this Court is unable to discern the nature of the relationship between IFC and "Building 19" or, for that matter, what sort of entity "Building 19" is. It is unclear whether "Building 19" is a separate organization, a wholly-owned subsidiary or merely a name under which IFC does business. The above-quoted section of the Amended Complaint is the only description of "Building 19" provided by the plaintiff and it fails to clarify the relationship.

In order to proceed against "Building 19" (which, by itself, is an insufficient description of any entity), the defendant must, pursuant to the federal rules of civil procedure, add a properly described party to the action, either as a third-party or counterclaim defendant. In the meantime, the Court will strike all references to "Building 19" from the Amended Complaint and Dziemit's counterclaim until when and if Plaintiff moves to

clarify those references.

### III. **Motion to Dismiss Counterclaims**

#### A.   **Legal Standard**

A court may not dismiss claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In considering the merits of a motion to dismiss counterclaims, the table turns on the plaintiff and the court must accept all of the defendant's well-pled allegations set forth in the counterclaims, extending every reasonable inference in her favor. Pihl v. Massachusetts Dept. of Educ., 9 F.3d 184, 187 (1st Cir. 1993).  If the allegations of the counterclaims, under any theory, are "sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).  Although the allegations are construed liberally at this stage, the Court does not credit "conclusory assertions [or] subjective characterizations". Barrington Cove, Ltd. P'ship v. Rhode Island Housing and Mortgage Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001).

### B.  Counterclaim One: Intentional Interference with Advantageous Relations

In her first counterclaim, Dziemit contends that IFC intentionally and maliciously interfered with her prospective business relationships by "maligning her reputation and bringing the underlying baseless action against her", resulting in lost business opportunities.

According to Massachusetts law, a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34 (2004)(citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 815-17 (1990)).  In her counterclaim, Dziemit alleges that she had prospective business relationships, that IFC knew or should have known of them, that IFC interfered by bringing this action for fraud and racketeering against her and that as a result, she lost business opportunities.

Regardless of whether Dziemit's counterclaim sufficiently alleges tortious interference with any opportunity, IFC contends that it should be dismissed because it is protected by the

Massachusetts litigation privilege. See, e.g., Loomis v. Tulip, Inc., 9 F. Supp. 2d 22, 24 (D. Mass. 1998)(holding that even if all of the requisite elements are demonstrated, the claimant will prevail only if the offending action is "an unprivileged interference") (quoting Laurendeau v. Kewaunee Scientific Equip., 17 Mass. App. Ct. 113, 122 (1983)).

Massachusetts law extends a privilege to statements made "by an attorney engaged in his function as an attorney ... [in the] conduct of litigation". Sriberg v. Raymond, 370 Mass. 105, 109 (1976). Justifying this broad privilege, the SJC explained:

> The public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients commends itself to us.... [I]t is on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents ....

Id., 370 Mass. at 108-9 (internal quotation marks omitted). The privilege extends to statements which are "pertinent to the proceedings", Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984), or "relative to proposed litigation", Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 139 (1996). IFC contends that the filing of the complaint in this case falls within that privilege.

The Court agrees with IFC that the filing of a complaint is privileged and thus that act, alone, is insufficient to form the basis of a counterclaim for tortious interference. A complaint

-7-

is composed of statements and assertions which are clearly "pertinent to proceedings" and to extend the privilege to those statements, but not the filing itself, would simply allow for an end-run around the privilege. As such, this Court concludes that the litigation privilege bars a counterclaim for tortious interference that is based upon an allegation that the filing of this suit was itself an improper <u>means</u> of interference. A party can, however, be held liable for tortious interference on the basis of the filing of a lawsuit if it is alleged that the suit was filed for the ulterior <u>purpose</u> of interfering with a prospective business relationship.

In the federal cases cited by Dziemit in which the filing of a lawsuit formed the basis of a counterclaim for tortious interference, the courts found that the parties sufficiently alleged that the underlying suits had been filed for an improper purpose. <u>See</u> <u>Fafard Real Estate & Development Corp.</u> v. <u>Metro-Boston Broadcasting, Inc.</u>, 345 F. Supp. 2d 147, 154 (D. Mass. 2004) (citing <u>Powers</u> v. <u>Leno</u>, 24 Mass. App. Ct. 381, 384-85 (1987) (maliciously bringing or continuing litigation in order to delay or derail an agreement is an improper interference)); <u>Gouin</u> v. <u>Gouin</u>, 249 F. Supp. 2d 62, 75 (D. Mass. 2003). In <u>Fafard</u>, the defendant's counterclaim made specific allegations that the plaintiff had brought suit maliciously for the purpose of gaining unfair leverage over the defendant in the midst of negotiations

to acquire the defendant's property.  No such allegation of improper motive has been made in this case, leaving the Court to speculate impermissibly as to what that motive might be.

In order to survive a motion to dismiss, a counter-claimant alleging tortious interference on the basis of the underlying lawsuit must plead that the suit was commenced for the ulterior motive of interfering with a prospective business relationship. See, e.g., G.S. Enters. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991); Cady v. Marcella, 49 Mass. App. Ct. 334, 342-43 (2000).  Dziemit fails to state a prima facie case of intentional interference with advantageous relations.  Her counterclaim alleges, in conclusory fashion, that IFC interfered with her prospective business relationships by "maligning her reputation and bringing the underlying baseless action against her". Because the litigation privilege shields a plaintiff against a claim that the mere filing of a complaint is an improper means of interference, Dziemit must allege facts that would tend to prove that IFC had an ulterior motive for bringing the action against her.  See Cavicchi v. Koski, 67 Mass. App. Ct. 654, 658 (2006)(holding that in proving improper conduct in a tortious interference claim, the plaintiff must prove either an ulterior motive or improper means but not both).  Her counterclaim fails to allege that IFC brought the suit against her with an ulterior motive to harm her business relations.

### C.  Counterclaim Two and Three: Intentional Misrepresentation, Negligent Misrepresentation

In her second and third counterclaims, Dziemit alleges that she suffered damages as a result of the plaintiff's intentional and negligent misrepresentations.  Because both claims raise the same issues and defenses, the Court will address them together.

Under Massachusetts law, a claim for intentional misrepresentation requires proof of four elements: (1) the defendant made a false misrepresentation of material fact, (2) the defendant acted with knowledge of its falsity, (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation and (4) the plaintiff relied on the misrepresentation to her detriment.  Zuckerman v. McDonald's Corp., 35 F. Supp. 2d 135, 144 (D. Mass. 1999).  A claim for negligent misrepresentation requires only proof that the defendant failed to exercise reasonable care in communicating the false information.  Nota Constr. Corp. v. Keyes Assoc. Inc., 45 Mass. App. Ct. 15, 19-20 (1998).

IFC contends that the counterclaims fail because the alleged misrepresentations were made to Dziemit by then-employees of IFC who were acting outside the scope of their employment.  That argument is unavailing.  IFC is liable not only for the torts committed by employees acting within the scope of their employment, but also for torts committed outside of that scope if a third person reasonably relies on the employee's apparent

-10-

authority.  Restatement (Second) of Agency §§ 8A, 219(1),(2)(d)(1958).  The question of whether such authority existed is a question of fact.  Therefore, at this stage of litigation, Dziemit has sufficiently alleged facts from which IFC could be held vicariously liable for its employees' alleged misrepresentations.

Even if Dziemit has sufficiently alleged IFC's vicarious liability, her counterclaims do not sufficiently particularize the allegations of fraud.  Specifically, Dziemit fails to identify how she relied upon the misrepresentations or how that reliance was detrimental to her.  Under Fed.R.Civ.P. 9(b), fraud and misrepresentation must be pled with specificity.  To satisfy the particularity requirement of Rule 9(b), a claimant alleging fraud or mistake must provide particulars as to the time, place and content of the alleged false or fraudulent misrepresentation.  Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991) (citation omitted).  Dziemit's counterclaims allege false purchase orders and payments but fail to identify the allegedly fraudulent statements with the particularity required by Rule 9(b).

    D.    **Counterclaim Four: Declaratory Judgment**

In her fourth counterclaim, Dziemit seeks a declaratory judgment barring recovery against her because IFC is liable for the "active misrepresentations" made by its agents and employees.

IFC responds that such a counterclaim should be dismissed because declaratory judgment is not the appropriate means to establish that the doctrine of respondeat superior applies in this case. Specifically, IFC contends that the counterclaim is duplicative of her other counterclaims.

Dziemit responds that her counterclaim goes beyond the allegations of vicarious liability. In her responsive memorandum, Dziemit contends that the Court should declare that "her affirmative defenses [holder in due course, laches, statute of limitations, unclean hands, estoppel] ... bar recovery here".

According to Mass.Gen.Laws ch. 231A § 1, a court may:

> make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings ....

Such declaratory judgments provide relief from "uncertainty and insecurity". Sahli v. Bull HN Information Systems, Inc., 437 Mass. 696, 705 (2002).

Dziemit's counterclaim for declaratory judgment is inappropriate as presented to the Court. It fails to set forth an appropriate declaration with sufficient specificity and is couched as a motion for summary judgment based on her affirmative defenses. Moreover, insofar as it seeks a declaration of liability under the doctrine of respondeat superior, it is duplicative of the other counterclaims.

-12-

**ORDER**

Accordingly, the plaintiff's motion to dismiss (Docket No. 159) is, with respect to Counterclaims One and Four, **ALLOWED** but is, with respect to Counterclaims Two and Three, **DENIED**, provided however that the defendant is directed to provide a more definite statement to the plaintiff on or before March 13, 2007. Moreover, the Court strikes all reference in the complaint and answers to "Building 19" until when and if the Plaintiff moves to clarify those references or the defendant, pursuant to the federal rules of civil procedure, adds an appropriately described entity as a party to this action.

**So ordered.**

                                                    /s/ Nathaniel M. Gorton  
                                                    Nathaniel M. Gorton  
                                                    United States District Judge

Dated: February 28, 2007