```
                United States District Court
                  District of Massachusetts
_____
                               )
International Floor Crafts,    )
Inc.,                          )
        Plaintiff,             )
                               )    Civil Action No.
        v.                     )    05-11654-NMG
                               )
David W. Adams, Tyrone Williams,)
Ronald E. Mitchell and Jane    )
Dziemit,                       )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, International Floor Crafts, Inc. ("IFC"), alleges that several of its current and former employees developed and perpetuated a scheme with individuals in several states to extort approximately $5 million from IFC. Before the Court is the motion of one defendant for summary judgment.

I.  **Background**

The crux of this alleged conspiracy is that two buyers employed by the plaintiff, IFC, fabricated purchase orders purporting to buy carpets from fictitious companies. A co-conspirator inside IFC then allegedly forged the internal documents necessary to record that the nonexistent goods had been received so that Accounts Payable would pay the invoices.

The defendants David W. Adams ("Adams") and Kevin Britto

-1-

("Britto"), since deceased, were the purported rogue buyers and defendant Tyrone Williams ("Williams") was the warehouse employee who, it is claimed, forged the internal receipts. The defendants Ronald Mitchell ("Mitchell") and Jane Dziemit ("Dziemit") were among the outside operators and were affiliated with Remco, one of the allegedly fictitious companies. Numerous other defendants have been voluntarily dismissed from the case.

Dziemit, who now moves for summary judgment, is sued under five counts in the Amended Complaint: 1) violations of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., 2) conspiracy to violate the RICO act, 3) conversion, 4) violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A") and 5) fraud.

Mitchell and Dziemit claim to have been innocent bystanders to whatever criminal enterprise was operating within IFC. Mitchell asserts, in his affidavit and deposition testimony, that Remco was a legitimate carpet distributorship and that Dziemit, a friend, associated with the business to provide financing for a new venture that Adams proposed and that Mitchell understood to consist of supplying real carpets to IFC at prices beneficial to all parties. Britto, one of the alleged leaders of the conspiracy, asserted at his deposition that Mitchell and Dziemit were not involved.

Although the parties' submissions do not elucidate every

detail of the operations of the alleged conspiracy, nor indeed of the Remco business operations, both legitimate and illicit, the following basic facts are asserted by IFC:

1) Adams, Britto and Williams were the principal conspirators in a scheme to defraud IFC by sending fraudulent purchase orders and processing false invoices so that IFC would pay for merchandise that it did not, in fact, receive.

2) Dziemit was a partner (with Mitchell) in Remco, an unincorporated partnership.

3) Remco did, from time to time, receive purchase orders from IFC and respond by sending invoices, and accepting payment, for at least some rugs that were never delivered.

When he was first deposed, Mitchell answered every substantive question by invoking his Fifth Amendment privilege against self-incrimination. He later surprised the plaintiff (and his own counsel) by preparing an affidavit detailing his and Dziemit's role in the conspiracy. Dziemit submitted that affidavit in support of her motion for summary judgment. The Court recently allowed the plaintiff to reopen Mitchell's deposition and extended the time in which plaintiff was required to respond to Dziemit's motion, as a result of which Dziemit's motion for summary judgment has just recently become ripe for adjudication.

**II.  Analysis**

   **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.    Conversion**

Count III of the complaint seeks recovery for the common law tort of conversion. The property allegedly converted was the money transferred from IFC to Remco, by check, in payment of the allegedly fraudulent invoices. Conversion is the exercise of ownership by the defendant over "property to which she has no right of possession at the time". Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002). In this case, the pleadings and the facts do not support a finding that Dziemit had "no right of possession" of the subject funds because they were transferred to her pursuant to a facially valid check.

Dziemit notes that the Uniform Commercial Code, as enacted by the Massachusetts legislature, provides that an issuer of a check cannot maintain an action for conversion. M.G.L. c. 106 § 3-420. That statute simply reflects the reality described herein: the check created a right of ownership in the payee, even if such a right was fraudulently obtained. The proper cause of action for the alleged wrongdoing is not conversion but fraud.

IFC counters by noting that an action for conversion will

lie even when the subject property was obtained in the guise of a sale but through fraud, citing Bates v. Youngerman, 142 Mass. 120 (1886).  It asserts that the property at issue is not the check itself but the money transferred pursuant to it and that the Uniform Commercial Code, on which Dziemit relies, applies to instruments but not currency.  M.G.L. c. 106 § 3-102.  IFC responds that to adopt Dziemit's position would exonerate any conversion claims in which a check is involved.

Although Bates v. Youngerman remains good law, its value in interpreting the Uniform Commercial Code is limited by the fact that the decision, rendered in 1886, predates the Code by several generations.  IFC may be correct that Dziemit's reasoning would eliminate the tort of conversion in cases involving a check but it fails to explain why that consequence should trouble this Court.  In its Opposition addressing this point, IFC uses the word "fraud", or a variant thereof, no fewer than six times in describing Dziemit's conduct.  That would seem to confirm that the alleged wrongdoing comes under the heading of fraud, which IFC has also alleged in Count V, rendering recovery for conversion redundant and unnecessary.  In light of that fact and because Dziemit's reliance on M.G.L. c. 106 § 3-420 is well-founded, the motion for summary judgment will, with respect to Count III (conversion) be allowed.

### C. The Remaining Counts

The Amended Complaint alleges four other counts against Dziemit, all of which rely on the same operative facts. Dziemit's motion for summary judgment, although it addresses each count separately, interposes very similar arguments with respect to each one. In brief, it disputes IFC's characterization of Dziemit as an active, knowing participant in the alleged conspiracy and asserts that she was, rather, an innocent victim herself and thus not liable for conspiracy, fraud or the RICO and Chapter 93A violations alleged in the Complaint.

#### 1. RICO Elements

IFC alleges violations of three separate sections of the RICO Act, 18 U.S.C. § 1961 et seq. The statute prohibits four separate kinds of activities:

1)  investing income derived from a pattern of racketeering activity in a business engaged in interstate commerce (18 U.S.C. § 1962(a)),

2)  acquiring control of a business engaged in interstate commerce through a pattern of racketeering activity (§ 1962(b)),

3)  participating in the conduct of a business engaged in interstate commerce through a pattern of racketeering activity (§ 1962(c)) and

4)  conspiring to violate any of the above (§ 1962(d)).

The complaint alleges violations of §§ (a)-(c) by all defendants. In lieu of asserting a violation of § (d), it alleges common law conspiracy to violate the RICO statute.

### 2. State of Mind

Dziemit asserts, in support of her motion for summary judgment, that 1) her own sworn affidavit, as well as those of Mitchell and Britto (one of the alleged masterminds of the conspiracy) establish that she was wholly without fault and 2) no genuine issue of fact remains with respect to the material question of her mental state.

IFC lacks direct evidence of Dziemit's intentions but, in response to her argument, it proffers considerable circumstantial evidence: 1) Remco, the entity founded by co-defendant Ronald Mitchell, sent invoices to IFC, and accepted payments, for delivery of carpets that did not exist; 2) Dziemit possessed an ownership interest in Remco and 3) Dziemit prepared some of the subject invoices. A reasonable jury could infer that Dziemit possessed the requisite state of mind from those facts, notwithstanding the contrary protestations of Britto, Mitchell and Dziemit.

### 3. Lender Liability

Dziemit argues, further, that her only role in the alleged conspiracy was to lend money to one or more of its active participants. She contends that she is, therefore, not subject to liability for participation in the conspiracy. See Reves v. Ernst & Young, 507 U.S. 170 (1993).

IFC disputes Dziemit's characterization of her contributions

to the scheme as loans. It points out that she did not receive periodic interest on the money that she contributed but, instead, shared in the profits resulting from each invoice. Furthermore, she received a share of the profits from several invoices with respect to which she did not contribute any money, a fact which Mitchell explains by noting that she was his "partner" and that such distributions seemed fair to him.

Assuming, arguendo, that Dziemit is correct that lenders cannot be found to "participate" in the conspiracies which they help fund, Dziemit has not established that there exists no genuine issue of material fact with respect to the question of whether she was, as she contends, merely a lender or, as IFC asserts, an investor and active participant. Thus, her reliance on Reves is misplaced and summary judgment on these grounds is inappropriate.

The circumstantial evidence in this case is, notwithstanding the testimony of Dziemit, Mitchell and Britto, sufficient to support a reasonable jury in finding for the plaintiff on Counts I (RICO), II (conspiracy), IV (Chapter 93A) and V (fraud). Dziemit's contention that the RICO and fraud claims are not pled with sufficient particularity also lacks force. The alleged conspiracy is described in some detail in the complaint and Dziemit had more than adequate notice of her alleged role in it to prepare her defense. The motion for summary judgment will,

with respect to Counts I, II, IV and V, be denied.

## ORDER

In accordance with the foregoing, the motion for summary judgment (Docket No. 211) is, with respect to Count III (Conversion) **ALLOWED,** but is otherwise **DENIED.**


**So ordered.**

                                        /s/Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated July 2, 2008